# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARTEM V. GELIS, BHAWAR PATEL, ROBERT MCDONALD, JAMES V. OLSON, GREGORY HEYMAN, SUSAN HEYMAN, DEBRA P. WARD, DARRIAN STOVALL, ALEX MARTINEZ, AMANDA GOREY, CHRIS WILLIAMS, ASHOK PATEL, KENNETH GAGNON, MICHAEL CERNY, ERHAN ARAT, ANDRE MALSKE, CRAIG LASH, NICOLE GUY, DAVID RICHARDSON, KAREN HENDERSON and ERIC T. ZINN, individually and on behalf of all others similarly situated, | Civil Action No. 17-cv-7386 WHW-CLW |
| Plaintiffs, | |
| v. | |
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT AND BMW OF NORTH AMERICA, LLC., | |
| Defendants. | |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

Gary S. Graifman, Esq.
Jay I. Brody, Esq.
**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, New Jersey 07645
Tel: (201) 391-7000

*__Attorneys for Plaintiffs__*

[*Additional Counsel on Signature Page*]

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT................................................................. 1

STATEMENT OF FACTS..................................................................... 1

STANDARD OF REVIEW FOR FED. CIV. P. 12(b)(6) MOTIONS................................. 6

    A.  Plausibility Pleading Requirements Of Fed. R. Civ. P. 8........................... 6

    B.  Specificity Pleading Requirements Of Fed. R. Civ. P. 9(6)......................... 6

ARGUMENT............................................................................... 8

    POINT I:  BMWøS WARRANTY EXTENSION IS INSUFFICIENT
            TO PROTECT CLASS VEHICLE OWNERS FROM EXPENSIVE
            FUTURE REPAIRS OR PROVIDE ADEQUATE REIMBURSEMENT........  8

    POINT II:  THE COURT SHOULD NOT DECIDE AT THIS STAGE
             WHETHER NEW JERSEY LAW MAY APPLY TO ALL CLAIMS............ 9

      A.  It Is Premature To Consider Whether A Nationwide
         Breach Of Warranty Claim Is Appropriate.................................. 11

      B.  It Is Premature To Determine Now Whether The New Jersey
         Consumer Fraud Act (õNJCFAö) Will Apply To A Nationwide................. 12

      C.  A Similar Analysis Should Be Applied To Plaintiffsø Negligent
         Misrepresentation And Unjust Enrichment Claims Since The Choice
         of Law Determination Would Be Premature............................... 13

    POINT III:  PLAINTIFFS STATE VALID WARRANTY CLAIMS............................... 14

      A.  Plaintiffs Have Asserted Valid Express Warranty Claims...................... 14

      B.  Plaintiffs Have Asserted Valid Implied Warranty Claims...................... 16

    POINT IV: ALL PLAINTIFFS STATE A CLAIM UNDER
            THE MAGNUSON-MOSS WARRANTY ACT.............................. 18

    POINT V:  THE COMPLAINTøS STATE CONSUMER PROTECTION COUNTS
             SATISFY THE SPECIFICITY REQUIREMENTS OF RULE 9(b)............. 20

POINT VI:   PLAINTIFFSø NEGLIGENT MISREPRESENTATION CLAIMS
            MAKE PLAUSIBLE ALLEGATIONS OF NEGLIGENT
            MISREPRESENTATIONS OF MATERIAL FACTS CONCERNING
            ATTRIBUTES OF THE CLASS ENGINE CHAIN ASSEMBLIES............ 26

            A.  The CAC Alleges Defendants Had Exclusive And Superior
                Knowledge Of The Chain Assembly Defects And, As Such,
                Owed A Duty Of Disclosure To Class Vehicle Purchasers...................... 27

POINT VII:  PLAINTIFFS' UNJUST ENRICHMENT CLAIMS
            ARE PROPERLY PLED.............................................................................. 29

POINT VIII: PLAINTIFFS ASSERT VALID CLAIMS FOR
            DECLARATORY AND INJUNCTIVE RELIEF........................................ 31

POINT IX:   BMWøS ARGUMENTS ON VARIOUS CLAIMS
            MUST BE REJECTED AT MOTION TO DISMISS STAGE....................... 32

            A.  The Claims Of Gelis, Henderson, And Lash Should Survive............ 32

            B.  The Claims Of Zinn and Richardson Should Not Be Dismissed........ 33

            C.  Malske Has Adequately Stated A Claim Under Wisconsin
                Deceptive Trade Practices Act............................................................. 34

            D.  Stovalløs Claim Under The Alabama Deceptive Trade
                Practices Act Should Not Be Dismissed.............................................. 34

CONCLUSION..................................................................................................... 35

TABLE OF AUTHORITIES

**CASES**

*Agostino v. Quest Diagnostics Inc.,*
    256 F.R.D. 437 (D.N.J. 2009)..................................................................... 13

*Arlandson v. Hartz Mt. Corp.,*
    792 F.Supp.2d 691 (D.N.J. 2011)...........................................................10, 13

*Arons v. Rite-Aid Corp.,*
    2005 WL 975462 (N.J. Super. Mar. 23, 2005)............................................11

*Aronstein v. Mass. Mut. Life Ins. Co.,*
    2016 WL 1626835 (D. Mass. Apr. 22, 2016)...............................................29

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................6, 8, 35

*Barcal v. EMD Serono, Inc.,*
    2016 WL 1086028 (N.D. Ala. Mar. 21, 2016)..............................................34

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 554 (2007)............................................................................. 6, 8, 35

*Carter v. L'Oreal USA, Inc.,*
    2017 WL 3891666 (S.D. Ala. Sept. 6, 2017).........................................29, 35

*Chavis v. Fidelity Warranty Services, Inc.,*
    415 F.Supp.2d 620 (D.S.C. 2006)................................................................ 19

*Chin v. Chrysler Corp.,*
    182 F.R.D. 448 (D.N.J. 1998)............................................................. 9, 10, 11

*Cleary v. Philip Morris, Inc.,*
    656 F.3d 511 (7th Cir. 2011)........................................................................31

*Clemens v. DaimlerChrysler Corp.,*
    534 F.3d 1017 (9th Cir. 2008)...................................................................... 19

*Collins v. Davol, Inc.,*
    56 F.Supp.3d 1222 (N.D. Ala. 2014)................................................................. 34

*Collins v. Sears, Roebuck and Co.,*
    31 Mass. App. Ct. 961 (Mass. App. Ct. 1992)............................................. 18

*Contino v. BMW of N. Am., LLC,*
    2008 WL 2940515 (D.N.J. July 29, 2008).................................................... 30

*Cooper v. Samsung Elecs. Am., Inc.,*
    374 F. App'x 250 (3d Cir. 2010)..................................................................... 10

*Craftmatic Sec. Litig. v. Kraftsow,*
    890 F.2d 628 (3d Cir. 1989).............................................................................. 7

*Dewey v. Volkswagen,*
    558 F.Supp.2d 505 (D.N.J. 2008)...................................................................22

*Elias v. Ungar's Food Prod., Inc.,*
    252 F.R.D. 233 (D.N.J. 2008)...................................................................12, 13

*Epstein v. C.R. Bard, Inc.,*
    460 F.3d 183 (1st Cir. 2006)..............................................................................7

*Falco v Nissan North America, Inc.,*
    2013 WL 5575065 (C.D. Ca. Oct. 10, 2013)............................................... 17

*Falk v. Nissan N.A., Inc.,*
    2018 WL 2234303 (N.D.Ca. May 16, 2018)................................................32

*Feldman v. Mercedes–Benz USA, LLC,*
    2012 WL 6596830 (D.N.J. Dec. 18, 2012)................................................... 24

*Fiberglass Component Prod., Inc. v. Reichhold Chemicals, Inc.,*
    983 F. Supp. 948 (D. Colo. 1997)................................................................. 33

*Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC,*
    945 F. Supp. 2d 543 (D.N.J. 2013)................................................................33

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007).............................................................................. 7

*Goldemburg v. J&J Consumer Cos.*,
   8 F. Supp.3d 467 (S.D.N.Y. 2014)................................................................... 29

*Greene v BMW of N. Am.*,
   2013 WL 5287314 (D.N.J. Sept. 17, 2013)......................................................17

*Green v. Green Mountain Coffee Roasters, Inc.*,
   279 F.R.D. 275 (D.N.J. 2011)........................................................................ 33

*Harper v. LG Electronics USA, Inc.*,
   595 F.Supp.2d 486 (D.N.J. 2009).................................................................10

*Henderson v. Volvo Cars of North America, LLC.*,
   2010 WL 2925913 (D.N.J. 2010).................................................................23

*In re Blumer v. Acu-Gen Biolabs, Inc.*,
   638 F.Supp.2d 81 (D. Mass. 2009)............................................................. 19

*In re Burlington Coat Factory Securities Litigation*,
   114 F.3d 1410 (3rd Cir.1997)....................................................................23

*In re Flash Memory Antitrust Litigation*,
   643 F.Supp.2d 1133 (N.D. Cal. 2009)....................................................... 29

*In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*,
   2008 WL 4126264 (D.N.J. Sept. 2, 2008)............................................... 16, 17

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
   2001 WL 1266317 (D.N.J. Sept.30, 1997).................................................17

*In re Ford Motor Co., United Techs. Auto., Inc.*,
   174 F.R.D. 332 (D.N.J. 1997)....................................................... 10, 11, 16

*In re Gen. Motors LLC Ignition Switch Litig.*,
   257 F. Supp. 3d 372 (S.D.N.Y. 2017)......................................................34

5

*In re K—Dur Antitrust Litigation*,
    338 F.Supp.2d 517 (D.N.J.2004)............................................................................ *passim*

*In re Mercedes-Benz Tele Aid Contract Litigation*,
    257 F.R.D. 46 (D.N.J. 2009)................................................................................12, 13

*In re MyFord Touch Consumer Litig.*,
    46 F.Supp.3d 936 (N.D.Cal. 2014).............................................................. 29

*In re Porsche Cars N. Am., Inc.*,
    880 F. Supp.2d 801 (S.D. Ohio 2012).............................................................20

*In re Saturn L-Series Timing Chain Prods. Liab. Litig.*,
    MDL No. 1920, 2008 WL 4866604 (D. Neb. Nov. 7, 2008)..........................22

*In re Volkswagen Timing Chain Product Liability Litig.*,
    2017 WL 1902160 (D.N.J. May 8, 2017)................................................. *passim*

*Kalow & Springut, LLP v. Commence Corp.*,
    2012 WL 6093876 (D.N.J. Dec. 7, 2012).......................................................... 13

*Karu v. Feldman*,
    119 N.J. 135 (1990)..........................................................................................26

*Kuney Int'l, S.A. v. DiIanni*,
    746 F. Supp. 234 (D.Mass. 1990)..................................................................7

*Leaf Fin. Corp. v. Carroll*,
    2009 WL 112567 (D.Mass. Jan.16, 2009)..................................................... 15

*Linthicum v. Archambault*,
    379 Mass. 381, 398 N.E. 482 (1979)............................................................26

*Lipinski v. Martin J. Kelly Oldsmobile*, *Inc.*,
    325 Ill. App. 3d 1139 (Ill. App. Ct. 2001)................................................... .17

*Lisk v. Lumber One Wood Preserving, LLC*,
    792 F.3d 1331 (llth Cir. 2015)...................................................................... 34

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004)............................................................................... 7

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
2013 WL 5574626 (D.N.J. Oct. 9, 2013)................................................... 18, 28

*Maniscalco v. Brother Int'l (USA) Corp.*,
709 F.3d 202 (3d Cir.2013)......................................................... 12, 23, 30

*Marcus v. Anderson/Gore Homes, Inc.*,
498 So. 2d 1051 (Fla. Dist. Ct. App. 1986)................................................18

*Marcus v. BMW of N. Am., LLC*,
2010 WL 4853308 (D.N.J. Nov. 19, 2010)................................................11

*McCalley v. Samsung Electronics America, Inc.*,
2008 WL 878402 (D.N.J. Mar. 31, 2008)................................................ 19

*McGee v. Cont. Tire N. Am., Inc.*,
2007 WL 2462624 (D.N.J. Aug. 27, 2007)............................................... 19

*McGuire v. BMW of N. Am., LLC*,
2014 WL 2566132 (D.N.J. June 6, 2014).............................................11, 13

*Mexia v. Rinker Boat Co., Inc.*,
95 Cal. Rptr. 3d 285 (Cal. Ct. App. 2009)................................................ 18

*Montich v. Miele USA, Inc.*,
849 F.Supp.2d 439 (D.N.J. 2012)............................................................   24

*Morano v. BMW of N. Am., LLC*,
2013 U.S. Dist. LEXIS 28099 (D.N.J. Mar. 1, 2013)................................... 31

*Morcom v. LG Elecs. USA, Inc.*,
2017 WL 8784836 (D.N.J. Nov. 30, 2017)................................................13

*Mukamal v. GE Capital Corp.* (*In re Palm Beach Fin. Partners, L.P.*),
517 B.R. 310 (Bankr. S.D. Fla. 2013)...........................................................28

*Oscar v. BMW of N. Am., LLC,*
    274 F.R.D. 498 (S.D.N.Y. 2011)....................................................................11

*Park v. Inovio Pharms., Inc.,*
    2016 U.S. Dist. LEXIS 24993, 2016 WL 796890 (D.N.J. Mar. 1, 2016).....................28

*Payne v. FujiFilm U.S.A., Inc.,*
    2010 WL 2342388 (D.N.J. May 28, 2010).....................................................11

*PB Prop. Mgt., Inc. v. Goodman Mfg. Co., L.P.,*
    2013 WL 12172912 (M.D. Fla. Aug. 28, 2013).......................................14, 15

*Pendergast v. Sprint Nextel Corp.,*
    592 F.3d 1119 (11th Cir. 2010)................................................................15

*Powers v. Boston Cooper Corp.,*
    926 F.2d 109 (1st Cir 1991).....................................................................7

*Razor v. Hyundai Motor Am.,*
    222 Ill. 2d 75 (2006).......................................................................14, 15

*Rodriguez-Ortiz v. Margo Caribe, Inc.,*
    490 F.3d 92 (1st Cir. 2007)....................................................................6, 7

*Saltiel v. GSI Consultants, Inc.,*
    170 N.J. 297 (2002)...............................................................................27

*Samsung DLP Television Class Action Litigation,*
    2009 WL 3584352 (D.N.J. Oct. 27, 2009)..................................................10

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,*
    742 F.2d 786 (3d Cir. 1984)..................................................................7, 24

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.,*
    559 U.S. 393, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010)............................34

*Sheehy v. Lipton Industries, Inc.,*
    24 Mass. App. Ct. 188, 507 N.E.2d 781 (1987)..........................................26

*Sheris v Nissan N. Am. Inc.*,
    2008 WL 2354908 (D.N.J. June 3, 2008) ..................................................................... 17

*Shersher v. Superior Court*,
    154 Cal.App.4th 1491 (Cal.Ct.App. 2007) ................................................................. 30

*Siegel v. Shell Oil*,
    612 F.3d 932 (7th Cir. 2010) ......................................................................................31

*Skeen v. BMW of N. Am., LLC*,
    2014 WL 283628 (D.N.J. Jan. 24, 2014) ........................................................... *passim*

*Smith v. Citimortgage, Inc.*,
    2015 WL 12734793 (D.N.J. Dec. 22, 2015) ............................................................... 29

*Snodgrass v. Ford Motor Co.*,
    2002 WL 485688 (D.N.J. Mar. 28, 2002) ................................................................... 17

*Snyder v. Farnam Companies, Inc.*,
    792 F. Supp. 2d 712 (D.N.J. 2011) ............................................................................13

*Stewart v. Beam Global Spirits & Wine, Inc.*,
    877 F. Supp. 2d 192 (D.N.J. 2012) ........................................................................... 30

*Sullivan v. DB Investments*,
    667 F.3d 273 (3d Cir.2011) .......................................................................................... 8

*Toys "R" Us, Inc. v. Step Two, S.A.*,
    318 F.3d 446 (3d Cir. 2003) ......................................................................................... 6

*United Techs. Auto., Inc.*,
    174 F.R.D. 332 (D.N.J. 1997) .................................................................................... 11

*Urman v. South Boston Savings Bank*,
    424 Mass. 165, 674 N.E.2d 1078, 1081 (1997) ..........................................................26

*U.S. Bank N.A. v. Sofield*,
    2017 WL 2569740 (W.D.N.C. June 13, 2017) ...........................................................29

*V.S.H. Realty, Inc., v. Texaco, Inc.*,
    757 F.2d 411, 417 (1st Cir. 1985)................................................................... 25

*W. Ridge Grp., LLC v. First Trust Co. of Onaga*,
    414 Fed. Appᴑx 112 (10th Cir. 2011)............................................................ 29

*Weske v. Samsung Elecs., Am., Inc.*,
    934 F. Supp. 2d 698 (D.N.J. 2013)................................................................. 7

**RULES**

Fed. R. Civ. P. 8(a)(2)........................................................................................ 35

Fed. R. Civ. P. 8(d)(2)....................................................................................... 29

Fed. R. Civ. P. 8(d)(3)................................................................................. 29, 34

Fed. R. Civ. P. 9(b)................................................................................... *passim*

**STATUTES**

15 U.S.C. §§ 41-58............................................................................................. 25

15 U.S.C. § 2310......................................................................................... 18, 19

FED. PRACTICE & PROCEDURE § 9.03[1][e] (3d ed. 2010)............................... 7

Mass. Gen. L. ch. 93A...................................................................................... 25

Mass. Regs. Code tit. 940, § 3.16(4) (1993)................................................... 25

N.Y. Gen. Bus. Law §349............................................................................. 6, 26

Uniform Commercial Code § 2-302................................................................. 14

## PRELIMINARY STATEMENT

Car manufacturers engage in multiple levels of pre-production studies, field inspections and component analysis. They possess substantial knowledge about potential defects and safety issues that are beneath the hood of their vehicles even before the consumer drives them off the lot. Unfortunately, as recent news and case law demonstrate, it has become all too common an occurrence for manufacturers to ignore or conceal potentially dangerous defects they are cognizant of before their vehicles are sold or prior to the warranty running its course once the vehicle is purchased. Many of these defects involve potential safety risks as here. Courts no longer allow manufacturers to shirk their duties at the expense of the public by simply saying the clock has run on the warranty when the manufacturer is aware of potential safety defects prior to purchase or warranty expiration. State consumer protection laws are designed to protect consumers from concealment of such material information and dishonest conduct. This case involves the engine chain assemblies in class vehicles, internal engine components that defendants claimed were manufactured to last the life of the car. However, these class engine chain assemblies were known to be defective by defendants early in class engine production.[1]

## STATEMENT OF FACTS

BMW of North America, LLC (hereinafter "BMW NA" or "defendant") and Bayerische Motoren Werke Aktiengesellschaft (hereinafter "BMW AG") (jointly referred to as "defendants" or "BMW") withheld material disclosures concerning primary and secondary class engine chain assemblies known to the defendants to be defective and used in BMW vehicles manufactured and sold

---

[1] Plaintiffs and members of the proposed classes request monetary damages, including multiple damages where applicable, court costs, injunctive relief, and attorney fees against each of the respective BMW entities based upon their breach of express warranty, breach of implied warranty, misrepresentation, unfair and deceptive business practices under the laws of New Jersey, Illinois, Florida, Utah, New York, Colorado, Texas, Alabama, Oklahoma, Massachusetts, California, Wisconsin, Oregon, North Carolina, unjust enrichment and the Magnuson-Moss Warranty Act.

in the United States from 2012 through and including 2015.[2]  The defendants introduced class engines in the United States market in late 2011 for the 2012 model year.  Class engines are predisposed to premature chain assembly system failures.  Consolidated Amended Class Action Complaint And Jury Trial Demand (hereinafter "CAC") ¶¶ 2-5.  Class vehicles are defective with respect to the chain assembly that subjects class engines to unanticipated loss of power and/or catastrophic engine failure.  Class vehicles are further defective since the vehicles were accompanied by an Owner's Manual and Service and Warranty Information materials that did not incorporate chain assembly inspection, maintenance and/or service intervals.  CAC ¶ 6.  Defendants falsely and/or negligently led class vehicle purchasers to believe by the maintenance schedules and other materials that the chain assemblies would not need to be replaced until a minimum of 150,000 miles.  CAC ¶¶ 7, 62, 76, 82, 145, 168.

When a primary or secondary class engine chain assembly fails, the engine immediately loses power, stalls and/or seizes. CAC ¶¶ 2-5 (describing chain assembly failure modes and consequences resulting from collisions of internal engine components and absence of lubrication).  Unanticipated chain assembly failures present a substantial safety hazard for vehicle occupants and other motorists particularly on crowded roadways or limited access highways since there is the risk of loss of engine power without warning and loss of power-assisted steering and reduced braking caused by lack of engine vacuum if the engine stalls.  CAC ¶¶ 4, 40, n.12.  In class vehicles equipped with manual transmissions, the drive wheels will lock and cause loss of directional stability and steering if the engine stalls and the clutch is not immediately disengaged.  CAC ¶ 4.  Plaintiffs' respective vehicles experienced unanticipated (and very expensive repair) engine failure. CAC ¶¶ 13, 174.

---

[2] This class action concerns itself with the primary and secondary engine chain assemblies. The primary chain assembly is comprised *inter alia* of camshaft and crankshaft sprockets, primary (timing) chain, hydraulic chain tensioner, tensioning rails and chain rails.  The secondary chain assembly consists of the crankshaft and counterbalance shaft sprockets, oil pump drive chain, pump drive sprocket, chain tensioner and integrated guide and tensioner rails.  These assemblies are depicted in Figure 1 and 3 of the CAC.

The Service and Warranty Information materials accompanying class vehicles do not contain any maintenance or service information for the chain assemblies. The class engine chain assemblies are reasonably expected by the defendants, the proposed class representatives and proposed class members to last the serviceable life of the vehicle that is in excess of 150,000 miles in a modern well-constructed passenger automobile.[3] CAC ¶¶ 6-7, n.4. Despite this legitimate expectation, chain assemblies in class vehicles often fail at less than 50% of their reasonably expected useful life.[4] Moreover, after experiencing a failure of the chain assembly, other engine components are damaged. Premature class engine chain assembly failures cost between $4,500.00 and $22,000.00 to remedy by installing new chain assemblies and/or a replacement engine. Individuals who own or have owned class vehicles also sustained diminution of the resale value of their class vehicles since knowledge of problems with class engine chain assemblies eventually became public information. CAC ¶¶ 8, 98.

The complaint alleges that defendants acquired knowledge shortly after class engine production commenced that the class vehicles' chain assemblies would prematurely fail. CAC ¶¶ 30-33, 38, 53, 192.[5] There is substantial evidence alleged demonstrating defendants' early knowledge of class engine

---

[3] Defendants' own Service and Warranty Information materials accompanying class vehicles, other predecessor engines manufactured by the defendants and performance of comparable competitor vehicles demonstrate this proposition. CAC ¶¶ 7, 28, 62, 76, 82, 145, 168. Service and Warranty Information materials for class vehicles have maintenance schedules that extend to 150,000 miles. There is no scheduled maintenance or replacement recommended for class engine primary or secondary chain assemblies during the entirety of this mileage or time period. CAC ¶ 6.

[4] By way of examples, plaintiff Lash's vehicle's chain assembly failed at 45K miles; plaintiff Gelis' vehicle's chain assembly failed at 65.5K miles; plaintiff Henderson's vehicle's chain assembly failed at 58K miles; plaintiff Bhawar Patel's vehicle's chain assembly failed at 71K miles; and, plaintiff Ashok Patel's vehicle's chain assembly failed at 72.7K miles. CAC ¶ 13.

[5] Aside from complaints to the National Highway Safety Administration (hereinafter "NHTSA") (which BMW, NA was legally required to monitor and respond), the defendants' knowledge of class engine chain assembly defects was derived from monitoring warranty claims, field investigations, root cause failure analysis, claims supervisors, customer complaints and monitoring of performance of class vehicles by BMW NA quality assurance employees, the number of replacement components and subsequent component revisions would have placed the defendants on notice of class vehicle defects. Knowledge of class vehicle defects is further imputed to the defendants prior to sale of certain model

3

chain assembly defects.  First, BMW AG sought to remedy chain assembly defects by redesigning and upgrading components and materials multiple times since the initial introduction of class vehicles for sale in late 2011.  The secondary chain has been redesigned twice and has been assigned part numbers 11417605366, 11417602646 and 11418651102.  CAC ¶¶ 5, 34.  *See also* CAC Figure 4 for a visual depiction of one modification.

Second, defendants also revised the primary chain, primary chain tensioner and primary chain guide/rails incorporated in class engines multiple times in an effort to correct system deficiencies that were causing catastrophic engine failure.  The revised primary chain tensioner has increased piston travel, a longer housing and a stronger internal spring to better regulate primary chain tension and decrease the incidence of primary chain assembly failure.  The primary chain tensioners have been assigned part numbers 11317567680 (original tensioner design) and 11318685091 (revised tensioner design).  CAC ¶ 33.  *See also* CAC Figure 2 for a depiction of primary chain tensioner and subsequent modification.

Third,  in 2014, BMW modified its 15,000 mile / 24 month Condition Based Service engine oil change intervals.  For all BMW 2014+ models, the new basic engine oil change interval is 10,000 miles / 12 months.  CAC n.3.  Both of these engine oil change intervals are excessive in duration and are a substantial contributing cause of premature engine chain assembly failures.  *Id.*

Fourth, because defendants are under a legal obligation to monitor defects that may cause safety issues and report them to the NHTSA within five (5) days, the defendants assiduously monitor the NHTSA₆ODI website and the complaints filed there in order to comply with their reporting obligations under federal law.  CAC ¶¶ 40, 49.

Fifth, BMW maintains departments at its United States New Jersey headquarters that track issues with products at launch and in the field.  CAC ¶ 170.  For example, BMW has a Warranty

---

year class vehicles because predecessor models using identical chain assembly components were also prematurely failing within their reasonably expected life.  CAC ¶¶ 17, 38-40, 53, 72, 170.

Optimization Section in its Warranty Department which tracks warranty data for various parts in the class vehicles, including the subject class engines, to determine failure rates and perform root cause analysis. BMW warranty specialists analyze warranty data available to personnel at the United States headquarters. BMW also has a Launch Viability Function Integration section whose responsibilities in the United States include extensive pre-launch testing of vehicles. Another BMW organizational department includes engineers who inspect and analyze defects and failures as they occur in the field. CAC ¶ 170.

In sum, the complaint adequately and plausibly alleges that defendants actively concealed the true reasonably expected duration of class engine chain assemblies and the cause of premature chain failures from the proposed class representatives and all class vehicles purchasers. The defendants intentionally failed to inform class vehicle purchasers that class vehicles incorporated defective and/or improperly tested chain assemblies that would prematurely fail within the reasonably expected durational operating period. CAC ¶¶ 61-68.

In recognition of these engine defects, and as an admission of their existence, after commencement of this action, defendants announced they were increasing the limited power train warranty to 7 years / 70,000 miles for certain chain assembly components. In December 2017 (approximately 3 months after this action was initially filed on September 22, 2017), defendants sent several proposed class representatives written notice of the warranty extension for certain N20/N26 engine chain assembly components. This warranty extension increased the original 4 year / 50,000 mile power train warranty for class engines to 7 year / 70,000 miles for certain primary and secondary chain components (hereinafter ōWarranty Extensionö).[6] The Warranty Extension (that appears to have

---

[6] This warranty extension apparently did not encompass all components of the primary and secondary chain assemblies alleged to be defective in this complaint because the defendants failed to warrant Gorey and Hendersonøs engines that both experienced chain failures within the extended warranty period. CAC ¶ 13.

been implemented in direct response to this class action) is woefully inadequate to address N20/N26 engine defects. CAC ¶ 9.

## STANDARD OF REVIEW FOR FED. R. CIV. P. 12(b)(6) MOTIONS

### A.  Plausibility Pleading Requirements Of Fed. R. Civ. P. 8

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007) (hereinafter "*Twombly*").  In determining whether dismissal is warranted for failure to state a claim under Rule 12(b)(6), the reviewing court must accept all allegations in the complaint as true and construe all inferences in a light most favorable to the non-moving party. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*).  A complaint demonstrates "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly* at 570.  A motion to dismiss should be granted only in those instances where the complaint fails to articulate "enough facts to state a claim to relief that is plausible on its face." *Id.*; *accord, Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007).

The sufficiency of the complaint allegations concerning warranty claims and the negligent or unfair non-fraudulent conduct of the defendants resulting in their failure to disclose known class engine defects are governed by the liberal pleading standards of Rule 8(a) and not the heightened standards of Rule 9(b).

### B.  Specificity Pleading Requirements Of Fed. R. Civ. P. 9(b)[7]

Fed. R. Civ. P. 9(b) entitled "Fraud or Mistake; Conditions of the Mind" states "[m]alice,

---

[7] Notably, New York's consumer fraud statute, N.Y. Gen. Bus. Law §349, need only be pleaded pursuant to Rule 8.  BMW NA has not moved to dismiss the complaint's §349 count (Count XIV).

intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); 10B Wright & Miller, Mary K. Kane, FED. PRACTICE & PROCEDURE § 9.03[1][e] (3d ed. 2010).  The purpose of Rule 9(b) is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp*., 742 F.2d 786, 791 (3d Cir. 1984); *See also Lum v. Bank of Am.*, 361 F.3d 217, 223-224 (3d Cir. 2004).  The heightened fraud pleading requirements of Rule 9(b) are fully satisfied where the complaint sets out the "time, place and content of the alleged false or fraudulent representations." *Epstein v. C.R. Bard*, Inc., 460 F.3d 183, 189-190 (1st Cir. 2006) (quoting *Powers v. Boston Cooper Corp*., 926 F.2d 109,111 (1ˢᵗ Cir 1991); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."); *Rodriguez-Ortiz,* 490 F.3d at 95.  Where fraud by omission is alleged, the heightened pleading requirements of Rule 9(b) are relaxed.  The surreptitious nature of corporate fraud by omission requires only disclosure of the "general outline of the general scheme." *Kuney Int'l, S.A. v. DiIanni*, 746 F. Supp. 234, 237 (D.Mass. 1990) ("The general outline of the general scheme to defraud alleged by the plaintiff provides the defendant with notice of the grounds on which plaintiff's claim is based" and satisfies Rule 9(b) requirements.). *See also Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 708 (D.N.J. 2013) (courts should utilize a less rigorous pleading standard on a motion to dismiss where "specific information is in the exclusive control of the defendant") (citing to *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)).  The requirements of Rule 9(b) are satisfied in the absence of "allegations of date, place or time," as long as plaintiffs inject "some measure of substantiation into their allegations of fraud." *Seville Indus. Mach. Corp,* 742 F.2d at 791.

Contrary to the assertions set out in Defendant BMW Of North American, LLC's Motion To Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (hereinafter "Def.'s Mem."), the

complaint fully satisfies the pleading requirements of Fed. R. Civ. P. 8, *Twombly, Iqbal* and the specificity requirements of Fed. R. Civ. P. 9(b).

**ARGUMENT**

**POINT I:   BMW'S WARRANTY EXTENSION IS INSUFFICIENT TO
              PROTECT CLASS VEHICLE OWNERS FROM EXPENSIVE
              FUTURE REPAIRS OR PROVIDE ADEQUATE REIMBURSEMENT**

The N20/N26 engine chain assemblies Warranty Extension, initiated by the defendants several months after the initial class action complaint was filed, fails to remedy the major design and materials flaw in the chain assembly systems.  Those defective engines are out on the roadways waiting to prematurely fail since BMW has not proactively set out to replace the original chain assemblies with upgraded components.  BMW's extremely limited Warranty Extension only increases the original warranty by 20,000 miles and 2 years.  This is simply insufficient to address the claims of a multitude of class vehicle owners whose engines have failed and will fail, with more than 70,000 miles or beyond 7 years.  The Warranty Extension also fails to cover, by its own terms, certain chain assembly failure modes that result in engine destruction or reimburse class vehicle owners who replace their defective original engines with a used engine.[8]  Currently, under the Warranty Extension, there is no remedy for these class vehicle owners.[9]  The Warranty Extension also fails to cover class vehicle value

---

[8] Exhibit A accompanying the motion to dismiss is an exemplar BMW warranty extension letter sent to class vehicle owners in late 2017.  The letter recites in relevant part that the following "Repairs ... do not Qualify for Reimbursement":

> Repairs performed on ineligible vehicles, eligible vehicles operated and repaired outside the United States and Puerto Rico and/or the diagnosis and repair of other unrelated issues. This exclusion applies to repairs, including consequential, that were performed using ***non-genuine BMW parts and/or used passenger car or light truck parts***. (emphasis added).

Most BMW class vehicle owners (including five or six named plaintiffs here) purchased used replacement engines since a new engine costs an estimated $22,000.00, which far exceeded the fair market value of their respective vehicles.  Under BMW's extended warranty, those plaintiffs with under 70,000 miles who purchased used engines would not be eligible for replacement reimbursement.  Those plaintiffs include Gorey and Henderson who have not been reimbursed for their replacement engines.

[9] A similar engine chain defect class action settlement for older and less costly passenger vehicles is currently awaiting preliminary approval in the Federal District Court, District of New Jersey.  The

8

diminution caused by public knowledge that class engines are prone to failure at low miles.  In contrast to the case law cited in Def.'s Mem. at pp. 9-10, BMW's proposed fix to its defective class engine chain assemblies by way of a limited mileage and duration extended warranty falls well short of providing an adequate or complete remedy to plaintiffs and proposed class members.[10]  Accordingly, the argument that BMW has provided an adequate remedy for its defective engines and that a class action is unnecessary should be rejected.

**POINT II:  THE COURT SHOULD NOT DECIDE AT THIS STAGE
WHETHER NEW JERSEY LAW MAY APPLY TO ALL CLAIMS**

As several class representatives reside in New Jersey and BMW has its United States headquarters here, New Jersey law will certainly be applicable to virtually every claim as to Bhawar Patel, Ashtok Patel and Williams.  Additionally, for class representatives from the 14 other states, most claims are plead alternatively on behalf of a nationwide class and state law subclasses.  Until the Court has the class certification motion before it, addressing these issues would be premature.  If, during the class certification motion, the Court determines that New Jersey law cannot be applied to the class members residing in other states, the subclasses plead, as well as subclasses having similar state laws, can be created to address the variations in state law. *See, Sullivan v. DB Investments,* 667 F.3d 273, 302 (3d Cir.2011) ("if the applicable state laws can be sorted into a small number of groups, each

---

proposed extended warranty in that settlement is reflective of the high mileage at which this failure may occur and is ten years or 100,000 miles. *See In Re Volkswagen Timing Chain Product Liability Litig.*, C.A. No. 16-cv-2765-JLL-JAD, Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement [ECF Doc. No. 80], filed May 14, 2018.

[10] Each of the plaintiffs in this litigation who experienced chain assembly failure and requested financial assistance from BMW, NA (via its dealer network or directly) were denied assistance and/or full engine repair reimbursement and/or consequential damages.  For example, Gelis was not reimbursed for alternative transportation while his vehicle was being repaired.  One case cited by the defendants in support of their contention that this class action is unnecessary is *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 463 (D.N.J. 1998).  *Chin* is strikingly different from this proceeding since Chrysler conducted two recall campaigns, reimbursed all owners for all past brake repair costs and provided a lifetime warranty on the components alleged to have been defective.  Other cases cited by the defendants also provided a complete remedy to aggrieved consumers that the respective proposed class action would not supplement or improve upon.

containing materially identical legal standards," then certification of subgroups "embracing each of the dominant legal standards can be appropriate.")

Ample authority demonstrates it is premature to make a choice of law determination at this early stage in the litigation. *See, In re Volkswagen Timing Chain Product Liability Litig*., C.A. No. 16-cv-2765-JLL-JAD, 2017 WL 1902160 at \*10 (D.N.J. May 8, 2017) (hereinafter "*VW Timing Chain Litig*.") ("As plaintiff correctly notes, the choice of law analysis has been routinely found to be premature at the motion to dismiss phase of a class action suit, especially when certain discovery is needed to further develop the facts that will be used in the choice of law analysis.") (citations omitted); *Harper v. LG Electronics USA, Inc*., 595 F.Supp.2d 486 (D.N.J. 2009) (facts set forth in pleading are presumed true, thus court accepted that New Jersey law governed claims deferring choice of law analysis until a full factual record was presented); *In re K—Dur Antitrust Litigation*, 338 F.Supp.2d 517, 541-42 (D.N.J.2004) (postponing choice of law analysis to class certification stage); *Samsung DLP Television Class Action Litigation*, 2009 WL 3584352, at \*3 (D.N.J. Oct. 27, 2009) ("Due to the factual inquiry that may be necessary to properly weigh the Restatement factors, "it can be inappropriate or impossible for a court to conduct  that analysis at the motion to dismiss stage when little or no discovery has taken place."); *Arlandson v. Hartz Mt. Corp*., 792 F.Supp.2d 691, 702 (D.N.J. 2011) *reconsideration denied*, 2011 WL 3703412 (D.N.J. Aug. 23, 2011) (premature to conduct choice of law determination as to breach of express warranty since fact intensive inquiry required, hence court determined whether the breach of warranty allegations stated a claim applying New Jersey law).

Defendant's reliance upon *Chin* and *In re Ford Motor Co., United Techs. Auto., Inc*., 174 F.R.D. 332 (D.N.J. 1997) is misplaced.  Choice of law issues were raised in both cases that were later decided in the context of class certification motions, not at the motion to dismiss stage.  Additionally, *Cooper v. Samsung Elecs. Am., Inc*., 374 F. App'x 250, 256 (3d Cir. 2010), does not support the proposition that choice of law decisions must be made now.  Rather, that court merely indicated, in a footnote, that the trial judge did not commit reversible error by resolving the choice of law issue

10

regarding the statutory consumer fraud act claim at the motion to dismiss stage.  This is not a ringing endorsement of deciding choice of law issues on a motion to dismiss, particularly given Judge Ambro's dissent suggesting remand because the trial court applied pre-Camp Jaycee law, and "the relevant policies of the forum" would support applying New Jersey law under the Restatement analysis.[11]

BMW, NA has not established that choice of law issues need to be addressed now deciding the issue with respect to the numerous causes of actions asserted would be premature.

### A.  It Is Premature To Consider Whether A Nationwide Breach Of Warranty Claim Is Appropriate

BMW NA asserts that plaintiffs cannot pursue a nationwide breach of warranty claim under New Jersey law.  However, in making this assertion, every single opinion cited was decided in the context of a motion to certify the class, not a motion to dismiss.  See *Payne v. FujiFilm U.S.A., Inc.*, 2010 WL 2342388, at *1 (D.N.J. May 28, 2010) (decision on class certification); *Marcus v. BMW of N. Am., LLC,* 2010 WL 4853308, at *1 (D.N.J. Nov. 19, 2010), *vacated*, 687 F.3d 583 (3d Cir. 2012) ("Having survived the defendants' motions to dismiss Marcus now moves for certification of his proposed classes."); *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 509 (S.D.N.Y. 2011) (opinion regarding class certification); *Chin*, at 450 and *In re Ford Motor Co., United Techs. Auto., Inc*., 174 F.R.D. 332 (D.N.J. 1997); *Arons v. Rite-Aid Corp*., 2005 WL 975462 (N.J. Super. Mar. 23, 2005) (choice of law determination in the context of a breach of warranty class action during the class certification motion).  Thus, it is premature for this Court to resolve choice of law issues at this early stage of the litigation.

---

[11]   Case citations at Def.'s Mem. n.6 are inapposite.  In *McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *5 (D.N.J. June 6, 2014), the only cited case from this jurisdiction, the court held that a New Jersey resident would lack standing to assert claims arising under the laws of other unknown jurisdictions. Here there are numerous plaintiffs in various jurisdictions, a totally different situation. Judge Linares stated: "The Court cannot reasonably determine at this time whether Plaintiff can pursue claims of breach of express and written warranty and/or violation of the NJCFA on a nationwide class action basis, as  such an analysis would be entirely speculative at this juncture." *Id*. at *4.

In *Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 249650 (D.N.J. 2008), the court certified a nationwide breach of warranty class under New Jersey law rejecting defendant's claim that the law of all 50 states would have to be applied.  The court held that the failure to identify specific conflicts applicable in the different states resulted in applying the law of the forum and if the court had to conduct a choice of law analysis it would find that New Jersey law applied since "[a] New Jersey business made a promise emanating from New Jersey.  An express warranty embodies a promise and New Jersey has an interest in ensuring its businesses live up to their promises to consumers and provide a remedy if the promise is broken."

Indeed, where defendant seeks a determination on the choice of law issue regarding breach of warranty at the motion to dismiss stage most courts find that it is premature to make that determination and this Court should so hold.

## B.  It Is Premature To Determine Now Whether The New Jersey Consumer Fraud Act ("NJCFA") Will Apply To A Nationwide Class

BMW NA's reliance on *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 210 (3d Cir.2013), is misplaced since that case involved a choice of law determination at the summary judgment stage.  Indeed, the court distinguished *In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J. 2009), where Judge Debevoise conducted his choice of law analysis on a motion to dismiss.  The Third Circuit held that the trial court "was bound to accept as fact that defendant's marketing team was solely responsible for the alleged misrepresentations and omissions and that all of the misconduct took place in New Jersey." *Maniscalco* at 211.  Similarly, if this Court were to conduct a choice of law analysis based upon the pleading here, we submit *Tele Aid* and the case at bar share many similarities.  In both cases, the conduct arose out of concealment of product defects where defendants maintain executive offices and employees in New Jersey with responsibility for making decisions concerning the resolution of design defects.  BMW NA operates its national marketing, warranty, consumer relations and engineering operations from its New Jersey facility. CAC ¶ 15.

Concealment of class engine defects was orchestrated at its NJ headquarters. CAC ¶ 18.  Thus, as with *Tele Aid*, defendant's executives and employees in this case concealed material facts in New Jersey regarding the defects and dangers of its product.  *See also Kalow & Springut, LLP v. Commence Corp.*, 2012 WL 6093876 (D.N.J. Dec. 7, 2012) ("[T]his Court concluded that New Jersey's interests in having its law apply were –especially strong" given the fact that the defendant was a New Jersey corporation with its principal place of business in New Jersey and its employees were located in New Jersey.")

Although BMW NA relies upon *McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *4 (D.N.J. June 6, 2014) (Def.'s Mem. n.6), Judge Linares stated that a choice of law analysis could not properly be performed until the case progressed through discovery "as such an analysis would be entirely speculative at this juncture."

## C.  A Similar Analysis Should Be Applied To Plaintiffs' Negligent Misrepresentation And Unjust Enrichment Claims Since The Choice of Law Determination Would Be Premature

A similar analysis dictates that it is equally premature to determine which law is applicable to plaintiffs' negligent misrepresentation and unjust enrichment claims, particularly as there is significant precedential authority in New Jersey that unjust enrichment law does not vary in any substantive manner from state to state[12].  So too, as to negligent misrepresentation.[13]

Since no actual conflict exists, New Jersey law should be applied to all plaintiffs' unjust enrichment and negligent misrepresentation claims.

---

[12] *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 710 (D.N.J. 2012) (finding no significant variations on the law of unjust enrichment); *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723 (D.N.J. 2011) (finding that "[n]umerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state" and applying New Jersey law to all of plaintiffs' claims). *See also In re Mercedes–Benz Tele Aid Contract Litig.* at 58 (finding that any differences under the laws of the various states are "not material and do not create actual conflict"); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 464 (D.N.J. 2009) (concluding that "there are no actual conflicts among the laws of unjust enrichment"); *Morcom v. LG Elecs. USA, Inc.*, 2017 WL 8784836 at *9 (D.N.J. Nov. 30, 2017).
[13] *See Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 249–50 (D.N.J. 2008) (court applied New Jersey law to all negligent misrepresentation claims).

**POINT III:   PLAINTIFFS STATE VALID WARRANTY CLAIMS**

   **A.   Plaintiffs Have Asserted Valid Express Warranty Claims**

   BMW NA argues that plaintiffs' warranty claims fail because plaintiffs fail to allege that they

experienced malfunction of their defective chain assemblies within the warranty period.  As an initial

matter, this is simply untrue. As ¶ 58 of the CAC makes clear, "[a]lthough their vehicles' chain

assembly failure occurred outside the unilateral express warranty period . . . the proposed class

representatives' class vehicles exhibited unmistakable symptoms . . . of degradation and impending

premature failure within the express warranty period." *Id.*   Plaintiffs' premature chain assembly

malfunctions commenced within the express warranty period.

   In any event, defendant BMW NA's entire argument ignores plaintiffs' express allegations that

the warranty terms and limitations were unconscionable.  CAC ¶¶ 81-92.  While an express warranty

may not cover defects manifesting outside the warranty period, a plaintiff may state a claim if he

properly alleges that the warranty was unconscionable. *Skeen v. BMW of N. Am., LLC*, 2014 WL

283628, at *12 (D.N.J. Jan. 24, 2014).[14]

   Under New Jersey and a number of other states' law, an allegation of unconscionability

requires a plaintiff to plead both substantive as well as procedural unconscionability.[15] *Id.*, 14; *PB

Prop. Mgt., Inc. v. Goodman Mfg. Co., L.P.*, 2013 WL 12172912, at *4 (M.D. Fla. Aug. 28, 2013)[16];

───────────────────

[14] Uniform Commercial Code § 2-302 states in pertinent part:

   (2) When it is claimed or appears to the court that the contract or any clause thereof
   may be unconscionable the parties shall be afforded a reasonable opportunity to
   present evidence as to its commercial setting, purpose and effect to aid the court in
   making the determination.

[15] Under Illinois law, an allegation of unconscionability may be either substantive or procedural and
need not be both. *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 100 (2006).

[16] The court in *PB Pro. Mgt.* found that the plaintiff's allegations that the warranty limitation was
unconscionable was sufficient to "surmount the low hurdle presented at [the] motion to dismiss stage.
[Moreover,] [u]nder Florida law, a warranty limitation may be unconscionable when a defect is latent

*Leaf Fin. Corp. v. Carroll*, 2009 WL 112567, at \*4 (D.Mass. Jan.16, 2009). A contract term will be considered substantively unconscionable if the term is "excessively disproportionate," involving an "exchange of obligations so one-sided as to shock the court's conscience." *Skeen* at 13.  *See also Leaf Fin. Corp* (requiring a showing of "contract terms which are unreasonably favorable to the other party" for substantive unconscionability); *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1139 (11th Cir. 2010) (ruling that "[s]ubstantive unconscionability focuses on the terms of the agreement itself and whether the terms of the contract are ‗unreasonable and unfair'"); *Razor v. Hyundai Motor Am.*, 222 Ill.2d 75, 100 (2006) ("[s]ubstantive unconscionability refers to those terms which are inordinately one-sided in one party's favor").  "Likewise, regardless of the state, procedural unconscionability focuses on the circumstances of the negotiation that produced the contested term, especially the personal qualities of the negotiators." *Skeen* at \*13.  Procedural unconscionability can be pled through allegations of "oppression" which "arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Id*.

Both forms of unconscionability have been sufficiently pled in the CAC.  As in *Skeen* and *VW Timing Chain Litig.*, *supra* at \*11-12, the CAC alleges that defendants knew of the defect before the sale of class vehicles to plaintiffs and that the defect would likely manifest after the warranty period but prior to the end of the vehicles' useful and expected lives, and thus unfairly manipulated the warranty terms to avoid paying for repair costs when their vehicles' engine components failed prematurely. CAC ¶¶ 85-87. *See also Skeen* at \*14; *VW Timing Chain Litig.* at \*\*11-12.  Moreover, plaintiffs allege that, given the inherent defects in class vehicles and incorrect maintenance recommendations, the terms of the warranty were "oppressive, unreasonable, unconscionable" and one-sided in unfairly shifting repair costs to consumers. CAC ¶¶ 81, 83, 89, 90.

---

and the manufacturer knows that the product's effectiveness is questionable." *PB Prop. Mgt., Inc.* at \*4.

Plaintiffs additionally allege that they had no meaningful choice in setting forth the time and mileage limitations in the warranty, and were unfairly taken advantage of because defendants knew about the defect at the time of sale, while the consumer plaintiffs did not.  CAC ¶¶ 81-85.  Beyond the disparity in sophistication and knowledge of the parties, plaintiffs and class members also suffered from a lack of bargaining power and warranty competition, as well as an inability to bargain to modify the unfair terms of the warranty, including the manipulated durational limits.  CAC ¶¶ 81, 85, 87.

For these reasons, plaintiffs have pled sufficient facts alleging that the express warranties were unconscionable, and therefore defendants' warranty expiration arguments are premature at the pleading stage. *VW Timing Chain Litig.* at *11. *See also In re Ford Motor Co. Ignition Switch Products Liability Litig.*, 1999 WL33495352 at *12 (D.N.J. May 14, 1999).  Accordingly, plaintiffs' breach of express warranty claims and breach of implied warranty claims should not be dismissed until a factual finding on their conscionability is determined. *Skeen* at *12.

### B.  Plaintiffs Have Asserted Valid Implied Warranty Claims

BMW NA erroneously argues that plaintiffs failed to allege their vehicles were not merchantable at the time of sale.  However, the defendant fails to properly read the complaint's allegations that unequivocally state that class vehicles were not merchantable at the time of sale. CAC ¶¶ 51, 135, 139, 141, 159.  Plaintiffs specifically allege that defects in materials, manufacture and/or workmanship inherent in their chain assemblies existed from the time of the sale and that their vehicles were never fit for the ordinary purposes for which passenger vehicles are used – the safe and effective transport of passengers.  Operators of class vehicles faced the constant prospect during the course of operation of "catastrophic engine damage and/or complete failure ... loss of engine power without warning, loss of power-assisted steering and reduced braking ..." and "loss of directional stability and steering." CAC ¶ 4. *See also In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, 2008 WL 4126264, at *20 (D.N.J. Sept. 2, 2008) (finding a claim for breach of implied warranty was sufficiently pled where plaintiffs assert that their vehicles were not merchantable at the time of the sale because

they were not reasonably fit for their intended purpose of safe transportation).    Although merchantability does not mean that "the goods are exactly as the buyer expected," *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig*., 2001 WL 1266317, at *22 (D.N.J. Sept.30, 1997), an automobile is not merchantable when a defect renders a vehicle unfit for its ordinary purpose of providing *safe* transportation.  *In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)* at *20.  *See also*, *Falco v Nissan North America, Inc*., 2013 WL 5575065 at *9 (C.D. Ca. Oct. 10, 2013) (finding timing chain defect complaint properly alleged a breach of implied warranty claim since, even if the vehicle takes occupant from point A to B, "[a] vehicle that smells, lurches, clanks and emits smoke over an extended period of time is not fit for its intended purpose").

BMW NA cites to *Sheris v Nissan N. Am. Inc*., 2008 WL 2354908, at *5 (D.N.J. June 3, 2008) and suggests that because plaintiffs drove their vehicles for a few years before the chain assembly defects manifested, no defects were inherent at the time of sale.   *Sheris*, however, is distinguishable.  *Sheris* concerned whether a particular brake system was defective where this system requires periodic replacement of so-called "wear and tear" components.  Because the plaintiff was able to drive his vehicle for 20,618 miles and for about two years before he needed to replace his brake pads and rotors, the court found that the plaintiff failed to allege that the vehicle was unfit at the time of sale for its ordinary purpose of safe transportation.   BMW class vehicles incorporated defects in their engine chain assemblies that are non-maintenance lifetime components of the engine.  These chain assembly defects existed at the time of sale and created conditions for unsafe catastrophic failure from the date of purchase.  *See Greene v BMW of N. Am.*, 2013 WL 5287314, at *3 (D.N.J. Sept. 17, 2013) (distinguishing *Sheris*).

Established case law of New Jersey and other states make clear that so long as the alleged defect in the goods existed at the time of sale, a claim for breach of implied warranty of merchantability has been properly stated.  *See e.g. Snodgrass v. Ford Motor Co*., 2002 WL 485688, at *5 (D.N.J. Mar. 28, 2002); *Lipinski v. Martin J. Kelly Oldsmobile*, Inc., 325 Ill. App. 3d 1139, 1151

(Ill. App. Ct. 2001) ("An implied warranty of merchantability applies to the condition of the goods at the time of sale and is breached only if the defect in the goods existed when the goods left the seller's control."); *Marcus v. Anderson/Gore Homes, Inc.*, 498 So. 2d 1051, 1052 (Fla. Dist. Ct. App. 1986). An "implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale."; *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at *22 (D.N.J. Oct. 9, 2013) (citing *Mexia v. Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285, 290691 (Cal. Ct. App. 2009)) (quotations omitted) (to state a breach of implied warranty claim, a plaintiff need *not* allege that their vehicle "failed to work properly from the outset"). In fact, "[u]ndisclosed latent defects ... are the very evil that the implied warranty of merchantability was designed to remedy." *Id*. (citations and quotations omitted). Ultimately, "[i]n the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery." *Id. See also Collins v. Sears, Roebuck and Co*., 31 Mass. App. Ct. 961 (Mass. App. Ct. 1992) (finding that evidence of a defect which existed in an electric clothes dryer at time of sale that caused a house fire properly supported a breach of implied warranty of merchantability claim even though the fire occurred two and one half years *after* the sale).

Although the total failure of plaintiffs' chain assemblies and discovery of their defective nature may not have occurred until years after the sale, the inherent defects in materials, manufacture and/or workmanship were present at the time of sale. This condition renders class vehicles unmerchantable and plaintiffs have properly pled claims for breach of implied warranty.

**POINT IV:   ALL PLAINTIFFS STATE A CLAIM UNDER
               THE MAGNUSON-MOSS WARRANTY ACT**

BMW NA challenges plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claims by invoking the condition set forth in 15 U.S.C. § 2310(d)(3)(C) requiring a class action to maintain at least 100 named plaintiffs when making a MMWA claim. Def.'s Mem. at n.26. However, the requirement of 15 U.S.C. 2310(d)(3) applies only to MMWA claims brought under 15 U.S.C. §

2310(d)(1)(B), allowing for MMWA claims for damages and other legal and equitable relief brought in an appropriate district court of the United States.  Plaintiffs' MMWA claim is expressly brought pursuant to 15 U.S.C. § 2310(d)(1)(A) that allows an MMWA claim to be brought by plaintiffs in their respective states' courts.  That claim is now "before this Court as a supplemental state claim for each of the state subclasses pursuant to diversity jurisdiction under CAFA."  CAC ¶ 149.  As such, the requirement of 100 named plaintiffs under 15 U.S.C. § 2310(d)(3)(C) is not applicable.

The defendant urges this Court to follow the ruling of *In re Blumer v. Acu-Gen Biolabs, Inc.*, 638 F. Supp. 2d 81 (D. Mass. 2009) finding against independent CAFA-based jurisdiction under these circumstances and insisting that § 2310(d)(3)(C)'s 100-plaintiff MMWA requirement remains.  Multiple courts in this district have already considered the issue and reached a contrary conclusion.  CAFA does provide an alternate basis of federal jurisdiction over MMWA claims independent of 15 U.S.C. § 2310(d)(1)(B).  *McGee v. Cont. Tire N. Am., Inc.*, 2007 WL 2462624, at *4 (D.N.J. Aug. 27, 2007); *McCalley v. Samsung Electronics America, Inc.*, 2008 WL 878402, at *4 (D.N.J. Mar. 31, 2008).  *See also Chavis v. Fidelity Warranty Services, Inc.*, 415 F.Supp.2d 620 (D.S.C. 2006) (seminal case holding courts must presume that Congress enacted newer legislation to be harmonious with the existing law and Congress, therefore, must be presumed to have been aware of MMWA's limited jurisdictional provisions and intended to expand them with CAFA).

Ultimately, the parties appear to agree on one thing - where plaintiffs assert a viable breach of warranty claim, either express and/or implied, plaintiffs have satisfied the pleading requirement to assert an MMWA claim.  Def.'s Mem. at 23-24, n.27, 28*; Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (MMWA claims "stand or fall" with the "express and implied warranty claims under state law").  In fact, aside from the jurisdictional matter discussed above, the defendant does not attack the sufficiency of plaintiffs' MMWA claim.  Rather, the defendant's sole argument in support of its motion to dismiss plaintiffs' MMWA claim is premised on its anticipated

dismissal of plaintiffs express and implied warranty claims.  (Def.øs Mem. at 23-24.  *A fortiori*, if either of those claims survive, the MMWA claim must survive to the same extent.

**POINT V:  THE COMPLAINT'S STATE CONSUMER PROTECTION COUNTS
SATISFY THE SPECIFICITY REQUIREMENTS OF RULE 9(b)**

The complaint alleges in sufficient detail that the defendants knowingly failed to disclose to plaintiffs that their class vehicles were defective, i.e., the engineøs chain assemblies prematurely fail and subject class engines to power loss, stalling and/or catastrophic engine failure.  CAC ¶¶ 2-9.  The complaint also alleges that the defendants affirmatively misrepresented the characteristics of the chain assemblies including performance, maintenance and durability in their misleading warranty materials and maintenance schedules that directly influenced class vehicle purchasers. CAC ¶¶ 6-7, 75.

Where there are multiple sources of reliable information, such as consumer complaints (CAC ¶¶ 39-40), aggregate data collected from dealers including monitoring of warranty claims and performance of vehicles (CAC ¶¶ 17, 53, 72), defendantsø warranty and field inspection personnel (CAC ¶ 72), pre-and post-release testing data compiled by various BMW, NA specialized departments (CAC ¶ 170), multiple chain component redesigns (CAC ¶¶ 30-34) and evidence of standard industry monitoring practices, these sources are sufficient to support a claim of a manufacturerøs knowledge of the defect.  *See In re Porsche Cars N. Am., Inc.*, 880 F. Supp.2d 801, 816-17 (S.D. Ohio 2012).  This is particularly true here where the defendants redesigned the chain assembly components multiple times and reassigned new part numbers to each subsequent revision. CAC ¶¶ 30-34.

While Def.øs Mem. at p. 25, incorrectly asserts the Court should not consider the õanonymous complaints posted to NHTSAøs websiteö set out in the CAC,[17]  a court in this jurisdiction recently had an opportunity to address this exact issue.  *See In Re VW Timing Chain Litig.,* at **4, 19 (court fully considered consumer complaints to NHTSA in finding the complaint adequately alleged defendantsø knowledge of engine defect).  These NHTSA complaints are not õanonymous.ö  The NHTSA-ODI

---

[17] The NHTSA class vehicle defect complaints are set out at CAC ¶ 40.

website allows consumers to "identify and report problems you might be having with your vehicle, tires, equipment or car seats."  A complaint is only added to the public NHTSA database after removal of all information from complaint fields that personally identify a complainant.   NHTSA-ODI complaints are made by individuals who must identify themselves, enter detailed multi-page contact information and vehicle information (including an accurate VIN) before the complaints are reviewed and analyzed by NHTSA.  In addition, defendants have and continue to be under a legal obligation pursuant to federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them.  The defendants therefore assiduously monitor the NHTSA-ODI website and the complaints filed in order to comply with federal reporting obligations.  CAC ¶ 49.  Class vehicle owner complaints to NHTSA are properly before this Court and should be considered.

Unanticipated sudden engine primary and secondary chain assembly failure in class vehicles is also a material safety risk to occupants of class vehicles and other motorists.  CAC ¶¶ 4, 40.  The defendants failed to inform purchasers that the class engine chain assemblies were defective and should be replaced, at minimum, every four years or 50,000 miles, whichever occurs first, to prevent unanticipated failure. CAC ¶¶ 110, 210.  "The defendants fraudulently, intentionally, negligently and/or recklessly concealed from the proposed class representatives and proposed class members defects in class vehicles even though the defendants knew or should have known information concerning these defects was material and central to the marketing and sale of class vehicles to prospective purchasers including proposed class representatives and proposed class members." CAC ¶¶ 100, 104.

The defendants made misrepresentations and omissions of a material nature concerning the characteristics of their class vehicles that were received by plaintiffs prior to and at the point of vehicle purchase.  CAC ¶ 62.  These misrepresentations, omissions and fraudulent statements were made by BMW dealers referencing the defendants' publications concerning class vehicles that created a reasonable belief that the useful life expectancy of the chain assemblies in class engines without a

major failure was in excess of 150,000 miles. *Id.* These representations specifically and unequivocally stated that the engine chain assemblies were non-maintenance lifetime engine components. CAC ¶¶ 7, n.4, 62.[18] Had plaintiffs known of the material omission and false statements during the warranty period, they would have brought their vehicles into an authorized BMW dealer to have the chain assemblies replaced prior to the end of the warranty. CAC ¶¶ 67, 70, 88, 177.

In *VW Timing Chain Litig., supra*, Chief Judge Linares had the opportunity to explore very similar complaint allegations when deciding a motion to dismiss involving another automobile manufacturer and its American subsidiary. *See VW Timing Chain Litig., supra.*[19] The court in *VW Timing Chain* denied the defendants' motion to dismiss the multi-state consumer protection counts sounding in fraud where it was determined that:

> As to the particularity, the Court has discussed, in great detail, how Plaintiffs' Complaint is replete with allegations of both overt misrepresentations and active concealment with respect to the alleged defect in the Timing Chain System. Indeed, Plaintiffs make very specific allegations about how they were supposedly misled about the defective Timing Chain System, along with misrepresentations by Defendant regarding the warranties, the useful life of the vehicle and its engine components, as well as the necessary maintenance and repairs associated with the Class Vehicles.

*Id.* at *23.

Similarly, in *Dewey v. Volkswagen*, 558 F.Supp.2d 505 (D.N.J. 2008), the court declined to dismiss the fraudulent omission count premised on common law fraud and the New Jersey Consumer Fraud Act where the complaint alleged:

> Volkswagen did not fully and truthfully disclose to its customers the true nature of the inherent design defects, which were not readily discoverable until years later, often

---

[18] "Although their vehicles' chain assembly failure occurred outside the unilateral express warranty period (the length of which was not bargained for prior to purchase), the proposed class representatives' class vehicles exhibited unmistakable symptoms (known only by the defendants) of degradation and impending premature failure within the express warranty period." CAC ¶ 58. The defendants wrongfully refused to replace failing defective chain assembly components under the vehicle's power train warranty while the vehicles were still within the warranty period. *Id.* at ¶¶ 59, 70, 87, 177.

[19] *See also Skeen, supra*; *Falco v. Nissan North America Inc.*, *supra* at *6; *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, 2008 WL 4866604 (D. Neb. Nov. 7, 2008).

after the warranty has expired. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and or purchase the Class Vehicles with the said design defects and all of the resultant problems....

*Id.* at pp. 527-28.

Other courts have held that similar language satisfies the pleading requirements of Fed R. Civ. P. 9(b). *Maniscalco* held that the following language satisfied Rule 9(b) requirements where it was alleged that manufacturer Brother International Corporation committed fraud by:

c. Marketing, advertising, and selling machines *that they know* are likely to fail due to the ME41 defect before their expected useful life of five years or 50,000 pages of printed material, *while intentionally concealing and failing to disclose* information to prospective purchasers; and

d. Unconscionably limiting warranty coverage for a print-head failure caused by the ME41 defect, despite [Defendant]'s knowledge that the ME41 defect would cause print heads in MFC machines to fail after the warranty period expired, but before the projected useful life of the MFC machines ....

*Id.* at p. 500 (emphasis in original).

The following complaint allegations were deemed sufficient to satisfy Rule 9(b)'s requirement in *Henderson v. Volvo Cars of North America, LLC.,* 2010 WL 2925913 (D.N.J. 2010):

Defendants were aware that model years 2003 through 2005 of the Volvo XC90 T6 suffered from a common design defect resulting in transmission problems, but failed to disclose this to Plaintiffs and Class members....

Defendants did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the transmission, which was not readily discoverable until years later, often after the warranty has expired. As a result, Plaintiffs and the other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the said design defects and all of the resultant problems.

*Id.* at *5.[20]

The complaint here fully comports with the requirements of Fed R. Civ. P. 9(b) where the plaintiffs have properly alleged the elements of surreptitious corporate fraud by omission by the defendants. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d at 1418; *Kuney* at 237. The

---

[20] The *Henderson* court allowed the common law fraud by omission claims to proceed together with a claim brought by a Massachusetts resident for violation of Mass. Gen. L. ch. 93A as well as other state consumer laws grounded in fraud.

complaint does more than just inject "some measure of substantiation into their allegations of fraud" since the complaint accomplishes the primary aim of Rule 9(b) that is to "place the defendants on notice of the precise misconduct with which they are charged." *Seville Indus. Mach. Corp,* 742 F.2d at 791. *See also*, *Montich v. Miele USA, Inc*., 849 F. Supp. 2d 439, 451 (D.N.J. 2012). "[P]laintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim." *Feldman v. Mercedes–Benz USA, LLC*, No. 11-cv-00984, 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012). This principle is particularly applicable to this proceeding since the defendants design and manufacture complex products where evidence demonstrating some elements of fraud by omission is entirely within BMW's exclusive possession. The complaint sets out enough specificity of the defendants' fraud by omission to satisfy both the relaxed fraud by omission standard and heightened fraudulent misrepresentation pleading requirements of Fed R. Civ. P. 9(b). Those allegations detail "what the omissions were ... the person responsible for the failure to disclose ... the context of the omissions and the manner in which they misled the plaintiff, and ... what defendant obtained through the fraud." *Id*. at ¶¶ 107-114.

The complaint adequately identifies that the defendants fraudulently omitted to disclose material facts basic to both the purchase and service of class vehicles including information concerning class engine chain assembly defects in an effort to deceive purchasers. This information included impact on future repairs, operating costs and vehicle reliability.[21] CAC ¶¶ 2-8, 28-39, 107-110. The defendants fraudulently concealed from the plaintiffs and class members the chain assembly defects the defendants knew or should have known were material and central to the marketing and sale of class vehicles to prospective purchasers. *Id.* at ¶ 107. The defendants concealed from plaintiffs during their respective warranty periods that a defect existed with the engine chain assemblies that could have and

---

[21] Replacing the chain assemblies on class engines is an expensive repair costing upwards of between $1,800.00 for a single chain replacement to more than $11,000.00 for a used engine. CAC ¶ 13. A new engine costs more than $22,000.00. CAC ¶ 8.

should have been remedied by replacement during the warranty period, particularly as it was a safety issue.[22]   The defendants' withholding of this material information deprived plaintiffs of the right to have the defective chain assemblies replaced without cost under warranty. CAC ¶ 110.

It is alleged that this material information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including the proposed class representatives and proposed class members).   Other fraud was premised on false statements set out in the Owner's Manual and the Service and Warranty Information materials.   CAC ¶¶ 77-79, 112-113. Clearly, if the plaintiffs had been informed of defects in their class vehicles, they would not have purchased their respective class vehicles or would have paid substantially less, and as a result they have suffered diminution in value in addition to required payment for repairs, as well as the cost of future repairs.   If the proposed class representatives and proposed class members had been informed of the defect during the warranty period, they would have had the defective part replaced under warranty. CAC ¶¶ 110-112.   The defendants' conduct violated the consumer fraud statutes further by depriving the proposed class representatives and proposed class members of the repair or replace remedy set out in the class vehicle limited power train warranty. CAC ¶ 52, 118.[23]

---

[22] More specifically, the defendants intentionally and fraudulently omitted to disclose (as required by federal and state statutes and regulations) to plaintiffs that their respective class vehicles incorporated serious defects that had a significant safety effect on the vehicle's operation and economic value. *Id.* at ¶¶ 4, 98.

[23] The CAC also asserts a claim of "unfair" conduct under Massachusetts' consumer protection statute, Mass. Gen. L. ch. 93A (hereinafter "MCPS").   "[O]ne difference between a fraud claim and the more liberal 93A is allowance of a cause of action [for failure to disclose material facts] even in the absence of a duty to disclose." *V.S.H. Realty, Inc., v. Texaco, Inc.*, 757 F.2d 411, 417 (1st Cir. 1985).   The MCPS also allows claims where a defendant violates the Federal Trade Commission Act of 1914, 38 Stat. 719, codified at 15 U.S.C. §§ 41-58, as amended (hereinafter "FTCA").   Mass. Regs. Code tit. 940, § 3.16(4) (1993).   FTCA unfair business violations occur where: (1) substantial injury occurs to consumers; (2) who were unable to have reasonably avoided the injury due to no fault of their own; and, (3) the defendant's conduct do not provide any countervailing benefits to consumers or competitors.   Plaintiffs' Complaint plausibly alleges that the defendants violated the FTCA.   CAC ¶¶ 13, 202-204, 208, 214, 218 and such alleged conduct is governed by the liberal pleading standard of Rule 8(a).

Since Massachusetts non-fraudulent unfair conduct claims are not subject to the Rule 9(b)

In sum, the complaint sets out in sufficient detail defendants' fraudulent omissions and should not be dismissed since sufficient allegations of the defendants' fraud by omission, satisfy the pleading specificity requirements of Rule 9(b) for the violation of state court consumer protection statutes sounding in fraud.[24]   Accordingly, the complaint state consumer claims allegations of Counts IV through and including Count XIX should not be dismissed.

**POINT VI:   PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS MAKE PLAUSIBLE ALLEGATIONS OF NEGLIGENT MISREPRESENTATIONS OF MATERIAL FACTS CONCERNING ATTRIBUTES OF THE CLASS ENGINE CHAIN ASSEMBLIES [25]**

Defendant BMW NA misrepresents the context and content of the CAC allegations with its incorrect characterization that: "[T]he misrepresentations Plaintiffs assert are really omissions." Def.'s. Mem. at 27.  In addition to plaintiffs' allegations of material omissions, the CAC articulates in multiple paragraphs, defendants' affirmative representations and incomplete representations that were misleading to class vehicle owners concerning the cause of class engine failures, the useful and expected life of class vehicles, and their recommended maintenance program.  CAC ¶¶ 44, 61-62, 65, 67, 75-76, 100.  These representations created a reasonable belief that the "engine primary and

---

pleading standard, the unfair conduct claims must merely pass muster under Rule 8(a). There is no question that the defendants' negligent and/or unfair conduct creates a cause of action under the MCPS as that branch does not require deceit or recklessness in order to recover under the regulation. *Sheehy v. Lipton Industries, Inc.,* 24 Mass App. Ct. 188,195, 507 N.E.2d 781,785 (1987), *further rev. denied*, 400 Mass. 1103, 509 N.E.2d 1202 (1987). *See also Urman v. South Boston Savings Bank*, 424 Mass. 165, 168, 674 N.E.2d 1078, 1081 (1997) (nondisclosure of material facts actionable under § 3.16(2) without requiring proof of fraudulent intent or deceitful conduct). "[I]t is not a defense to a c. 93A claim that the defendant's conduct was negligent rather than intentional ... " *Linthicum v. Archambault*, 379 Mass. 381, 388, 398 N.E. 482, 488 (1979) (citing to Rice, *New Private Remedies for Consumers: The Amendment of Chapter 93A*, 54 Mass.L.Q. 307, 314 (1969) for the proposition "neither intent to engage in an unlawful act nor knowledge of its unlawfulness is required in order to establish liability").

[24]  Defendants concede that plaintiffs' New York GBL §349 claim is adequately pleaded.

[25] A "cause of action for negligent misrepresentation may exist when a party negligently provides false information." *Karu v. Feldman*, 119 N.J. 135, 146 (1990).  Liability for the misrepresentation "extend[s] to all reasonably foreseeable recipients." *Id.*  This general principle of law is accepted by New Jersey and other states.

secondary chain assemblies were non-maintenance engine lifetime componentsö with a useful life expectancy in excess of 150,000 miles.  CAC ¶ 62.  These affirmative statements appeared in the Ownerøs Manual and the Service and Warranty Information materials.  *Id.*, ¶¶ 62, 65, 100.  The CAC also alleges that the defendantsø customer service representatives affirmatively misrepresented the existence of chain assembly defects and the cause for class vehiclesø failures and consequent warranty coverage. CAC ¶ 67.[26]  The defendantsø affirmative statements alleged in the CAC are more than sufficient to maintain the count for negligent misrepresentation.  *VW Timing Chain Litig.,2017 WL 1902160,* at *18 (describing actionable affirmative misrepresentations in warranty manuals, maintenance schedules, warranty application and cause of component failure that are substantially similar to the complaint allegations here).

### A. The CAC Alleges Defendants Had Exclusive And Superior Knowledge Of The Chain Assembly Defects And, As Such, Owed A Duty Of Disclosure To Class Vehicle Purchasers

Although the complaintøs allegations of defendant BMW NAøs material omissions concerning class vehiclesø defects can only support a negligent misrepresentation claim if the defendants owed an independent legal duty to disclose, *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 315 (2002),[27] the

---

[26] Paragraph 67 of the CAC recites in full as follows:

> The defendantsø customer service telephone representatives made false and fraudulent representations to class members as to the cause and existence of chain assembly defects in class vehicles although the service representatives received hundreds of consumer complaints that class vehicles prematurely failed. The defendantsø employees falsely represented certain conditions for which the defendants were not responsible as the basis for the failures that were in fact caused by a defect in materials, manufacturing and design. They falsely stated that defendants were not responsible for the resulting class vehicle failures and/or denied the existence of known class vehicles defects.

[27] As a matter of law, courts in some states including California have suggested that õ[w]hen the defendant purports to convey the ¬whole truthø about a subject, ¬misleading half-truthsø about the subject may constitute positive assertions for the purpose of negligent misrepresentation.ö Here, the complaint alleges that BMW NA conveyed descriptions of class vehicles and their parts to purchasers through the ownerøs manual, service pamphlet, and other materials. CAC ¶ 62. Accordingly, by not also disclosing the chain assembly defects in their exclusive knowledge, their descriptions amounted to

defendants owed a duty to disclose chain assembly defects since they were in exclusive possession of the defect information that affected class vehicle safety while class vehicle purchasers were not cognizant of the defects or the associated dangers. CAC ¶¶ 41-42, 60, 66, 69, 102. These allegations are sufficient to establish that the defendants possessed superior and exclusive defect knowledge and as such had a duty of full disclosure to class vehicle owners. *See Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at *17 (D.N.J. Oct. 9, 2013) (duty of disclosure owed where manufacturer with exclusive knowledge of defect through õpre-release testing data, early consumer complaints . . . testing conducted in response to those complaints, high failure rates and replacement parts sales data contained in [Land Roverøs] warranty databases, as well as high reimbursement claims paid to Land Rover dealersö); *Mukamal v. GE Capital Corp.* (*In re Palm Beach Fin. Partners, L.P.*), 517 B.R. 310, 335 (Bankr. S.D. Fla. 2013).[28]

Defendant BMW NAøs arguments that the economic loss rule precludes claims premised on negligent misrepresentation are similarly unavailing. As every rule has its exception, New Jersey and other states have specific exceptions to the economic loss rule where tort claims are based on fraud, conduct independent of a contract or where there is a risk of personal injury. *See, e.g.*, *Park v. Inovio Pharms., Inc.*, 2016 U.S. Dist. LEXIS 24993, *4-6, 2016 WL 796890 (D.N.J. Mar. 1, 2016).

In this case, as in *VW Timing Chain Litig*, the defendantøs fraudulent misrepresentations and omissions were outside of any contract and the chain assembly defects pose serious risk of personal harm. *VW Timing Chain Litig.,* at *21; CAC ¶¶ 3-4, 41-44, 73. Accordingly, plaintiffsø negligent misrepresentation claims are not precluded by the economic loss rule and should be allowed to

---

õmisleading half-truthsö constituting positive assertions purposes of their negligent misrepresentation claims.

[28] The defendants also owed a duty to class vehicle owners to correct their improper maintenance recommendations and intervals set forth in the Ownerøs manual and Service and Warranty Information pamphlet that affected vehicle operation and safety. CAC ¶¶ 77-79.

proceed.[29]

**POINT VII: PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE PROPERLY PLED**

BMW NA also seeks dismissal of plaintiffs' unjust enrichment claims because, it contends, plaintiffs have an adequate remedy at law.[30]

However, unjust enrichment may be pleaded in the alternative. *See* Fed. R. Civ. P. 8(d)(2) & (3) (a party may plead claims in the alternative and "may state as many claims or defenses as it has, regardless of consistency"); *In re K-Dur Antitrust Litigation*, 338 F. Supp.2d 517, 544 (D.N.J. 2004) ("it has long been recognized that plaintiffs are allowed to plead alternative causes of action and unjust enrichment is commonly recognized as one of those permissible alternative causes of action").

The cases BMW NA cites[31] are also distinguishable as they involve circumstances where an express warranty or contract completely governed the claims at issue.[32] Here, the warranty extension

---

[29] *See also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 965-67 (N.D.Cal. 2014) (in Florida, economic loss doctrine does not bar fraudulent inducement claims or in those instances where the defendant violated an extrinsic duty); *Smith v. Citimortgage, Inc.*, No. 15-cv-7629-JLL, 2015 WL 12734793, at *7 (D.N.J. Dec. 22, 2015) ("fraud claims that are extrinsic to the underlying contract such as for fraudulent inducement  are not" precluded by economic loss doctrine under New Jersey law).

[30] Ironically BMW does not concede the viability of those legal claims.

[31] BMW's use of a footnote with a voluminous string-cite employed repeatedly in this brief is highly disfavored. *See In re Flash Memory Antitrust Litigation*, 643 F. Supp. 2d 1133, 1163 (N.D. Cal. 2009) ("Instead of analyzing the laws of each state separately, Defendants relegate their discussion to a string cite contained in a footnote in their moving papers. The lack of individualized analysis by the parties is unhelpful.  . . .  The Court declines to independently address the viability of Plaintiffs' unjust enrichment claims with respect to the aforementioned states.").

[32] For example, *see* defendants out-of-circuit opinions: *Carter v. L'Oreal USA, Inc.*, 2017 WL 3891666, at *3 (S.D. Ala. Sept. 6, 2017)(express warranty was not disputed and applied to all of plaintiffs' claims); *Goldemburg v. J&J Consumer Cos.*, 8 F. Supp. 3d 467, 483-84 (S.D.N.Y. 2014) (existence of express warranty was not disputed); *W. Ridge Grp., LLC v. First Trust Co. of Onaga*, 414 Fed. App'x 112 (10th Cir. 2011) (subject of the claim was a loan agreement); *Aronstein v. Mass. Mut. Life Ins. Co.*, 2016 WL 1626835, at *5 (D. Mass. Apr. 22, 2016) (contract governed all issues, and court specifically distinguished cases that "involved disputes over how to distribute payments that were not contemplated by the parties agreements"); *U.S. Bank N.A. v. Sofield*, 2017 WL 2569740 at *4 (W.D.N.C. June 13, 2017) (escrow Agreement covered all of plaintiff's claims).

did not encompass all components of the primary and secondary chain assemblies alleged to be defective. CAC ¶ 9.

BMW's second argument that New Jersey and California law require a direct transaction is groundless as neither state has a privity requirement to plead unjust enrichment. *See VW Timing Chain Litig., supra*, at *22 (sustaining unjust enrichment claim at motion to dismiss stage and noting defendant manufacturer received a benefit at plaintiffs' expense when they sold vehicles with defective timing chains); *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 200 (D.N.J. 2012) (manufacturer that advertises its products to consumers has a sufficiently "direct relationship" with consumers to support an unjust enrichment claim, even if the consumer purchases the product from an intermediate retailer); *see also In re K-Dur Antitrust Litigation* at 544. ("Defendants' related argument that an unjust enrichment claim requires an allegation that Plaintiffs dealt directly with Defendants, is also without merit."); *Dewey v. Volkswagen AG, supra,* at 528-29 (D.N.J. 2008) (denying motion to dismiss unjust enrichment claims asserted by consumers against car manufacturer).[33]

California law holds the same. *See Shersher v. Superior Court*, 154 Cal.App.4th 1491 (Cal.Ct.App. 2007) ("To confer a benefit, it is not essential that money be paid directly to the recipient by the party seeking restitution."). BMW misled consumers about their class vehicles to generate sales. (CAC ¶ 110-112). New Jersey and California plaintiffs plead that they purchased their respective vehicles as a result of those omissions and misrepresentations, and, by doing so, conferred a direct benefit on BMW resulting in a direct financial loss. *Id*. ¶¶ 114, 427-433.

It is premature to make the factual determination of whether plaintiffs' purchase from certain BMW dealers conferred a sufficiently direct benefit upon defendants on a motion to dismiss. *See Contino v. BMW of N. Am., LLC,* 2008 WL 2940515, at *2-3 (D.N.J. July 29, 2008) ("Defendant

---

[33]  BMW's heavy reliance on *Maniscalo v. Brother Int'l. Corp.*, 627 F. Supp. 2d 494 (D.N.J. 2009) is misplaced because - unlike the plaintiffs here – no contention that the manufacturer made any representations directly to consumers regarding the MFC Machine that caused him to purchase the device. *Maniscalo* also predates the holding in *Stewart v. Beam Global Spirits & Wine*.

asserts that the connection between [plaintiff's] purchase of the vehicle from an unauthorized dealer to Defendant creates too remote a connection for recovery in an unjust enrichment claim. Still, Plaintiff has met his burden to plead unjust enrichment *and any questions of remoteness of connection is an issue for the finder of fact.*") (emphasis added); *Morano v. BMW of N. Am., LLC,* 2013 U.S. Dist. LEXIS 28099, at *2-3 (D.N.J. Mar. 1, 2013) (rejecting BMW's argument of lack of privity with consumers as BMW NA makes sales or leases to consumers ).

Finally, Illinois recognizes a separate cause of action for unjust enrichment.  BMW NA's citation to *Cleary v. Philip Morris, Inc.,* 656 F.3d 511 (7th Cir. 2011) is misleading.  In that case, the court held that a claim for unjust enrichment does not need be tied to a separate claim. *See Cleary*, 656 F.3d at 516 ("The Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action."). *Siegel v. Shell Oil*, 612 F.3d 932 (7th Cir. 2010) shows, ample legal authority exists for unjust enrichment claims in Illinois.  Even assuming, *arguendo*, that the unjust enrichment claim depends on the other fraud based claim, it is, nevertheless, viable because the fraud-based claims are viable.  As such, plaintiffs' unjust enrich claim should not be dismissed.

Accordingly, the unjust enrichment claims should be sustained.

**POINT VIII:   PLAINTIFFS ASSERT VALID CLAIMS FOR
                       <u>DECLARATORY AND INJUNCTIVE RELIEF</u>**

The declaratory judgment claim seeks to ensure that owners of class vehicles who have not yet had their defective chain assemblies fail, will be entitled to declaratory relief as to their rights, as the defendants have expressly refused to act in a manner which recognizes their rights if a finding of unconscionability of the warranty or violation under the consumer fraud act occurs.  As the defendant acknowledges, virtually all of the consumer protection statutes in play here afford plaintiff declaratory and injunctive relief. Def.'s Mem. at 36.  There is no reason to reject that claim at this juncture. *In re K-Dur Antitrust Litigation* at 544 (pleading in the alternative permissible).

In addition, the defendant raises the issue with regard to Zinn and Richardson in their arguments in Point IX (B) of Deføs. Mem.  As such, the argument is addressed further herein below at section IX (B), *infra*.

**POINT IX:   BMW'S ARGUMENTS ON VARIOUS CLAIMS
            MUST BE REJECTED AT MOTION TO DISMISS STAGE**

### A. The Claims Of Gelis, Henderson, And Lash Should Survive

BMW NA contends that Gelisø claim should be dismissed because he asserts an out of pocket loss of $500 for alternative transportation while the BMW warranty excludes consequential damages. However, BMW NA ignores Gelisø additional claims which arise under the NJCFA in Count IV or under the Illinois Consumer Fraud and Deceptive Business Practices Act in Count V, both of which provide relief where there is ascertainable loss, as alleged by Gelis. CAC ¶¶ 13(d), 174, 197.  These out of pocket losses constitute damages recoverable to Gelis against BMW for its negligent misrepresentation as set forth in Count XX.  *See, Falk v. Nissan N.A., Inc.*, 17-cv-04871-HSG, 2018 WL 2234303 at *8 (N.D.Ca. May 16, 2018) (finding plaintiff suffered a cognizable injury under consumer protection act based on allegations õshe traveled multiple times for failed repairs of her vehicle, and her claim that but for defendantøs deception, she would have paid less for her vehicle.ö).

BMW also claims that Henderson and Lash should be precluded from relief because they do not allege that they were denied recovery under the extended warranty program.  However, it was not until December 2017 (in apparent direct response to the instant litigation) that BMW announced a warranty extension to 7 year / 70,000 miles for certain primary and secondary chain components. Additionally, this warranty extension did not encompass all components of the primary and secondary chain assemblies alleged to be defective in this complaint particularly including engine failures caused by abrasion of the primary chain guides resulting in engine oil starvation. CAC ¶¶ 9, 108.  Henderson alleges her vehicle experienced the defect in October 2017 and Lash experienced the defect in August 2017, both before the warranty was extended.  It is, at best, a question of fact as to when the repairs on

32

these two vehicles were made.   Hence, this extended warranty did not exist when the defect manifested. Further, in *Fiberglass Component Prod., Inc. v. Reichhold Chemicals, Inc*., 983 F. Supp. 948, 954 (D. Colo. 1997), relied upon by BMW, the court held that whether timely notice of a breach was reasonably given was a question for the jury and denied summary judgment. Clearly, this issue is not appropriately resolved on a motion to dismiss.   See *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 557 (D.N.J. 2013) distinguishing *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275 (D.N.J. 2011), and holding that where plaintiffs pursued a warranty claim which failed to provide relief there is no bar to pursuing a consumer fraud claim under state statutory law.

   Finally, even if class members were reimbursed every cent they spent they would still be suffering an ascertainable loss since they continue to own a vehicle with a troublesome engine with diminished resale value.  CAC ¶¶ 8, 98.

**B.  The Claims Of Zinn and Richardson Should Not Be Dismissed[34]**

   Count XXII asserts claims for declaratory and injunctive relief on behalf of a subclass represented by Richardson and Zinn. As set forth in CAC ¶ 440, the consumer fraud statutes of NJ and all other states provide for the right to seek such relief for consumer fraud violations.  Although Zinn and Richardson have not yet experienced the chain defect, it frequently manifests itself after the expiration of the warranty period.  Those who purchased a BMW with an N20/N26 engine during the relevant time period did not get what they bargained for. The complaint properly asserts these rights at CAC ¶ 98:

> Even if class vehicles do not fail entirely, class vehicle owners have sustained an ascertainable financial loss, including but not limited to increased maintenance costs for primary and secondary chain assemblies inspections and/or premature replacement of the primary and secondary

---

[34]  While BMW argues in Point Eight that plaintiffsø claims for injunctive and declaratory relief are moot and duplicative, the fact that BMW argues that owners who have not yet experienced a chain failure cannot pursue a claim shows that pursuit of injunctive and declaratory relief is very much a viable claim.

chain assemblies and/or substantially reduced engine performance.
Individuals who own or have owned class vehicles also sustained
diminution of the resale value of their class vehicles since knowledge of
problems with class vehicles became public information after the time of
their purchase.

Accordingly, the claims of Gelis, Henderson, Lash, Zinn and Richardson should not be dismissed.

## B. Malske Has Adequately Stated A Claim Under Wisconsin Deceptive Trade Practices Act

Contrary to BMW's assertions, the complaint contains allegations in Count XII that go beyond omissions. More specifically, plaintiffs allege untrue, deceptive, and misleading representations regarding the superior nature of class vehicles and their non-defective nature. These representations were material to the reasonable consumer and a significant factor involved in making the purchasing decision. As such, defendants' untrue, deceptive, and misleading representations materially induced a pecuniary loss to Malske and members of the Wisconsin subclass. Defendants made these untrue, deceptive and misleading representations to the public prior to the existence of any relationship between Malske and defendants. CAC ¶ 322.

Malske's Wisconsin DTPA claim is adequately stated.

## C. Stovall's Claim Under The Alabama Deceptive Trade Practices Act Should Not Be Dismissed

It would be premature to dismiss either the common law or the Alabama Deceptive Trade Practices Act (hereinafter "ADTPA") claim on a motion to dismiss. *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 405 (S.D.N.Y. 2017) (court acknowledges election of remedy provision in Alabama statute but finds better view is to permit pleading all causes of action under Fed. R. Civ. P. 8(d)(3) citing *Barcal v. EMD Serono, Inc.*, 2016 WL 1086028, at *5 (N.D. Ala. Mar. 21, 2016) (denying a motion to dismiss an ADPTA claim on the ground that while the ADPTA's savings clause would preclude ultimately obtaining relief under both the ADPTA and common law claims, plaintiff permitted to plead both); *Collins v. Davol, Inc.*, 56 F.Supp.3d 1222, 1227 n.2 (N.D. Ala. 2014)

34

(same).   Further, Stovall is not precluded from pursuing a claim for class relief pursuant to the reasoning of *Lisk v. Lumber One Wood Preserving, LLC*, 792 F. 3d 1331 (llth Cir. 2015), which relied upon *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010) in holding that Fed. R. Civ. P. 23 allows individual litigants to assert class claims under ADPTA, notwithstanding the prohibition in the statute. In *Carter v. L'Oreal USA, Inc.*, 2017 WL 4479368, at *2 (S.D. Ala. Sept. 21, 2017), report and recommendation adopted, 2017 WL 4478008 (S.D. Ala. Oct. 6, 2017), the court rejected defendant's argument that a 2016 amendment to Ala. Code 8-19-10 asserting that the class prohibition was "substantive" would require a different result.

Thus, plaintiff's claim under the Alabama ADPTA must be sustained.

## CONCLUSION

Since the complaint satisfies pleading requirements of both Fed. R. Civ. P. Rule 8(a)(2), *Twombly, Iqbal*, and Rule 9(b), the defendants' motion to dismiss the complaint should be denied in its entirety.   As an additional alternative, if the Court determines that the complaint allegations are deficient, leave to further amend the complaint should be granted pursuant to Fed. R. Civ. P. 15(a)(2) since there has been no demonstration that further amendment would be futile or prejudicial.

Dated : June 7, 2018

*/s/ Gary S. Graifman*
Gary S. Graifman, Esq.
Jay I. Brody, Esq.
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, New Jersey 07645
Tel: (201) 391-7000

**THOMAS P. SOBRAN, P.C.**
7 Evergreen Lane
Hingham, MA 02043
Tel: (781) 741-6075
(admitted *pro hac vice*)

Bruce H. Nagel, Esq.
Randee M. Matloff, Esq.
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
bnagel@nagelrice.com


*Attorneys for Plaintiffs*