# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARTEM V. GELIS, BHAWAR PATEL, ROBERT MCDONALD, JAMES V. OLSON, GREGORY HEYMAN, SUSAN HEYMAN, DEBRA P. WARD, DARRIAN STOVALL, ALEX MARTINEZ, AMANDA GOREY, CHRIS WILLIAMS, ASHOK PATEL, KENNETH GAGNON, MICHAEL CERNY, MARIA MEZA, ANDRE MALSKE, , NICOLE GUY, DAVID RICHARDSON, , STACEY TURNER and ERIC T. ZINN, individually and on behalf of all others similarly situated, | Civil Action No. 17-cv-7386 WHW-CLW  **CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |
| Plaintiffs, | |
| v. | |
| BMW OF NORTH AMERICA, LLC, | |
| Defendant. | |

Plaintiffs Artem V. Gelis ("Gelis"), Bhawar Patel, Robert McDonald ("McDonald"), James V. Olson ("Olson"), Gregory Heyman and Susan Heyman ("the Heymans"), Debra P. Ward ("Ward"), Darrian Stovall ("Stovall"), Alex Martinez ("Martinez"), Amanda Gorey ("Gorey"), Chris Williams ("Williams"), Ashok Patel, Kenneth Gagnon ("Gagnon"), Michael Cerny ("Cerny"), Maria Meza ("Meza"), Andre Malske ("Malske"), , Nicole Guy ("Guy"), David Richardson ("Richardson"), , Eric T. Zinn ("Zinn"), and Stacey Turner ("Turner") (all jointly referred to as "proposed class representatives" or "plaintiffs") through their counsel, on behalf of themselves and all other individuals and entities similarly situated as more fully described *infra*, initiate this proposed class action and allege as follows:

1. The defendant in this action, together with its parent company BMW AG, designed and manufactured certain 2012 through and including 2015 model year BMW passenger motor vehicles equipped with the N20/N26 direct injection turbocharged engine (hereinafter collectively "class vehicles" or "class vehicle"). Class vehicles are equipped with four cylinder multi-valve in-line engines

including but not limited to engine codes N20/N26 (hereinafter "class engines" or "class engine").[1] Proposed class representatives and members of the proposed class request injunctive relief, monetary damages, including multiple damages where applicable, court costs and attorney fees against defendant BMW based upon its breach of express warranty, breach of implied warranty, misrepresentation, unfair and deceptive business practices and unjust enrichment, and violation of consumer protection laws of New Jersey, Illinois, Florida, Utah, New York, , Texas, Alabama, Oklahoma, Massachusetts, California, , Georgia and North Carolina (jointly referred to as "state consumer protection laws").

2. Class engines are predisposed to premature primary and secondary chain assembly failures.[2] The chain assemblies are comprised of internal engine components. The primary chain (timing chain) assembly connects and synchronizes the engine's camshafts and crankshaft, which in turn controls the opening and closing of the valves in the engine's combustion chambers. The primary chain assembly ensures the engine operation occurs in the precise, synchronized manner necessary for the engine to properly function. A primary chain assembly partial or complete failure allows the chain to skip teeth on the chain sprockets. This occurrence causes the camshafts and crankshaft to fall out of synchronization and lose power or cause the engine's pistons and valves to violently collide into one another.

3. Depending on the degree of camshaft and crankshaft misalignment, the engine will operate poorly, resulting in stalling and a limited ability to accelerate or maintain vehicle speed. Primary chain assembly failures can also cause sudden and catastrophic engine self-destruction as the valves impact

---

[1] Class vehicles include but are not limited to the E84, E89, F10, F25 and F30 platforms sold and/or leased in the United States.

[2] The primary chain assembly is comprised *inter alia* of camshaft and crankshaft sprockets, primary (timing) chain, hydraulic chain tensioner, tensioning rails and chain rails. The primary chain assembly is depicted in Figure 1, *infra*. The secondary chain assembly consists of the crankshaft and counterbalance shaft sprockets, oil pump drive chain, pump drive sprocket, chain tensioner and integrated guide and tensioner rails. The secondary chain assembly is depicted in Figure 3, *infra*.

the cylinder pistons where the chain skips multiple teeth of the sprockets in one occurrence or the chain breaks.

4. The primary chain plastic guide assembly in class engines is constructed of a defective material and prematurely fails. The primary chain plastic guide assembly becomes brittle and breaks because the guide assembly is made of a defective polycarbonate composition. Pieces of broken off plastic from the chain guide assembly becomes lodged in the crankshaft drive sprockets causing chain breakage or allows sufficient slack in the primary chain to cause chain skip on engine drive sprockets (crankshaft and camshaft) sufficient to cause severe engine damage or complete engine destruction. Another consequence of primary chain guide failure is the guide assembly shifts out of position and is abraded by the rotating primary chain. The primary chain guide assembly polycarbonate shavings accumulate in the oil sump where they are sucked into and clog the oil pump pick-up screen. This event causes oil pump cavitation resulting in failure of the pump to provide lubricating oil to wear / contact surfaces such as crankshaft bearings resulting in catastrophic engine damage and/or complete failure. These scenarios pose a serious safety issue while the vehicle is being operated since there is loss of engine power without warning, loss of power-assisted steering and reduced braking caused by lack of engine vacuum. In class vehicles equipped with manual transmissions, the drive wheels will lock and cause loss of directional stability and steering. In other instances, the engine may fail to start, leaving the driver and passenger stranded mid-journey.

5. The secondary chain (counterbalance shaft and oil pump drive chain) in class engines connects the oil pump and balance shaft assemblies to the crankshaft. The secondary chain assembly is also defective and prematurely fails. Secondary chain failure is caused by materials and design that are required to be high-wear resistant but instead are made of insufficient materials which fail to prevent high resistance wear, resulting in premature chain elongation, chain sprocket damage, chain slippage and/or chain separation. When the secondary chain fails, the engine oil pump ceases to provide

3

lubricating oil to contact surfaces such as crankshaft bearings resulting in catastrophic engine damage and/or complete failure. This secondary chain was initially redesigned in approximately late 2014 and now incorporates a new solid center link plate. The secondary chain link plate configurations are depicted in Figure 4, *infra*. The secondary chain has been redesigned twice and has been assigned part numbers 11417605366, 11417602646 and 11418651102.

6. Class vehicles are defective with respect to the primary and secondary chain assemblies that subjects class engines to premature catastrophic engine failure. Class vehicles are further defective since the vehicles were accompanied by an owner's manual and Service and Warranty Information pamphlet that did not incorporate primary and secondary chain assembly inspections, maintenance and/or service intervals that were in fact necessary given the assemblies' propensity for premature failure.[3]

7. The primary and secondary chain assemblies are reasonably expected by Bayerische Motoren Werke Aktiengesellschaft (hereinafter "BMW AG") and BMW of North America, LLC (hereinafter "BMW LLC") (hereinafter referred to as "defendant"), proposed class representatives and proposed class members to last the serviceable life of the vehicle that is in excess of 150,000 miles.[4] The primary and secondary chain assemblies in class vehicles often fail at less than 50% of their reasonably expected

---

[3] A substantial contributing cause of premature engine chain assembly failures are 15,000 mile / 24 month Condition Based Service engine oil change intervals. For, 2014+ models, the new basic engine oil change interval is 10,000 miles / 12 months that are also excessive in duration.

[4] Service and Warranty Information materials for class vehicles have maintenance schedules that extend to 150,000 miles. There is no scheduled maintenance or replacement recommended for class engine primary or secondary chains during the entirety of this mileage or time period. Service and Warranty Information materials for class vehicles recite the following with respect to vehicle maintenance:

The BMW Maintenance Program is a benefit designed to help reduce the cost of ownership. This program has been devised with the following objectives: to maximize vehicle safety, reliability, and resale value by minimizing breakdowns resulting from wear, and minimizing cost and inconvenience by computing maintenance intervals based upon the specific manner in which each individual vehicle is driven.

useful life.  For example, proposed class representative Bhawar Patel's class vehicle experienced a primary chain assembly failure at approximately 71,000 miles.

8. Moreover, after experiencing a failure of the chain assemblies, some class engines are not repairable and require complete engine replacement.  Class engine failures cost class vehicle owners between $4,500.00 (to replace chain assemblies where there is no engine damage) and $22,000.00 (for a new replacement engine).  Individuals who own or have owned class vehicles also sustained diminution of the resale value of their class vehicles since knowledge of problems with class engines became public information.

9. In recognition of N20/N26 engine defects and an admission of their existence, in December 2017 (approximately 3 months after this action was initially filed on September 22, 2017), the defendant sent several proposed class representatives written notice of a partial warranty extension for certain N20/N26 engine chain components.  This warranty extension increased the original 4 year/50,000-mile warranty for the engine to 7 year/70,000 miles for certain primary and secondary chain components. This warranty extension did not encompass all components of the primary and secondary chain assemblies alleged to be defective in this complaint particularly including engine failures caused by abrasion of the primary chain guides.  The warranty extension that appears to have been implemented in direct response to this class action is inadequate to address N20/N26 engine defects.

**Jurisdictional and Venue Statement**

10. Federal jurisdiction exists by virtue of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 and 1711–1715 since there are in excess of 50,000 class members and the named proposed class representatives and proposed class members' aggregate damages exceed $5,000,000.00, exclusive of interest and costs.  Minimal diversity exists between the parties with residency in different states.  The jurisdictional requirements of the state Magnuson–Moss Act claims

alleged herein as set out in 15 U.S.C. § 2310(d)(1)(A) are satisfied by CAFA diversity jurisdiction with respect to such state law claims.

11. The defendant is a person under this jurisdiction's long-arm statute. In the United States, BMW LLC acts as the alter ego and/or agent of BMW AG as well as the warrantor with respect to the class vehicles. *In personam* jurisdiction exists over the defendant under this jurisdiction's so-called "long arm statute." BMW LLC maintains its corporate headquarters in New Jersey and the defendant directly and through its agents regularly transact business and otherwise derive substantial revenue in this jurisdiction and throughout the entire United States. The defendant also conduct continuous, purposeful and pervasive economic activities in this jurisdiction and throughout the United States. The defendant intentionally and purposefully placed its vehicles and/or components in the stream of commerce in this jurisdiction and throughout the United States. Subjecting the defendant to *in personam* jurisdiction in this jurisdiction does not violate the defendant' due process rights and comports with requirements of fair play and substantial justice.

12. Venue is conferred by 28 U.S.C. § 1391 as the defendant regularly and purposefully conducted business in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

**The Parties**

<u>Plaintiffs</u>

13(a). Plaintiff Bhawar Patel is an adult individual who resides in Sparta, New Jersey. In July 2013, Patel purchased a used BMW 2013 X3 equipped with a class engine that was still under the original warranty from an authorized New Jersey BMW dealer. Bhawar Patel's class vehicle experienced primary chain assembly failure in November 2016. At the time of the failure, his vehicle had approximately 71,000 miles. Bhawar Patel incurred considerable expense (approximately $8,000.00) replacing his class

vehicle's engine with a used engine after the primary chain assembly prematurely failed and destroyed the original engine.

13(b). Plaintiff Williams is an adult individual who resides in Warren, New Jersey. In 2015, Williams purchased a used 2013 BMW X3 28i equipped with a class engine from an authorized New Jersey BMW dealer. William's class vehicle experienced primary chain assembly failure in October 2017. At the time of the failure, his vehicle had approximately 83,000 miles. Williams incurred considerable expense (approximately $7,000) replacing his class vehicle's engine with a used engine after a chain prematurely failed and damaged the original engine.

13(c). Plaintiff Ashok Patel is an adult individual who resides in Edison, New Jersey. In November 2016, Ashok Patel purchased a used 2012 BMW 528 Xi equipped with a class engine that was still under the original warranty. Ashok Patel's class vehicle experienced chain failure in July 2017. At the time of the failure, his vehicle had approximately 72,755 miles. Ashok Patel incurred considerable out-of-pocket expense (approximately $1,768.00) repairing his class vehicle's engine after a chain prematurely failed.

13(d). Plaintiff Gelis is an adult individual who resides in Naperville, Illinois. In July 2013, Gelis purchased a new BMW 2013 328i from an authorized Illinois BMW dealer equipped with a class engine. Gelis' class vehicle experienced a chain assembly failure in August 2017. At the time of the failure, his vehicle had approximately 65,500 miles. Although BMW LLC paid for a replacement engine, Gelis incurred approximately $500.00 in expenses for alternative transportation while his class vehicle was being repaired.

13(e). Plaintiff McDonald is an adult individual who resides in Fort Myers, Florida. In 2012, McDonald purchased a new BMW 2013 X3 from an authorized Florida BMW dealer equipped with a class engine. McDonald's class vehicle experienced primary chain assembly failure in September 2017. At the time of the failure, his vehicle had approximately 93,000 miles. McDonald incurred considerable

7

expense (approximately $11,000.00) replacing his class vehicle's engine after the chain assembly prematurely failed and destroyed the original engine.

13(f). Plaintiff Guy is an adult individual who resides in East Syracuse, New York. In February 2013, Guy leased (and later purchased) a new 2013 BMW X3 from an authorized BMW dealer equipped with a class engine. Guy's class vehicle experienced chain assembly malfunction and then failure in June 2017. At the time of the failure, her vehicle had approximately 85,000 miles. To have her class vehicle's engine replaced after the chain prematurely failed and damaged the original engine, Guy would have incurred considerable out-of-pocket expense (approximately $18,000.00). Accordingly, Guy was forced to sell the vehicle to a different company at a substantial loss and had to purchase another vehicle.

13(g). Plaintiff Zinn is an adult individual who resides in Brooklyn, New York. In May 2013, Zinn purchased a used 2014 BMW 328i xDrive Sport Wagon equipped with a class engine along with the manufacturer's original warranty from an authorized New York BMW dealer. Zinn seeks declaratory relief to have the defective parts of his class vehicle's chain assemblies repaired and/or replaced under warranty coverage before any chain assembly failure occurs.

13(h). Plaintiff Olson is an adult individual who resides in Salt Lake City, Utah. In July 2012, Olson purchased a new BMW 2013 X3 from an authorized Utah BMW dealer equipped with a class engine. Olson's class vehicle experienced primary chain assembly failure in September 2017. At the time of the failure, his vehicle had approximately 79,000 miles. Olson incurred $8,900.00 in expenses replacing the engine in his vehicle.

13(i). The Heyman plaintiffs are adult individuals who reside in Melville, New York. In December 2015, the Heymans purchased a used 2013 BMW equipped with a class engine that was accompanied by the original warranty from an authorized Pennsylvania BMW dealer. Heymans' class vehicle experienced primary chain assembly failure in April 2017. At the time of the failure, the vehicle

8

had 98,896 miles.  The Heymans incurred approximately $5,500.00 in expenses repairing the engine in their class vehicle.

13(j). Plaintiff Ward is an adult individual who resides in Cedar Park, Texas.  In March 2016, Ward purchased a used BMW 2013 X3 equipped with a class engine that was still under the original warranty.  Ward's class vehicle experienced primary chain assembly failure in January 2018.  At the time of the failure, the vehicle had approximately 73,617 miles.  Ward incurred considerable expense (in excess of $7,500.00) replacing her class vehicle's engine with a new engine after the chain assembly prematurely failed and destroyed the original engine.

13(k). Plaintiff Stoval is an adult individual who resides in Prattville, Alabama.  In September 2014, Stoval purchased a used 2012 BMW 528i equipped with a class engine from an authorized Alabama BMW dealer.  Stoval's class vehicle experienced primary chain assembly failure in February 2018.  At the time of the failure, the vehicle had approximately 91,000 miles.  Stoval incurred considerable expense (approximately $5,400.00) repairing his class vehicle's engine after the chain assembly prematurely failed and damaged the engine.

13(l). Plaintiff Martinez is an adult individual who resides in Edmond, Oklahoma.  In January 2017, Martinez purchased a used 2012 BMW 528i equipped with a class engine.  Martinez's class vehicle experienced primary chain assembly failure in the later part of 2016.  At the time of the failure, his vehicle had approximately 90,000 miles.  Martinez incurred considerable expense (approximately $3,137.00) repairing his class vehicle's engine after a chain assembly prematurely failed and damaged the engine.

13(m). Plaintiff Gorey is an adult individual who resides in Massachusetts.  In May 2017, Gorey purchased a used 2013 BMW X3 equipped with a class engine.  Gorey's class vehicle experienced a chain assembly failure at approximately 79,000 miles.  Gorey incurred considerable expense (in excess

of $10,000.00) replacing her class vehicle's engine after the chain assembly prematurely failed and damaged the original engine.

13(n). Plaintiff Gagnon is an adult individual who resides in Fitchburg, Massachusetts. In June 2014, Gagnon purchased a demonstrator model 2013 BMW 328i from an authorized Massachusetts BMW dealer equipped with a class engine. Gagnon's class vehicle experienced chain assembly failure in August 2017. At the time of the failure, the vehicle had approximately 80,000 miles. Gagnon incurred considerable out-of-pocket expense (approximately $8,229.00) replacing his class vehicle's engine after a chain prematurely failed and damaged the original engine.

13(0). Plaintiff Meza is a California citizen who resides in San Bernadino, California. In April 2017 Meza purchased a used 2014 BMW X1 equipped with a class engine. In December 2018, Meza's class vehicle experienced a loss of engine power while her teenage daughter was driving resulting in the message "low oil pressure turn engine off." The vehicle had to be towed and eventually the BMW mechanic who read the diagnostic codes indicated that the engine would have to be replaced due to a failed timing chain. At the time of engine failure, the vehicle had approximately 90,000 miles. Meza incurred approximately $600.00 in diagnostic costs and since BMW is unwilling to cover the costs to repair the vehicle, which was estimated at $10,000.00, she will likely be unable afford the repairs and the vehicle will be repossessed by the finance company.

13(p). Plaintiff Malske is an adult individual who resides in Sussex, Wisconsin. In April 2013, Malske purchased a new 2013 BMW X3 xDrive 28i from an authorized BMW dealer equipped with a class engine. Malske's class vehicle experienced a chain assembly malfunction in August 2017. At the time of the malfunction, the vehicle had approximately 79,000 miles. Malske incurred considerable out-of-pocket expense (approximately $10,000.00) replacing his class vehicle's engine after a chain prematurely failed and damaged the original engine.

13(q). Plaintiff Richardson is an adult individual who resides in Greensboro, North Carolina. In March 2017, Richardson purchased a used 2014 BMW 428i xDrive equipped with a class engine still covered by the vehicle's original warranty. Richardson seeks declaratory relief to now have the defective parts of his class vehicle's chain assemblies repaired and/or replaced under warranty coverage before any chain assembly or related failure occurs.

13(r) Plaintiff Cerny is an adult individual who resides in Lewisville, Texas. On June 7, 2016 Cerny bought a pre-owned 2012 328i from an authorized BMW dealer. Cerny's class vehicle experienced chain assembly malfunction in June 2017. At the time of the failure, the vehicle had approximately 100,000 miles. Cerny incurred considerable out-of-pocket expense (approximately $2,964.00) replacing components of the primary and secondary chain assemblies.

13(s). Plaintiff Turner is an adult individual who resides in Tifton, Georgia. In 2015, he purchased a pre-owned 2013 BMW X3 equipped with a class engine still covered by the vehicle's original warranty. Turner's class engine experienced catastrophic engine failure as a result of a timing chain failure in November 2017 when Turner's daughter was pulling into a major intersection and the engine unexpectedly lost power and then shut off. At the time of the failure, the vehicle had approximately 90,000 miles. Turner incurred $13,500.00 in out of pocket expenses to repair the damage to the engine as a result of the timing chain defect.

The Defendant

14. Defendant BMW LLC is a duly organized Delaware corporation with a principal place of business located at 300 Chestnut Ridge Road in Woodcliff Lake, New Jersey. BMW LLC manufactures, imports, distributes and/or sells BMW motor vehicles including all class vehicles and also acts as the authorized representative of BMW AG in the United States. BMW LLC operates its national marketing, warranty, consumer relations and engineering offices from its New Jersey facility. BMW LLC also

controls all other aspects of its United States activities from New Jersey including class vehicle importation.

15. BMW LLC is a subsidiary of BMW AG. BMW AG is a duly organized German corporation with a principal place of business in the city of Munich in the province of Bavaria, Germany. BMW AG designed, manufactured and tested the class engine, including but not limited to the primary and secondary chain assemblies incorporated in class engines. BMW AG drafted and published the owner's manual and Service and Warranty Information pamphlet and other materials that accompanied class vehicles and/or were published on the Internet. BMW AG is the parent company of BMW LLC.

16. BMW LLC sells and distributes vehicles manufactured by both BMW AG and BMW LLC throughout the United States via a network of over three hundred independent authorized dealerships. BMW LLC drafted and published the owner's manual and Service and Warranty Information pamphlet and other materials that accompanied class vehicles and/or were published on the Internet. BMW LLC acted, and continues to act, as the warrantor of vehicles constructed by both defendant sold in the United States.

17. At all relevant times, BMW LLC acted as an authorized agent, representative, servant, employee and/or alter ego of BMW AG performing activities concerning but not limited to advertising, marketing, warranties, warranty repairs, dissemination of technical information and monitoring the performance of BMW vehicles in the United States, including substantial activities that occurred within this jurisdiction. There is sufficient overlapping and intertwining of the activities of BMW AG and BMW LLC in the United States that the principles of corporate separateness should not be applied.

18. New Jersey has the most significant relationship to the conduct that gave rise to this litigation since BMW LLC's wrongful activities were orchestrated at its New Jersey headquarters. New Jersey law should govern all substantive aspects of this litigation. That conduct includes concealing defects described in this complaint and other activities to deny warranty coverage to defective engine

components that should have been replaced under the new vehicle warranty without cost to the class

vehicle owner as described in this complaint.

**Class Action Allegations**

19. The proposed class representatives bring this proposed action pursuant to Fed. R. Civ. P.

23(b)(1), 23(b)(2) and 23(b)(3) on behalf of themselves and all members of the proposed class and state

subclasses (or any other class authorized by the Court) defined as follows:

> **Nationwide Class:** All owners and former owners, lessees and former lessees of class
> vehicles who purchased or leased their vehicles in the United States and who sustained
> monetary loss and/or diminution of class vehicle value resulting from the defendant's
> conduct as described in this complaint (hereinafter "proposed class members" or "class
> members" or "the Nationwide Class"). Excluded from the proposed class is the defendant
> together with its officers, directors, employees, assigns, and successors, the Court, Court
> staff, the defendant's counsel and all respective immediate family members of the
> excluded persons and entities described above. Also excluded from the proposed class
> are any and all claims involving personal injury.

> **New Jersey Class:** All owners and former owners, lessees and former lessees of class
> vehicles who purchased or leased their class vehicles in New Jersey, and sustained
> monetary loss and/or diminution of class vehicle value resulting from the defendant's
> conduct as described in this complaint (hereinafter "proposed New Jersey class members"
> or "the New Jersey subclass"). Excluded from the proposed class is the defendant together
> with its officers, directors, employees, assigns, and successors, the Court, Court staff,
> defendant's counsel and all respective immediate family members of the excluded entities
> described above. Also excluded from the proposed class are any and all claims involving
> personal injury.

> **Illinois Class:** All owners and former owners, lessees and former lessees of class vehicles
> who purchased or leased their class vehicles in Illinois, and sustained monetary loss and/or
> diminution of class vehicle value resulting from the defendant's conduct as described in
> this complaint (hereinafter "proposed Illinois class members" or "the Illinois subclass").
> Excluded from the proposed class is the defendant together with its officers, directors,
> employees, assigns, and successors, the Court, Court staff, defendant's counsel and all
> respective immediate family members of the excluded entities described above. Also
> excluded from the proposed class are any and all claims involving personal injury.

> **Florida Class:** All owners and former owners, lessees and former lessees of class vehicles
> who purchased or leased their class vehicles in Florida, and sustained monetary loss and/or
> diminution of class vehicle value resulting from the defendant's conduct as described in
> this complaint (hereinafter "proposed Florida class members" or "the Florida subclass").
> Excluded from the proposed class is the defendant together with its officers, directors,
> employees, assigns, and successors, the Court, Court staff, defendant's counsel and all

respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**Utah Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in Utah, and sustained monetary loss and/or diminution of class vehicle value resulting from the defendant's conduct as described in this complaint (hereinafter "proposed Utah class members" or "the Utah subclass"). Excluded from the proposed class is the defendant together with its officers, directors, employees, assigns, and successors, the Court, Court staff, defendant's counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**New York Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in New York, and sustained monetary loss and/or diminution of class vehicle value resulting from the defendant's conduct as described in this complaint (hereinafter "proposed New York class members" or "the New York subclass"). Excluded from the proposed class is the defendant together with its officers, directors, employees, assigns, and successors, the Court, Court staff, defendant's counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**Texas Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in Texas, and sustained monetary loss and/or diminution of class vehicle value resulting from the defendant's conduct as described in this complaint (hereinafter "proposed Texas class members" or "the Texas subclass"). Excluded from the proposed class is the defendant together with its officers, directors, employees, assigns, and successors, the Court, Court staff, defendant's counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**Alabama Class:** All owners and former owners, lessees and former lessees of class vehicles purchased or leased their class vehicles in Alabama, and sustained monetary loss and/or diminution of class vehicle value resulting from the defendant's conduct as described in this complaint (hereinafter "proposed Alabama class members" or "the Alabama subclass"). Excluded from the proposed class is the defendant together with its officers, directors, employees, assigns, and successors, the Court, Court staff, defendant's counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**Oklahoma Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in Oklahoma, and sustained monetary loss and/or diminution of class vehicle value resulting from the defendant's conduct as described in this complaint (hereinafter "proposed Oklahoma class members" or "the Oklahoma subclass"). Excluded from the proposed class is the defendant together with its officers, directors, employees, assigns, and successors, the Court, Court staff,

defendant's counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**Massachusetts Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in Massachusetts, and sustained monetary loss and/or diminution of class vehicle value resulting from the defendant's conduct as described in this complaint (hereinafter "proposed Massachusetts class members" or "the Massachusetts subclass"). Excluded from the proposed class is the defendant together with its officers, directors, employees, assigns, and successors, the Court, Court staff, defendant's counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**California Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in California, and sustained monetary loss and/or diminution of class vehicle value resulting from the defendant's conduct as described in this complaint (hereinafter "proposed California class members" or "the California subclass"). Excluded from the proposed class is the defendant together with its officers, directors, employees, assigns, and successors, the Court, Court staff, defendant's counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**North Carolina Class:** All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in North Carolina, and sustained monetary loss and/or diminution of class vehicle value resulting from the defendant's conduct as described in this complaint (hereinafter "proposed North Carolina class members" or "the North Carolina subclass"). Excluded from the proposed class is the defendant together with its officers, directors, employees, assigns, and successors, the Court, Court staff, defendant' counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**Georgia Class**: All owners and former owners, lessees and former lessees of class vehicles who purchased or leased their class vehicles in Georgia, and sustained monetary loss and/or diminution of class vehicle value resulting from the defendant's conduct as described in this complaint (hereinafter "proposed Georgia class members" or "the Georgia subclass"). Excluded from the proposed class is the defendant together with its officers, directors, employees, assigns, and successors, the Court, Court staff, defendant's counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

**Numerosity of the Class: Fed. R. Civ. P. 23(a)(1).**

15

20. The proposed class is so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 20. It is estimated there are in excess of approximately 100,000 class vehicles imported into or constructed in the United States. Although the number, location and identity of all proposed class members cannot be presently ascertained, this information is obtainable through discovery from the defendant.

**Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3).**

21. Common questions of law and fact exist as to all members of the proposed class and predominate any and all issues of law and fact affecting individual members of the proposed class. These issues include but are not limited to:

(a) Whether class engines were defectively designed or manufactured, including workmanship and materials, so as to subject the engine to premature failure of the primary and secondary chain assemblies;

(b) Whether class engines sustained damage directly or indirectly by premature failure of the primary and secondary chain assemblies;

(c) Whether class vehicles were sold with an owner's manual and/or Service and Warranty Information pamphlet and other materials that incorporated incorrect inspection and service intervals for the primary and secondary chain assemblies;

(d) Whether the defendant breached its express warranties (including but not limited to the powertrain-limited warranty) in that class vehicles were defective with respect to engine design and manufacture, including workmanship and materials;

(e) Whether the defendant breached its implied warranties in that class vehicles were defective with respect to engine design and manufacture, including workmanship and materials;

(f) Whether the defendant intentionally or negligently misrepresented material facts concerning the characteristics of class engines;

(g) Whether the defendant committed unfair and deceptive business act practices by failing to inform owners of class vehicles prior to purchase and/or during the post-sale express warranty period that the primary and secondary chain assemblies were defective and would fail shortly after the warranty period expired and cause damage to the engine, and that this defect posed a significant safety hazard;

(h) Whether the defendant was unjustly enriched by its warranty breaches and deceptive and/or unfair conduct described in this complaint;

(j) Whether proposed class members are entitled to monetary damages and injunctive relief pursuant to Rule 23(b)(2);

(k) Whether the Court should establish a constructive trust funded by the benefits conferred upon the defendant by its wrongful and unlawful conduct; and,

(l) Whether proposed class members are able to economically afford individual litigation against the defendant.

**Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3).**

22. The proposed class representatives' claims and defenses are typical of the claims and defenses of proposed class members.  Class claims arise out of ownership or lease of class vehicles as defined in ¶ 1.  There are no defenses to plaintiffs' claims on the part of defendant that are unique or different from the proposed class.

**Adequate Representation: Fed. R. Civ. P. 23(a)(4).**

23. The proposed class representatives will fairly and adequately protect the interests of the proposed class and subclasses.  The proposed class representatives' claims and the proposed class members' claims are so interrelated that the interests of the proposed class members will be fairly and adequately protected in their absence.  The proposed class counsel have, in aggregate, over 60 years of experience concentrating in complex automotive products liability, and have been appointed class

17

counsel in other proceedings. Neither plaintiffs nor their attorneys have any interests that are contrary to or conflicting with the class members.

**Superiority of a Class Action: Fed. R. Civ. P. 23(b)(3).**

24. Maintenance of a class action in one court is the most economical procedural device to litigate the class vehicle and class engine claims for class vehicle owners and the defendant. Prosecution of separate actions by individual members of the class could create risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class as recognized by Fed. R. Civ. P. 23(b)(1)(A).

25. Prosecution of separate actions by individual members of the class could create risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

26. There is a substantial likelihood that the defendant will oppose this class action and will further act or refuse to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole impractical as recognized by Fed. R. Civ. P. 23(b)(2).

27. Questions of law and fact common to members of the class predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

**Class Engine Chain Assembly Defects**

28. If designed and manufactured correctly, engine primary and secondary assemblies should last a minimum of 150,000 miles in a modern automobile such as the class vehicles. This is demonstrated by

18

the defendant's Service and Warranty Information pamphlet and other materials accompanying class vehicles, other engines manufactured by the defendant incorporating a primary and secondary chain assemblies and performance of comparable competitor vehicles.

29. Class engines use hydraulic chain tensioners (one for primary and another for the secondary chain) incorporating an internal coil spring and oil passages to regulate tension on the chain-tensioning rail that applies tension to the respective chains. This tension keeps the chains from jumping the teeth on the sprockets that are attached to the crankshaft, camshafts, balance shaft sprockets and oil pump sprocket. This tension also maintains synchronization between rotating engine components including the cylinder valves and pistons. Without proper chain tension and synchronization, the engine will run very poorly (if at all) and/or, if sufficient chain skip and mis-synchronization occurs, its failure to function properly will cause cylinder valves and pistons to collide, resulting in severe internal damage to the engine.

30. BMW has been concealing the problems with its primary and secondary chain assemblies since 2013 when it began to redesign chain assembly components to alleviate the known issues without revealing to class members the defect or its knowledge thereof. This effort culminated in or about February 2017, when BMW released a Technical Service Bulletin to address defects in class engine chain assemblies. Technical Service Bulletin SI B11 03 17 describes the symptoms associated with the defective engine chain assemblies as "N20 AND N26 ENGINE; HIGH PITCHED WHINING NOISE FROM LOWER ENGINE AREA" caused by "[w]ear on the engine oil pump chain drive sprockets." Technical Service Bulletin SI B11 03 17 further states that the "CORRECTION" is to "[r]eplace the

engine oil pump drive chain module[5], timing chain, timing chain tensioner, slide rail, tensioning rail and guide rail." *Id.* *See* Technical Service Bulletin SI B11 03 17 attached Exhibit A.

31. The date of this service bulletin, comments on various web sites and the lead time necessary to investigate class engine chain assembly failures, redesign and/or retool and manufacture the updated components demonstrates that the defendant was again aware of defects in the redesigned or retooled primary and secondary chain assemblies in late 2012 or early 2013 (as discussed *supra*, assemblies had been previously redesigned earlier).

32. The defendant purposefully ignored the primary and secondary chain assembly defects for years in order to avoid substantial costs associated with remedying these defects under warranty. Moreover, the defendant attempted to conceal primary chain defects by changing out the primary chain assembly components as part of remedying the secondary chain assembly noise issue.

---

[5] As discussed *supra*, the engine (secondary) "oil pump drive chain module" consists of the crankshaft and counterbalance shaft sprockets, oil pump drive chain, oil pump sprocket, chain tensioner and integrated guide and tensioner rails. The secondary chain assembly is depicted in Figure 3, *infra*.



N20 engine, camshaft drive

| Index | Explanation |
|-------|-------------|
| 1 | Exhaust VANOS |
| 2 | Intake VANOS |
| 3 | Chain tensioner |
| 4 | Primary chain |
| 5 | Tensioning rail |
| 6 | Sprocket, driven by crankshaft |
| 7 | Secondary chain (tooth-type chain) |
| 8 | Chain tensioner |
| 9 | Sprocket for counterbalance shaft and oil pump drive |

**FIGURE 1: CLASS ENGINE PRIMARY CHAIN ASSEMBLY[6]**

33. In fact, the defendant revised the primary chain, primary chain tensioner and primary chain

guide/rails incorporated in class engines multiple times in an effort to correct system deficiencies that

were causing catastrophic engine failure. *See* Figure 2, *infra* depicting the class engine original primary

---

[6] © 2010 BMW AG

chain tensioner and a subsequent revision.  The revised primary chain tensioner has increased piston travel, a longer housing and a stronger internal spring to better regulate primary chain tension and decrease the incidence of primary chain assembly failure.  The primary chain tensioners have been assigned part numbers 11317567680 (original tensioner design) and 11318685091 (revised tensioner design).



**FIGURE 2: CLASS ENGINE PRIMARY CHAIN TENSIONERS[7]**

---

[7]  The original class engine secondary chain tensioner is depicted at the top of the photograph, the revised chain tensioner is underneath.



N20 engine, counterbalance shaft and oil pump drive

| Index | Explanation |
|---|---|
| 1 | Crankshaft sprocket |
| 2 | Chain |
| 3 | Chain tensioner |
| 4 | Counterbalance shaft sprocket |

**FIGURE 3: CLASS ENGINE SECONDARY CHAIN ASSEMBLY[8]**

---

[8] © 2010 BMW AG

34. The defendant also revised the secondary chain using a different link plate configuration. The secondary chain has been assigned part numbers 11417602646 (original secondary chain design) and 11418651102 (revised secondary chain).   The revised secondary chain components are depicted in Figure 4, *infra.*



**FIGURE 4: ORIGINAL AND REVISED CLASS ENGINE OIL PUMP CHAIN DRIVE**[9]

---

[9] The original class engine secondary chain is depicted at the top of the photograph, the revised chain is underneath.

35. Another cause of primary and secondary chain assembly failure is chain stretch.  When this condition occurs, slack introduced into the primary chain assembly causes misalignment of the camshafts and crankshaft synchronization.  As the chain stretch condition worsens and the capacity of the hydraulic chain tensioners is exceeded, chain slippage on the camshaft/crankshaft sprocket teeth will eventual allow sufficient camshaft and crankshaft synchronization misalignment where the engine pistons collide with the cylinder valves causing catastrophic engine damage.  Slippage of the secondary chain will cause excessive vibration and eventual chain failure as the crankshaft and counter balance shafts are no longer synchronized.

36. The chain assemblies for the class engines have been revised (and in some instances assigned different part numbers) a minimum of five times.  Some of these changes date back to 2013 and were used for less than one model year.

37. Prior to manufacturing and then distributing a new part, defendant performed substantial field inspections and quality review of vehicles in service to determine the root cause and diagnosis of a problem.  After these tasks are completed, the defendant prepared draft and final specifications prior to setting the revised part out to bid.  All of this takes at least twelve months of lead-time under normal circumstances.

38. The defendant, therefore, knew or should have known at least in 2012 or early 2013 that the chain assemblies and related components in class engines were defective and would prematurely fail as evidenced by the fact that the tensioners for certain model BMW engines had been assigned a new part number and that tensioner was used on predecessor engines.

39. Complaints online, which are carefully monitored by defendant, demonstrate failed primary and secondary chain assemblies in class engines.  Recently, independent BMW vehicle repair shops also have posted a description of the chain assembly failures occurring with class engines on its websites as part of its marketing.

25

*See* http://f30.bimmerpost.com/forums/showthread.php?t=1089085 (Last reviewed September 6, 2017).

**Complaints to the National Highway Traffic Safety Administration**

40. The National Highway Traffic Safety Administration ("NHTSA") Office of Defects Investigation ("ODI") maintains a database of complaints filed by consumers concerning defects in their motor vehicles and vehicle equipment. The NHTSA-ODI website allows consumers to "identify and report problems you might be having with your vehicle, tires, equipment or car seats." *See* https://www-odi.nhtsa.dot.gov/ivoq/ (last accessed March 18, 2017) ("If you think you have a problem, we want you to tell us about it."). Set forth below are complaints submitted by owners of class vehicles and reported to the NHTSA demonstrating that the N20/N26 chain defect was known to the defendant and constitutes an unreasonable safety hazard:[10]

| | | | |
|---|---|---|---|
| Date Complaint Filed: 07/14/2017 | | Date of Incident: 03/31/2017 | |
| Component(s): ENGINE , UNKNOWN OR OTHER | | NHTSA ID Number: 11005332 | |
| Consumer Location: MELVILLE, NY | | | |
| All Products Associated with this Complaint ▲ | | | |

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| BMW | X3 | 2013 |

0 Available Documents

Details ▲

| Crash: No | Fire: No | Number of Injuries: 0 | Number of Deaths: 0 |
|---|---|---|---|

Manufacturer: BMW of North America, LLC
Vehicle Identification No. (VIN): 5UXWX9C50D0...
SUMMARY:
EARLIER THIS YEAR WHILE DRIVING MY 2013 BMW X3 ON THE HIGHWAY IT BROKE DOWN WITH LITTLE WARNING. FORTUNATELY I WAS ABLE TO GET TO AN EXIT RAMP BEFORE MY CAR COMPLETELY FAILED. AFTER HAVING IT FLAT BEDDED TO A MECHANIC WHO HAD TO PUSH THE VEHICLE INTO THE SHOP THEY VERIFIED THAT THE VEHICLE WOULD CRANK OVER AND NOT START. IT WAS RELATIVELY CLEAR FROM THE SOUND THE ENGINE WAS MAKING DURING THE STARTER ENGAGEMENT THAT THE CAMSHAFT TIMING WAS OFF. THE VALVE COVER WAS REMOVED AND THE

---

[10] NHTSA-ODI does not share complainants' personal information with the general public. A complaint is only added to a public NHTSA database only after it removes all information from complaint fields that personally identify a complainant. NHTSA-ODI complaints are made by individuals who must identify themselves, enter detailed contact information and vehicle information (including an accurate VIN) before the complaints are reviewed and analyzed by NHTSA. There are penalties for submitting false statements.

MECHANIC VERIFIED THAT THE TIMING WAS INDEED OFF. THE TIMING CHAIN HAD JUMPED TIME ON
BOTH THE INTAKE AND EXHAUST CAMSHAFTS. THE TIMING WAS OFF DUE TO EXCESSIVE SLACK IN
THE TIMING CHAIN DUE TO A FAILED CHAIN TENSIONER. THIS SHOULD NOT HAPPEN ON A 2013 BMW
WITH MAINLY HIGHWAY MILES. I WAS TOLD I NEED A NEW ENGINE THAT WILL COST UPWARDS OF
$15,000 OR BUY A SLIGHTLY USED ONE FOR APPROXIMATELY $9,000. I'VE REACHED OUT TOT HE
DEALER AND BMW NA WITH NO RELIEF. SIMILAR ISSUES HAVE BEEN IDENTIFIED IN THE X5 AND
OTHER BMW CARS WHICH WERE RECALLED BUT FOR SOME REASON NO RECALL WAS SENT OUT
ON THE N20 ENGINE FOR THE X3. FROM A QUICK INTERNET SEARCH THERE ARE MANY X3 OWNERS
THAT HAVE THE SAME OR SIMILAR PROBLEMS. SOMETHING NEEDS TO BE DONE TO GET RELIEF
FOR THESE OWNERS. UNFORTUNATELY THIS ONCE PROUD VEHICLE MAKER THAT NO LONGER
BACKS THE LONGEVITY OF THE LUXURY CAR THEY BUILD.

*    *    *

---

**Date Complaint Filed:** 07/11/2017                               **Date of Incident:** 06/09/2017
**Component(s):** ENGINE                                           **NHTSA ID Number:** 11003073
**Consumer Location:** RESTON, VA

**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| BMW | 528XI | 2012 |

0 Available Documents

**Details** ▲

**Crash:** No   **Fire:** No   **Number of Injuries:** 0 **Number of Deaths:** 0
**Manufacturer:** BMW of North America, LLC
**Vehicle Identification No. (VIN):** WBAXH5C57CD...
**SUMMARY:**
TIMING CHAIN IS LOOSE PER THE DEALER. THE CAR ONLY HAS 59,000 MILES. THE CAR HAS NOT
STOPPED BUT IF THE CHAIN BREAKS IT WILL STOP WHEREVER IT HAPPENS. I COULD BE DRIVING
ON A BUSY INTERSTATE AND THE CAR WILL STOP. THIS IS DEFINITELY A SAFETY ISSUE.

*    *    *

**Date Complaint Filed:** 06/27/2017                               **Date of Incident:** 06/26/2017
**Component(s):** ENGINE                                           **NHTSA ID Number:** 11001808
**Consumer Location:** OVERLAND PARK, KS

**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| BMW | X3 | 2013 |

0 Available Documents

**Details** ▲

**Crash:** No   **Fire:** No   **Number of Injuries:** 0   **Number of Deaths:** 0
**Manufacturer:** BMW of North America, LLC
**Vehicle Identification No. (VIN):** 5UXWX9C5XD0...
**SUMMARY:**
I HAVE A 2013 X3 28I THAT WAS PURCHASED FAIRLY NEW WITH 15K MILES ON IT AND HAS HAD ALL
BMW RECOMMENDED MAINTENANCE AT A BMW DEALER. I HAVE EXACTLY 50K MILES ON THE CAR. A
COUPLE OF DAYS AGO, WITH NO WARNING THE TIMING CHAIN BROKE AND BLEW THE ENGINE. I
HAD JUST TAKEN IT TO THE DEALERSHIP A COUPLE OF WEEKS PRIOR FOR MAINTENANCE AND
THEY SAID EVERYTHING LOOKED GREAT. THE DEALER FIRST TOLD ME IT WAS GOING TO COST
OVER 20K TO REPLACE THE ENGINE. BMW GOT INVOLVED AND NOW I'M TOLD IT WILL COST JUST
OVER 15K PLUS TAXES. I STARTED CHECKING ONLINE AND NOTICED THAT BMW HAS HAD A LOT OF
PROBLEMS WITH THE TIMING CHAIN, HOWEVER THEY DON'T LIST THE X3 AS ONE OF THE CARS
WITH THE PROBLEM. AT 4 YEARS OLD AND 50K MILES, I WOULD THINK THE TIMING CHAIN SHOULDN'T

BREAK, AND DEFINITELY SHOULDN'T COST 1/3 OF A NEW CAR TO REPAIR.

&ast;&ast;　　　　　&ast;

**Date Complaint Filed:** 05/23/2017                          **Date of Incident:** 05/19/2017
**Component(s):** ENGINE                                      **NHTSA ID Number:** 10991176
**Consumer Location:** FAYETTEVILLE, GA
**All Products Associated with this Complaint ▲**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| BMW | 328I | 2013 |

0 Available Documents

Details ▲

| Crash: No | | Fire: No | Number of Injuries:  0 | Number of Deaths:  0 |
|---|---|---|---|---|

**Manufacturer:** BMW of North America, LLC
**Vehicle Identification No. (VIN):** WBA3B3C53DF...
**SUMMARY:**
TIMING CHAIN IS MAKING A WHINE AND A RATTLE SOUND WHEN ENGINE IS RUNNING. THE N20 ENGINE (TWIN TURBO 4 CYLINDER) IN THIS CAR ANY MANY OTHER BMW VEHICLES TIMING CHAINS ARE KNOWN TO STRETCH AND BREAK ALONG WITH THE ORIGINAL BROWN/DARK ORANGE COLOR PLASTIC TIMING CHAIN GUARD RAIL. THE TIMING CHAIN GUARD RAIL WAS MADE OUT OF A DEFECTIVE PLASTIC UNTIL AROUND 1/1/15 WHEN BMW REALIZED THERE WERE OWNERS HAVING CATASTROPHIC ENGINE FAILURE NOT IF THE CHAIN BREAKS, BUT WHEN. THE ONLY REPAIR IF THE ENGINE FAILS IS TO REPLACE THE ENGINE AT A COST OF APPROX. $12K AND $8K IN LABOR TOTALING ABOUT $20K WHICH EXCEEDS THE VALUE OF MY VEHICLE. VEHICLES WITH THIS ENGINE MANUFACTURED AFTER 1/1/15 HAVE THE REDESIGNED MORE DURABLE WHITE PLASTIC TIMING CHAIN GUARD RAIL ALLOWING THE ENGINE TO RUN SMOOTHER AND WITHOUT THE RISK OF ENGINE CATASTROPHIC FAILURE. THERE IS A GRAVE SAFETY RISK FOR OWNERS WITH THIS ENGINE WITH THE ORIGINAL PRE-2015 TIMING CHAIN & GUARD RAIL DESIGN BECAUSE IF YOU ARE TRAVELING IN NORMAL TRAFFIC OR ATTEMPTING TO CROSS A TRAIN TRACK OR OTHER DANGEROUS INTERSECTIONS, OCCUPANTS CAN BE KILLED AS A RESULT OF THE VEHICLE STALLING. CONTACTED BMW NORTH AMERICA ON 5/19/17 REGARDING THE ISSUE AND HAD THE VEHICLE INSPECTED BY MY LOCAL BMW DEALERSHIP WHO INDICATED THERE WAS NOTHING WRONG. THE TOTAL COST TO REPLACE MY ORIGINAL TIMING CHAIN AND TIMING CHAIN GUARD RAIL WITH THE RE-DESIGNED VERSION WOULD COST $4600 WITH PARTS & LABOR. BMW USA AND THE DEALERSHIP REFUSED TO COVER THE COST AND DENIED THIS IMPORTANT SAFETY DEFECT. I ALSO PROVIDED THEM A COPY OF A WEB LINK WITH A YOUTUBE VIDEO OF THE ISSUE NARRATED BY AN INDEPENDENT BMW TECHNICIAN EXPLAINING THE DEFECT. SEE THE LINK BELOW WHICH CONTAINS PHOTOS AND THE YOUTUBE VIDEO RELATED TO THIS ISSUE.
HTTPS://BMWTECHNICIAN.COM/2016/08/07/N20-TIMING-CHAIN-ISSUE/

&ast;&ast;　　　　　&ast;

**Date Complaint Filed:** 02/14/2017                          **Date of Incident:** 01/19/2017
**Component(s):** UNKNOWN OR OTHER                            **NHTSA ID Number:** 10954592
**Consumer Location:** HUNTINGTON BEACH, CA
**All Products Associated with this Complaint ▲**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| BMW | X3 | 2013 |

0 Available Documents

Details ▲

| Crash: No | Fire: No | | Number of Injuries:  0 | Number of Deaths:  0 |
|---|---|---|---|---|

**Manufacturer:** BMW of North America, LLC
**Vehicle Identification No. (VIN):** 5UXWX9C53D0...
**SUMMARY:**
MY CAR HAS APPROX 78000 MILES ON IT. I AM THE ORIGINAL OWNER. CAR HAS BEEN MAINTAINED ROUTINELY AT BMW DEALERS AT ALL THE RECOMMENDED TIME MARKS BY THE MANUFACTURE. RECENTLY, MY CAR STALLED WHILE I WAS DRIVING ON THE FREEWAY, AND HAD TO BE TOWED TO THE BMW DEALERSHIP. AFTER 1 WEEK OF RUNNING DIAGNOSTIC TESTS, I WAS INFORMED THAT

THE TIMING CHAIN HAS BROKEN, AND PIECES FROM THE CHAIN FLEW INTO THE ENGINE AND
COMPLETELY RUINED IT.
                              *                              *                            *

---

**Date Complaint Filed:** 12/20/2016                                  **Date of Incident:** 12/10/2016
**Component(s):** ENGINE                                              **NHTSA ID Number:** 11003073
**Consumer Location:** KANSAS CITY, KS
**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| BMW | X3 | 2013 |

0 Available Documents

**Crash:** No        **Fire:** No        **Number of Injuries:** 0 **Number of Deaths:** 0
**Manufacturer:** BMW of North America, LLC
**Vehicle Identification No. (VIN):** 5UXWX9C5XD0...
**SUMMARY:**
TIMING CHAIN MALFUNCTION/ENGINE FAILURE
                            **                          *

---

**Date Complaint Filed:** 12/12/2016                                  **Date of Incident:** 11/24/2016
**Component(s):** ENGINE , POWER TRAIN                                **NHTSA ID Number:** 10934863
**Consumer Location:** EL PASO, TX
**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| BMW | X3 | 2011 |

0 Available Documents

**Crash:** No        **Fire:** No        **Number of Injuries:** 0 **Number of Deaths:** 0
**Manufacturer:** BMW of North America, LLC
**Vehicle Identification No. (VIN):** Not Available
**SUMMARY:**
I TOOK MY CAR IN FOR AN OIL CHANGE AND WAS CALLED BACK BY THE AUTO PLACE AND WAS
TOLD THAT, WHILE THEY WERE TEST DRIVING THE VEHICLE IT HAD A MAJOR ENGINE FALIURE,
RESULTING IN THEM HAVING TO TOW THE CAR AND WAS TOLD THAT THE TIMING CHAIN HAD
BROKEN AND THERE WAS MASSIVE DAMAGE INTERNALLY TO THE ENGINE, VALVES HAD BEEN BENT
DUE TO FAILURE. I HAVE SPOKEN TO BMW BUT HAVE NOT GOTTEN ANY RELIEF. IT IS IMPORTANT TO
MENTION THAT THIS CAR ONLY HAS 65,000 MILES ON IT. THIS FALIURE IS INSANE AND BMW IS NOT
WILLING TO HONOR ANYTHING. *TR
                            **                          *

---

**Date Complaint Filed:** 04/22/2016                                  **Date of Incident:** 04/14/2016
**Component(s):** ELECTRONIC STABILITY CONTROL ,                      **NHTSA ID Number:** 10861029
POWER TRAIN , UNKNOWN OR OTHER
**Consumer Location:** ARLINGTON, VA

**All Products Associated with this Complaint**

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| BMW | 528I | 2012 |

0 Available Documents

**Crash:** No        **Fire:** No        **Number of Injuries:** 0 **Number of Deaths:** 0
**Manufacturer:** BMW of North America, LLC

29

Vehicle Identification No. (VIN): WBAXH5C58CC...
SUMMARY:
VEHICLE BOUGHT IN JULY 2014 WITH ~24K MILES; STILL UNDER FACTORY WARRANTY.
MAINTENANCE MAINTAINED. 9-12 MONTHS LATER, A "DRIVE TRAIN MALFUNCTION" LIGHT CAME ON.
I HAD JUST LEFT THE DEALERSHIP SO I CALLED THEM AND THEY TOLD ME TO BRING IT BACK
IMMEDIATELY; I DID. MANY TESTS LATER, WAS TOLD MY "MOTHERBOARD DIED" (DME UNIT); AFTER
A MONTH IN THE SHOP...REPAIRED. NOW, 4/2016, LESS THAN 60K AND FRESH OUT OF WARRANTY...I
WAS DRIVING HOME WITH MY SON ON THE INTERSTATE, ABOUT TO GET OFF OF MY EXIT AND
ANOTHER "DRIVE TRAIN MALFUNCTION AND LOW ENGINE PRESSURE" LIGHT COMES ON AND THEN
ALL OF A SUDDEN MY CAR STOPPED ON THE 4 LANE OFF-RAMP. AFTER WAITING FOR AN HOUR FOR
THE TOW TRUCK TO ARRIVE AND TRYING TO PUT MY CAR INTO NEUTRAL AND ABOUT 30 MIN WITH
THE TOW TRUCK DRIVER TRYING TO PUT THE CAR IN NEUTRAL, I CALLED THE BMW DEALERSHIP
AND I FOUND OUT THAT BECAUSE MY CAR IS ALL ELECTRIC IT CANNOT BE PUT INTO NEUTRAL; A
WEEK AT THE DEALERSHIP AND STILL THERE AS I TYPE...DIAGNOSIS: TIMING CHAIN BROKE INTO
THE ENGINE AND NOW THE CAR NEEDS A NEW ENGINE WHICH I WAS QUOTED TO BE $21,000. THE
CAR IS ONLY 4 YEARS OLD!!!! NEEDLESS TO SAY, IT WAS BY THE GRACE OF GOD THAT MY SON AND
I WERE NOT INJURED OR KILLED WHEN THE ENGINE JUST SHUT OFF IN THE MIDDLE OF TRAFFIC.
AND ON TOP OF THAT, IT IS ABSURD THAT THE CONSUMER CANNOT MANUALLY PUT THIS VEHICLE
INTO NEUTRAL TO MOVE IT OUT OF HARM'S WAY IF IT'S POSSIBLE TO DO SO. THE ONLY WAY TO
PUT THE CAR IN NEUTRAL WHEN INOPERABLE IS TO TAKE IT TO THE DEALERSHIP. UNSATI AND FOR
A CAR COMPANY THAT IS SUPPOSED TO HAVE A GREAT REPUTATION AND HIGH STANDARDS, IT'S
ABSURD THAT A NEW ENGINE IS NEEDED FOR A CAR THAT IS BARELY 4 YEARS OLD. I HAVE SEEN
THE SAME ISSUES WITH OTHER BMW OWNERS ALL OVER THE INTERNET. LOVE BMW AND HAVE
OWNED 3 OF THEM AND IT'S UNFORTUNATE THAT THIS ONE WILL BE MY LAST BECAUSE I DO NOT
FEEL SAFE IN THIS VEHICLE ANYMORE.

**        *

## Tolling of the Limitations Period

41. The fraudulent conduct of the defendant tolls any applicable statutes of limitations since the fraudulent misrepresentations concerning the true cause of failures in class vehicles was inherently unknowable to plaintiffs and the class given the technical nature of the class vehicle design and manufacturing defects, including materials and workmanship.

42. Class vehicle owners do not possess the requisite technical skills in automotive engineering to discern the design, manufacture, materials and workmanship defects in their vehicles or the requisite technical skills to surmise the proper vehicle maintenance and maintenance intervals for class vehicles.

43. The statutory and case law of state consumer protection laws, together with the doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of limitations for all class vehicles because of the defendant's fraudulent conduct, including but not limited to concealment of class vehicle defects and omission of material facts.

44. Some proposed class members relied on the defendant's fraudulent misrepresentations concerning the cause of class engine failures and therefore delayed bringing suit against the defendant.

These misrepresentations relate to the fact that, in reality, class engines were failing due to manufacture, materials and/or workmanship defects. The defendant, however, fraudulently attributed the failings of class vehicle chain assemblies to other factors and/or exculpating conditions for which the defendant had no responsibility.

45. The defendant is estopped from asserting that statutes of limitations were running for the duration of time class members relied on the defendant's fraudulent representations.

46. The defendant is equitably estopped from asserting the statutes of limitations have run against the claims of class members.

**Further Allegations**

47. The defendant fraudulently, intentionally, negligently and/or recklessly concealed from proposed class representatives and proposed subclass members the defects in the class engines even though the defendant knew or should have known of design, materials and manufacturing defects in class vehicles if the defendant had adequately tested class engines.

48. The defendant had actual knowledge that design, manufacturing, materials and/or workmanship defects were causing extensive irreversible premature performance degradation in class engine chain assemblies shortly after production of the class vehicles commenced.

49. Defendant engaged in extensive field research and quality investigations and analysis before revising the specifications for the defective part, rebidding the new part and manufacturing and distributing the new part. In addition, defendant have and continue to be under a legal obligation pursuant to federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them. The defendant therefore assiduously monitors the NHTSA–ODI website and the complaints filed therein in order to comply with its reporting obligations under federal law.

50. The defendant failed to inform class vehicle owners prior to purchase or during the express warranty period that their engine primary and secondary chain assemblies were defective and would fail

shortly after the express warranty period expired. The defendant misrepresented by affirmative conduct and/or by omission and/or by fraudulent concealment the existence of defects in the class engine.

51. The defendant also failed to inform class vehicle owners at the time of purchase that the primary and secondary chain assemblies in their class vehicle's engine had been inadequately tested prior to placing the car in production and the time of vehicle sale.

52. The defendant also failed to inform class vehicle owners that there had been several significant subsequent primary and secondary chain assembly modifications including design, materials and manufacturing improvements as described in this complaint that reduced and/or eliminated premature chain assembly failure while purchasers' vehicles were within the durational limitation of the express warranty period, including the powertrain limited warranty.[11]  Specifically covered by this powertrain limited warranty were "all internal [engine] parts" including the engine chain assemblies. This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 4 years or 50,000 miles, whichever occurs first for non-commercial purchasers.

53. The defendant knew in 2012 or 2013 (the date the investigation into modifications to components in the class engines' chain assemblies commenced) that class engines were experiencing premature engine chain assembly failures. Despite this knowledge, the defendant continued to sell class vehicles with chain assemblies that were defective. This knowledge is imputed to BMW AG because BMW LLC was monitoring warranty claims and class vehicle performance in the United States, and reporting back to its parent companies located in Germany.

---

[11] Class vehicles were accompanied by a limited warranty "against defects in materials or workmanship" for "48 months or 50,000 miles, whichever occurs first" from "the date of first retail sale or the date the vehicle is first placed into service as a sales demonstrator, Aftersales Mobility Program (AMP) Vehicle or company vehicle, whichever is earlier."

54. The proposed class representatives and proposed class members had valid and binding warranties and contracts with the defendant and were reasonably expected by the defendant to use their respective class vehicles in the manner in which passenger motor vehicles were used.

55. The proposed class representatives and proposed class members complied with all warranty and contractual obligations including all warranty, warranty notice, maintenance and product use obligations for their respective class vehicles. The proposed class representatives and proposed class members operated their class vehicles under normal anticipated conditions in noncommercial environments.

56. The defendant had timely received notice of its breach of warranty claims through authorized representatives contacted by proposed class representatives and have suffered no resulting prejudice. Moreover, the proposed class representatives contacted BMW LLC directly and/or through an authorized dealership.

57. Certain of the proposed class representatives were informed by a representative of BMW LLC that BMW LLC would not provide assistance in repairing class engines because the vehicles were outside of the express warranty period.

58. The defendant refused to fully reimburse or compensate the proposed class representatives for vehicle repair expenses or provide a suitable substitute or replacement vehicle. Although their vehicles' chain assembly failure occurred outside the unilateral express warranty period (the length of which was not bargained for prior to purchase), the proposed class representatives' class vehicles exhibited unmistakable symptoms (known only by the defendant) of degradation and impending premature failure within the express warranty period.

59. Despite actual and constructive knowledge of class vehicle defects as described in this complaint, the defendant failed to cure class vehicle defects within the express warranty period and thereby breached the terms of the express warranty.

60. Through no fault of their own, the proposed class representatives and proposed class members did not possess sufficient technical expertise to recognize symptoms of impending chain assembly failure. This information, however, was well known to the defendant, but not revealed.

61. The proposed class representatives relied upon material misrepresentations, fraudulent statements and/or material omissions of employees and agents of the defendant at the time of purchase, including but not limited to the useful and expected life of class vehicles and the recommended class vehicle maintenance program.

62. The defendant's misrepresentations and fraudulent statements were received by the respective proposed class representatives prior to and at the point of their class vehicle purchase. These representations were made by BMW dealers referencing publications concerning class vehicles including the owner's manual and the Service and Warranty Information pamphlet and other materials. The representations created a reasonable belief the useful life expectancy of class vehicles without a major engine failure was in excess of 150,000 miles. These representations specifically related that the engine primary and secondary chain assemblies were non-maintenance engine lifetime components.

63. The defendant actively concealed the true reasonably expected duration of class vehicle components, including but not limited to the primary and secondary chain assemblies, from the proposed class representatives and all class vehicle purchasers. The defendant intentionally failed to inform class vehicle purchasers that class vehicles incorporated a defective and/or improperly tested primary and secondary chain assemblies that would prematurely fail within the reasonably expected useful life of the vehicle.

64. The defendant intentionally failed to inform class vehicle purchasers that the primary and secondary chain assemblies incorporated in class vehicles results in higher operational costs than alternative conventional primary and secondary chain assemblies or other competitive technology

because the primary and secondary chain assemblies prematurely fails within the reasonably expected useful life of the vehicle.

65. The defendant actively and fraudulently concealed the existence of class vehicle material, manufacture and/or design defects (including defects covered under class vehicle warranties concerning materials and workmanship) and that the owner's manual and Service and Warranty Information pamphlet accompanying class vehicles incorporated improper maintenance recommendations and maintenance intervals.

66. The proposed class representatives and class members did not learn that the chain assemblies in their respective class vehicle were defective until after their chain assemblies failed.

67. The defendant's customer service telephone representatives made false and fraudulent representations to class members as to the cause and existence of chain assembly defects in class vehicles although the service representative received hundreds of consumer complaints that class vehicles prematurely failed.  The defendant's employees falsely represented certain conditions for which the defendant was not responsible as the basis for the failures that were in fact caused by a defect in materials, manufacturing and design.  They falsely stated that defendant was not responsible for the resulting class vehicle failures and/or denied the existence of known class vehicle defects.

68. Authorized BMW dealers did not have knowledge of and/or were counseled not to admit that any defects existed in class vehicles or that improper maintenance recommendations were incorporated in the owner's manual and Service and Warranty Information pamphlet.  BMW dealers (who also had a vested financial interest in concealing and suppressing the actual cause of class vehicle failures) improperly blamed vehicle failures on certain conditions for which the defendant would not be responsible and/or denied the existence of defects in the primary and secondary chain assemblies.

69. The defendant had actual knowledge, constructive knowledge and/or should have known, upon proper inquiry and testing, that class vehicles were defective with respect to the primary and

35

secondary chain assemblies, suffered from extensive irreversible premature performance degradation during the warranty period and did not have a normal and/or reasonable useful life before sales of class vehicles commenced in the United States. This information was technical in nature, proprietary and not known by the ordinary consumer or the public, including the proposed class representatives and proposed class members. The proposed class representatives and proposed class members were ignorant of this technical information through no fault of their own.

70. The defendant acted to conceal the chain assembly defects during the warranty period so that repair costs would be shifted to the proposed class representatives and proposed class members once the warranty expired and the primary and secondary chain assemblies failed.

71. Although the defendant knew that defects in class engines caused premature failure of the chain assemblies, the defendant knowingly and actively concealed material information from prospective purchasers and actual purchasers with the intent to deceive purchasers and promote class vehicle sales.

72. The defendant's knowledge of class engine chain defects was derived from warranty claims, field investigations, claims supervisors, customer complaints and monitoring of performance of class vehicles by BMW LLC quality assurance employees. Additionally, the number of replacement components and subsequent component revisions would have placed the defendant on notice of class vehicle defects. Knowledge of class vehicle defects is further imputed to the defendant prior to sale of certain model year class vehicles because predecessor models using identical chain assembly components were also prematurely failing within their reasonably expected life. The defendant elected to place into the stream of commerce class vehicles that they knew would be adversely affected by the failure to adequately design and manufacture the chain assemblies.

73. Additional information supporting allegations of fraud and fraudulent conduct is in the control of the defendant. This information includes but is not limited to technical root cause analyses,

communications with class vehicle owners, remedial measures, warranty claims and internal corporate communications concerning how to deal with consumers who claim their class engines' chain assemblies were defective.

74. Material information fraudulently concealed and/or actively suppressed by the defendant includes but is not limited to class vehicle defects described in the preceding paragraphs.

75. Material information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including the proposed class representatives and proposed class members) premised on affirmations and representations of reliable, high quality, long-life vehicles with low maintenance, inexpensive operating costs, superior performance and durability. In fact, class vehicles actually contained a known chain assembly defects that would severely affect the useful life of the vehicle.

76. The defendant (and particularly the sales and marketing executives at BMW LLC) advertised and otherwise created the reasonable expectation (including but not limited to scheduled class engine maintenance recommendations) that class vehicles would last over 150,000 miles or ten years before experiencing chain assembly failure. Material information was fraudulently concealed and/or actively suppressed in order to protect the defendant's (and authorized vehicle dealers') corporate profits from loss of sales from adverse publicity, to reduce warranty repair costs and to limit BMW's brand disparagement.

77. The defendant had a duty to disclose to class vehicle owners that there were materials and manufacture defects in class vehicles and that the owner's manual and Service and Warranty Information pamphlet set forth the wrong maintenance recommendations and maintenance intervals.

78. This duty arose because the defendant knew that there were defects in the vehicles and inaccuracies in the owner's manual and Service and Warranty Information pamphlet that affected vehicle operation and safety while class vehicle owners were not, and could not reasonably be, cognizant of

these defects and dangers.

79. The defendant continuously and affirmatively concealed the actual characteristics of class vehicles from the proposed class representatives and other purchasers.  The defendant breached its affirmative duty of disclosure to class vehicle owners (and particularly to owners who inquired as to the cause of class vehicle failures).[12]

80. The defendant breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed and suppressed, both pre-sale and post-sale, the existence of defects in class vehicles and omissions in accompanying owner's manual and Warranty and Maintenance pamphlet.

81. The warranties accompanying class vehicles were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that class vehicles were defective, the inability of class vehicle purchasers to bargain with the defendant to increase durational warranties, their lack of knowledge of the defect, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including but not limited to durational warranties that unfairly favored the defendant particularly where there were class vehicle defects known only to the defendant and the warranty unfairly shifted repair costs to consumers when class vehicles prematurely fail during their reasonably expected life), absence of effective warranty competition and the fact that class vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models identical to class vehicles except for an engine

---

[12] Since unexpected engine failure is a serious safety issue, the defendant had an affirmative duty to disclose the vehicle defects together with associated risks.

with a belt driven valve train rather than the class engine chain driven valve train.[13]

82. Purchasers of class vehicles reasonably expect vehicles to function well in excess of the class vehicles' durational warranties before requiring extensive expensive repairs. This is particularly true where the purchasers of class vehicles were led to believe by the defendant's representations and typical consumer expectations in a commercial context that the useful expected life of the vehicles was in excess of 150,000 miles and there was no scheduled inspection or maintenance for the chain assemblies within this period.

83. Given the conduct of the defendant and the manufacture, materials, design and workmanship defects in class vehicles (that the defendant knew were inherently defective prior to the time of sale as well as post-sale), the durational limitations of the warranties are oppressive, unreasonable and unconscionable because the warranty disclaimers of the proposed class representatives and proposed class members were neither knowing nor voluntary.

84. The proposed class representatives and proposed class members had an absence of any meaningful choice in the purchase of class vehicles and the contractual terms were unreasonably favorable to the defendant since the defendant was fully aware of defects in the class vehicles that substantially reduced the expected useful life of the vehicle. The proposed class representatives and proposed class members were unaware of defects in the class vehicles at the time of purchase.

---

[13] New Jersey Uniform Commercial Code § 2-302 (NJ Stat. Ann. § 12A:2-302) states in pertinent part:

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

85. The bargaining position of the defendant for the sale of class vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers, including the proposed class representatives and proposed class members. This is because the defendant knew there were defects in class vehicles affecting the durational operation and operating costs.

86. The defendant included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that class vehicles were inherently defective and dangerous and had been inadequately tested.

87. The defendant knew defects in class vehicle components would cause certain expensive repair failures within one-half of the useful expected life of the vehicle. The defendant artificially limited the duration of the warranty period to avoid performing warranty repairs in order to maximize profits through the sale of defective vehicles.

88. The defendant unconscionably sold defective class vehicles to the proposed class representatives and proposed class members without informing these purchasers that the class vehicles were defective. In the alternative, the defendant failed to notify the proposed class representatives and proposed class members after the time of sale that the primary and secondary chain assemblies had been redesigned and that the assemblies in their respective vehicles should be replaced prior to the expiration of the warranty.

89. The defendant's conduct renders the vehicle purchase contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

90. The durational limitation of the express warranties accompanying the class vehicles is unreasonable and unconscionable since the defendant actively concealed known vehicle defects and issued incorrect maintenance recommendations and maintenance intervals. The proposed class representatives and proposed class members had no notice of or ability to detect the defects.

91. The defendant restricted the limited power train warranty (including the class engine) duration to 4 years or 50,000 miles (whichever occurs first) for class vehicles in an effort to avoid the cost of repairs because they were cognizant of class vehicle defects that existed at the time of sale.

92. Engines in competitive vehicles manufactured and sold at the time the class vehicles were manufactured and sold ordinarily last longer than warranted by the limited power train warranty accompanying class vehicles.

93. The defendant engaged in unconscionable fraudulent commercial practices and attempted to conceal class vehicle materials defects, workmanship defects, manufacturing defects, and improperly recommended maintenance.

94. The defendant is engaged in a continuing fraud concerning the true underlying cause of class vehicle failures.

95. The defendant failed to adequately test class vehicles in appropriate consumer environments prior to marketing, distribution and sale.

96. The defendant's unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies. The defendant's upper level management orchestrated this wrongful conduct.

97. The proposed class representatives and proposed class members operated and maintained their class vehicles in conformity with the respective owner's manual and Service and Warranty Information pamphlet and provided the requisite notice to the defendant's authorized agents for warranty repair after their class vehicles failed.

98. Even if class vehicles do not fail entirely, class vehicle owners have sustained an ascertainable financial loss, including but not limited to increased maintenance costs for primary and secondary chain assembly inspections and/or premature replacement of the primary and secondary chain assemblies and/or substantially reduced engine performance. Individuals who own or have owned class vehicles

41

also sustained diminution of the resale value of their class vehicles since knowledge of problems with class vehicles became public information after the time of their purchase.

99. The proposed class representatives and proposed class members have not received the benefit of their bargain concerning their respective purchase of class vehicles.

100. The defendant created an over-all misleading impression through its failure to disclose material information concerning the fact that class vehicles incorporated defective chain assemblies and were accompanied by an owner's manual and Service and Warranty Information pamphlet that incorporated incorrect engine service and maintenance recommendations.   The proposed class representatives and proposed class members were deceived by the defendant's conduct as described in this complaint with respect to their purchase of class vehicles.

101. The defendant violated the consumer protection laws of New Jersey together with all other state consumer protection laws with its oppressive and unconscionable conduct described in this complaint including but not limited to its failure to disclose material information that caused ascertainable financial harm to proposed class representatives and proposed class members.

102. The defendant was under a duty to disclose safety defects to class vehicles as described in this complaint but failed to disclose to proposed class representatives and proposed class members the characteristics of class vehicles with respect to defects in violation of the consumer protection laws of New Jersey together with all other state consumer protection laws.   The defendant's knowing omissions (that class engines were defective and that this defect constituted a safety hazard) deceived purchasers (including but not limited to proposed class representatives and proposed class members).   Those knowing disclosure omissions include the fact that class vehicle defects had a significant impact on the value, durability and future care of class vehicles.   This failure to disclose additional information concerning class vehicle defects had the capacity to, and in fact did, deceive purchasers (including but not limited to proposed class representatives and proposed class members) in a material respect.

103. If proposed class representatives and proposed class members had been made aware of the defects in their respective class vehicles and the attendant ramifications of value, durability, maintenance expenses, safety and care, they would not have purchased the class vehicles or would have paid less for their vehicles since class members were led to believe that they were purchasing a vehicle that was free of major defects and were not fully informed of the true characteristics and attributes of class vehicles.

104. The defendant fraudulently, intentionally, negligently and/or recklessly concealed from proposed class representatives and proposed class members defects in class vehicles even though the defendant knew of information concerning these defects was material and central to the marketing and sale of class vehicles to prospective purchasers including proposed class representatives and proposed class members.

105. As a direct result of these knowing omissions, proposed class representatives and proposed class members purchased class vehicles and sustained economic harm since they purchased vehicles worth considerably less than represented.  These misrepresentations diminish the value and cost of vehicle ownership while also increasing risk of injury that was not disclosed to or reasonably anticipated by consumers at the time of purchase.

106. The wrongful conduct of the defendant in violation of the consumer protection laws of New Jersey together with all other state consumer protection laws occurred within the limitations period set out in the respective statutes and/or the limitations period is tolled by the defendant's conduct.

**What the Omissions Were:**

107. The defendant fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning class vehicles, including information concerning class engine chain assembly defects, in an effort to deceive purchasers as described in ¶¶ 2-8 and 28-39 and other paragraphs of this complaint. At the time of purchase, the defendant fraudulently omitted to disclose material matter regarding the defects in class vehicles, including their impact on future repairs, costs and vehicle

43

reliability. The defendant fraudulently concealed from the proposed representatives and proposed class members defects in class vehicles even though the defendant knew or should have known that information concerning these defects was material and central to the marketing and sale of class vehicles to prospective purchasers, including proposed class representatives and proposed class members.

108. The primary chain plastic guide assembly in class engines is a defective material and prematurely fails. The primary chain plastic guide assembly becomes brittle and breaks because the guide assembly is made of a defective polycarbonate composition. Pieces of broken off plastic from the chain guide assembly becomes lodged in the crankshaft drive sprockets causing chain breakage or allow sufficient slack in the primary chain to cause chain skip on engine drive sprockets (crankshaft and camshaft) sufficient to cause severe engine damage or complete engine destruction. Another consequence of primary chain guide failure is the guide assembly shifts out of position and is abraded by the rotating primary chain. The primary chain guide assembly polycarbonate shavings accumulate in the oil sump where they are sucked into and clog the oil pump pick-up screen. This event causes oil pump cavitation resulting in failure of the pump to provide lubricating oil to wear / contact surfaces such as crankshaft bearings resulting in catastrophic engine damage and/or complete failure. These scenarios pose a serious safety issue while the vehicle is being operated since there is loss of engine power without warning, loss of power-assisted steering and reduced braking caused by lack of engine vacuum. In class vehicles equipped with manual transmissions, the drive wheels will lock and cause loss of directional stability and steering. In other instances, the engine may fail to start, leaving the driver and passenger stranded mid-journey.

109. The secondary chain (counterbalance shaft and oil pump drive chain) in class engines connects the oil pump and balance shaft assemblies to the crankshaft. The secondary chain assembly is also defective and prematurely fails. Secondary chain failure is caused by materials and design that are required to be high-wear resistant but instead are made of insufficient materials which fail to prevent

high resistance wear, resulting in premature chain elongation, chain sprocket damage, chain slippage and/or chain separation. When the secondary chain fails, the engine oil pump ceases to provide lubricating oil to contact surfaces such as crankshaft bearings resulting in catastrophic engine damage and/or complete failure. This secondary chain was initially redesigned in approximately late 2014 and now incorporates a new solid center link plate. The secondary chain link plate configurations are depicted in Figure 4, *supra.* The secondary chain has been redesigned twice and has been assigned part numbers 11417605366, 11417602646 and 11418651102.

110. The defendant concealed from proposed representatives and proposed class members during their warranty periods that a defect existed with the chain assemblies which could have and should have been fixed during the warranty period, particularly as it was a safety issue, and defendant's withholding of this material information deprived proposed representatives and proposed class members of the right to have such defective part replaced for free under the warranty.

**The Person(s) Responsible for the Failure to Disclose:**

111. The proposed class representatives and proposed class members are entitled to the reasonable inference that the defendant's sales, marketing, engineering and warranty departments and its executives were involved in the omissions.

**The Context of the Omissions and the Manner in which they Misled:**

112. Material information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including proposed class representatives and proposed class members) premised on affirmations and representations as described in this complaint.

113. If proposed class representatives and proposed class members had been informed of defects in their class vehicles, they would not have purchased their respective class vehicles or would have paid substantially less. If proposed class representatives and proposed class members had been made aware of the defects in their respective class vehicles and the attendant ramifications of their respective

vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased the class vehicles since each class member believed they were purchasing vehicles without major defects and were not fully informed of true characteristics and attributes of class vehicles. If the proposed class representatives and proposed class members had been informed of the defect during the warranty period, they would have had the defective part replaced under warranty. The defendant's conduct that violated the consumer fraud statutes alleged herein deprived proposed representatives and proposed class members of that remedy.

**What the Defendant Obtained through the Fraud:**

114. Material information concerning class vehicles was concealed and/or actively suppressed in order to protect the defendant's corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity and limit brand disparagement. Purchasers believed they were obtaining vehicles as having different attributes than described and purchased and were accordingly deprived of economic value and paid a price premium for their class vehicles. The defendant had a uniform policy of not properly disclosing class vehicle defects in order to promote sales and increase profits as described in this complaint.

115. As a proximate and direct result of the defendant's unfair and deceptive business trade practices, proposed class representatives and proposed class members purchased class vehicles and sustained an ascertainable loss, including but not limited to financial harm as described in this complaint.

**COUNT I**
**BREACH OF EXPRESS WARRANTY**
(On Behalf of the Nationwide Class or, Alternatively, the New Jersey Subclass)

116. The proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

117. The defendant is a merchant with respect to passenger motor vehicles. Class vehicles are goods within the meaning of the Uniform Commercial Code as adopted by New Jersey and all other adopting states.

118. The defendant provided class members an express powertrain limited warranty of "4 years or 50,000 miles whichever occurs first, from date the vehicle was first placed in service." Specifically covered by this powertrain-limited warranty were "all internal [engine] parts" including the engine primary and secondary chain assemblies. This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 4 years or 50,000 miles, whichever occurs first for non-commercial purchasers.

119. The defendant expressly warranted to the general public, owners and lessees of class vehicles that class vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used. The defendant is a merchant with respect to passenger motor vehicles. The proposed class representatives and proposed class members purchased their respective vehicles for personal, family, and/or household use and did not engage in commercial use of their vehicles.

120. The proposed class representatives and proposed class members were not presented with an opportunity to review (let alone bargain for) the warranty provisions at the time of purchase of their class vehicles and were unaware of the defects in the primary and secondary chain assemblies of class vehicle engines that made the respective bargaining position of the parties unequal at the time of vehicle purchase.

121. The defendant received adequate notice of its breach of its express warranties and failed to cure the warranty breaches. The proposed class representatives and class members reported to the defendant the problems with and failings of the primary and secondary chain assemblies in its vehicles and requested of defendant that they cure and/or repair and/or replace the defective chain components. In the alternative, the proposed class representatives, as indirect purchasers, were not required to issue

notice of the warranty breach to the defendant and the lack of notice of warranty breach did not result in any prejudice to the defendant.

122. The proposed class representatives and proposed class members complied with maintenance recommendations for its respective class vehicle.

123. The defendant failed to remedy by replacement or repair the proposed class representatives' chain assemblies that were defective in materials and workmanship during the express warranty period although these defects were known to the defendant at that time.[14]  Class vehicles owned by the proposed class representatives and proposed class members also prematurely failed and/or experienced substantial performance diminution within the express warranty period of 4 years or 50,000 miles.

124. Because of the chain assembly defects, class vehicles are not reliable and owners of these vehicles have lost confidence in the ability of class vehicles to perform the function of safe reliable transportation.

125. The proposed class representatives and proposed class members could not have reasonably discovered the defective condition of its class vehicle engines prior to failure.

126. The express warranty remedy set out in the warranty provisions accompanying class vehicles fails of its essential purpose under Uniform Commercial Code § 2-719(2) and the limitation of consequential damages is unconscionable under § 2-719(3) because of the conduct of the defendant described, *supra*.

---

[14] The Service and Warranty Information materials for class vehicles recites as follows:

To obtain warranty service coverage, the vehicle must be brought, upon discovery of a defect in material or workmanship, to the workshop of any authorized BMW SAV center in the United States or Puerto Rico, during normal business hours.  The authorized BMW SAV center will, without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts.

127. The defendant breached its express warranties in that class vehicles were defective with respect to engine materials, workmanship, and manufacture.  The defendant further breached its express warranties in that class vehicles were accompanied by an owner's manual and Service and Warranty Information pamphlet that incorporated no inspection and service intervals for the primary and secondary chain assemblies although the defendant knew these components were defective and required periodic inspection and service.

128. The defendant further breached its express warranties by failing to remedy the chain assembly defects caused by defects in materials and workmanship as required by the warranty that accompanied the respective class vehicles.

129. The proposed class representatives and proposed class members relied on express warranties made by the defendant concerning class vehicles and sustained financial injury resulting from the breach of those warranties by the defendant including replacement of chain assemblies and repair of resulting engine damage.

130. The proposed class representatives and proposed class members could not have reasonably discovered the defective condition of the class vehicles.  The defendant's breach of its express warranties was the direct and proximate cause of the proposed class members' financial harm.

131. Wherefore, proposed class representatives and proposed class members demand judgment against defendant for multiple damages, interest, costs and attorneys' fees.

## COUNT II
## BREACH OF UNIFORM COMMERCIAL CODE § 2-314: IMPLIED WARRANTY OF MERCHANTABILITY BY THE DEFENDANT
(On Behalf of the Nationwide Class or, Alternatively, the State Subclasses)

132. The proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

133. The defendant is a merchant with respect to passenger motor vehicles.  Class vehicles are goods within the meaning of the Uniform Commercial Code as adopted by New Jersey and all other adopting states.

134. The defendant failed to provide legally binding written notice to proposed class representatives and other class vehicle purchasers of implied warranty exclusions at time of purchase because the warranty exclusion failed to mention merchantability and was not conspicuous within the meaning of § 2-316 and was therefore ineffective as a matter of law.

135. The defendant impliedly warranted to the general public, owners and lessees of class vehicles that the class vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used.  The proposed class representatives and proposed class members purchased their respective vehicles for personal, family, and/or household use and did not engage in commercial use of their vehicles.

136. As manufacturers of consumer goods, the defendant is precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of implied warranty.

137. To the extent privity of contract is required for purposes of the application of implied warranty, the proposed class representatives and proposed class members are third-party beneficiaries to a contract implemented by the defendant that creates an implied warranty of merchantability.

138. The defendant breached its implied warranties in that class vehicles were defective with respect to engine design and manufacture as described in this complaint and were unfit for the ordinary purposes for which passenger vehicles are used because of those defects which caused premature primary and secondary chain assembly failure and consequent damage to the engine.

139. The class vehicles are predisposed to premature failure in normal anticipated operating environments because of engine materials, workmanship and manufacture defects described in this complaint that existed at the time these vehicles were manufactured.

140. Class vehicles are not reliable and owners of these vehicles have lost confidence in the ability of class vehicles to perform the function of safe reliable transportation without the likelihood of unanticipated sudden catastrophic engine failure. The defendant is estopped by its conduct, as described in this complaint, from disclaiming any and all implied warranties with respect to the chain assemblies in class engines.

141. The proposed class representatives and proposed class members relied on implied warranties of merchantability made by the defendant regarding class vehicles in choosing to purchase their respective class vehicles and sustained an ascertainable financial injury resulting from the breach of those warranties by the defendant.

142. The defendant received adequate notice of its breach of the implied warranty of merchantability through proposed class representatives and proposed class members' requests for repair or replacement. In the alternative, class vehicle owners, as indirect purchasers, were not required to issue notice of the warranty breach to the defendant and any lack of notice of warranty breach did not result in any prejudice to the defendant. The defendant declined to offer the proposed class representatives an effective remedy for their defective class engine or vehicle.

143. Even though the proposed class representatives and proposed class members complied with class vehicle engine maintenance recommendations for their respective class vehicles, their respective class vehicle engines prematurely failed because of defects in the primary and secondary chain assemblies.

144. The proposed class representatives and proposed class members reasonably relied upon the expertise, skill, judgment and knowledge of the defendant and upon its implied warranty that class

51

vehicles were of merchantable quality and fit for their intended use. Class vehicles did not conform to the defendant's implied representations or warranties because defects in the chain assemblies caused class engines to be less reliable and more expensive to maintain than competitor vehicles.

145. The proposed class representatives and proposed class members had an independent legitimate consumer expectation that the class vehicles would last well in excess of 10 years and 150,000 miles before requiring any major engine repairs based on industry standards, the defendant's publications and other publications, competitor products, consumer product magazines, prior vehicle ownership and reputation of the defendant for manufacturing durable quality vehicles. There were no statements made by the defendant or its agents that contradicted or caused consumers to lower their legitimate expectations at the time of purchase.

146. The proposed class representatives and proposed class members could not have reasonably discovered the defective condition of the class vehicles because the class engine defects were hidden inside of the engine. The defendant's breach of its implied warranties of merchantability was the direct and proximate cause of proposed class representatives' and proposed class members' financial harm. Had the class vehicles not contained defective and failing chain assemblies, proposed class representatives and proposed class members would not have incurred the costs of engine repair.

147. Wherefore, the proposed class representatives and proposed class members demand judgment against defendant including multiple damages, interest, costs and attorneys' fees.

### COUNT III
### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2310(d)(1(A)
(On Behalf of the Nationwide Class, or Alternatively, the State Subclasses)

148. The proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

149. This claim is brought as a state law claim under 15 U.S.C. § 2310(d)(1)(A) and is before this Court as a supplemental state court claim for each of the state subclasses pursuant to diversity

jurisdiction under CAFA.

150. The proposed class representatives and proposed class members are consumers within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

151. Class vehicles are consumer products within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

152. The defendant is a supplier and/or warrantor within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

153. The defendant's express warranties are written warranties within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). Class vehicle implied warranties created by operation of state law are incorporated into the Magnuson-Moss Warranty Act as modified by § 2308.

154. The defendant breached the express and implied warranties accompanying class vehicles as described in this complaint.

155. The Magnuson-Moss Warranty Act provides a claim for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

156. The defendant's breach of its express and implied warranties was the direct and proximate cause of the proposed class representatives and proposed class members' financial harm as more fully set out in the preceding warranty counts, and constitutes a violation of the Magnuson-Moss Warranty Act.

157. The proposed class representatives and proposed class members alleged in this complaint sufficient direct dealings with the defendant or its agents (dealerships and technical support) to establish privity of contract with the defendant. In the alternative, privity of contract is not required because proposed class representatives and proposed class members are intended third-party beneficiaries of contracts between the defendant and its dealers, specifically including implied warranties. Authorized class vehicle dealers were not intended to be the ultimate consumers of class vehicles and have no rights under the

warranty provisions accompanying class vehicles since these provisions were drafted and intended to benefit the consumer purchasers of class vehicles.

158. Affording the defendant a reasonable opportunity to cure its breach of written warranties for class vehicles would be unnecessary and futile. The proposed class representatives and proposed class members have attempted to secure coverage for their primary and secondary chain assemblies and related repairs without success.

159. At the time of sale or lease of each class vehicle, the defendant knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the class vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defects as described in this complaint. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that class vehicles resort to an informal dispute resolution procedure and/or afford the defendant a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

160. The proposed class representatives and proposed class members would suffer economic hardship if they returned their class vehicles but did not receive the return of all payments made by them.

161. Wherefore, proposed class representatives and proposed class members demand judgment against the defendant including multiple monetary damages, interest, costs and attorney's fees.

**COUNT IV**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT ("NJCFA")**
**N.J. STAT. ANN. §§ 56:8-2 *ET SEQ.*[15]**
(On Behalf of Plaintiffs Bhawar Patel, Ashok Patel, Williams,
the Nationwide Class and the New Jersey Subclass)

162. Proposed class representatives Bhawar. Patel, Ashok Patel and Williams incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

---

[15] Counsel for the plaintiffs will serve the New Jersey Attorney General with a copy of this complaint in accordance with N.J. STAT. ANN. § 56:8-20.

163. Proposed class representatives Bhawar Patel, Ashok Patel and Williams assert this count on behalf of themselves and proposed New Jersey subclass members.

164. The NJCFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . " N.J. STAT. ANN. § 56:8-2.

165. Proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the Nationwide Class and/or the New Jersey subclass are consumers/persons who purchased or leased class vehicles for personal, family, or household use. The defendant is a person engaged in trade or commerce with respect to merchandise within the context of NJCFA.

166. In violation of the NJCFA, defendant employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing class vehicles that contain class engine defects described in this complaint and present an undisclosed safety risk to drivers and occupants of the class vehicles. Further, defendant misrepresented the standard, quality or grade of the class vehicles that were sold or leased with the latent known defects and/or failed to disclose class engine defects described in this complaint and corresponding safety risk in violation of the NJCFA. The defendant fraudulently, intentionally, negligently, and/or recklessly misrepresented to proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass the required maintenance and/or maintenance intervals of class vehicle engines, including but not limited to the primary and secondary chain assemblies.

167. Defendant's misrepresentations and fraudulent omissions were material to proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass.  When proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass purchased or leased their class vehicles, they reasonably relied on the expectation that the class vehicles' primary and secondary chain assemblies would last beyond the warranty periods without need for repair or replacement and would not pose an unavoidable safety risk.  Had defendant disclosed that the primary and secondary chain assemblies were prone to premature failure and/or an unavoidable safety risk, Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass would not have purchased or leased the class vehicles, or would have paid less for their vehicles.  Further, had defendant disclosed that the class engine primary and secondary chain assemblies would not last beyond the warranty periods without need for repair or replacement, Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass would have demanded repair or replacement during the warranty periods at no cost to proposed class representatives Bhawar Patel, Ashok Patel Williams and members of the proposed Nationwide Class and/or New Jersey subclass as provided for in defendant's warranties.

168. Defendant knowingly concealed, suppressed and/or omitted to disclose the existence of the class engine primary and secondary chain assembly defects and safety risk in the class vehicles at the time of sale or lease and at all relevant times thereafter. The defendant also fraudulently, intentionally, negligently and/or recklessly misrepresented to proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass the characteristics of class vehicle engines with respect to material, manufacture, durability, longevity, maintenance and operating costs. The defendant extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of class vehicles, including superior materials,

workmanship, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 150,000 miles. In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

169. Defendant knew that the class engine defects described in this complaint would cause the chain assemblies to fail before the useful life of the engine and unconscionably limited the warranty coverage so that the primary and secondary chain assembly would fail beyond the warranty periods, thereby unlawfully transferring the costs of repair of these components to proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass. Further, defendant unconscionably marketed the class vehicles to uninformed consumers in order to maximize profits by selling additional class vehicles containing the undisclosed latent defect and corresponding safety risk.

170.    Defendant's prior knowledge is demonstrated by the facts that:

- Defendant maintains a Warranty Optimization section in its Warranty Department at BMW LLC's headquarters in New Jersey, which contemporaneously tracks warranty data for various parts in the class vehicles, including class engine chain assemblies, to determine failure rates and perform root cause analysis;

- Defendant maintains Warranty Specialists at its U.S. Headquarters in New Jersey who contemporaneously analyze warranty data maintained in BMW LLC's intranet database available to personnel at the U.S. Headquarters to identify failure rates and trends;

- Defendant also maintains a Launch Viability Function Integration section whose responsibilities in the U.S. include extensive pre-launch testing of vehicles; organizing and leading vehicle test events at multiple test facilities;

- Defendant also maintains a division that includes engineers who inspect and analyze defects and failure as they occur in the field;

- Defendant revised the chain tensioner and utilized different materials and components to alleviate the problem starting in 2013 and revised the chain assemblies and materials and components multiple times, starting in 2013; and

- Defendant is required to assiduously track and review complaints filed by owners of class vehicles with NHTSA to ensure that any defects requiring a recall are promptly reported to NHTSA within five (5) days;

171. Defendant owed a duty to disclose the class engine defects described in this complaint and its corresponding safety risk to Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass because defendant possessed superior and exclusive knowledge regarding the defect and the risks associated with primary and secondary chain assembly failure. Rather than disclose the defects, defendant intentionally concealed the defect with the intent to mislead Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass in order to sell additional class vehicles and wrongfully transfer the cost of repair or replacement of the defective components or failed engine to Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass. The defendant actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

172. Defendant knew, or should have known, that the primary and secondary chain assembly defects in class vehicles would cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating. Further, defendant knew, or should have known, that such loss of power

would cause class vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury. The defendant actively suppressed the fact that class engines were prematurely failing because of defects, as well as incorrect maintenance recommendations and maintenance intervals. Although the defendant knew defects in class engines and misinformation in the owner's manual and Service and Warranty Information pamphlet were causing premature class engine failures, the defendant denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners. In certain instances, the defendant secretly repaired some class engines to prevent dissemination of knowledge concerning class engine defects.

173. Had proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass known about the class engine defects described in this complaint at the time of purchase, including the safety hazard posed by the defect and the monetary cost of repair, they would not have bought the class vehicles or would have paid much less for them.

174. As a direct and proximate result of defendant's wrongful conduct in violation of the NJCFA, Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass have suffered and continue to suffer harm by the threat of sudden and unexpected failure of the primary and secondary chain assemblies and/or actual damages in the amount of the cost to replace the defective assemblies including other essential engine parts and/or the entire engine. Plaintiffs Bhawar Patel, Ashok Patel, Williams and members of the New Jersey subclass have also suffered the ascertainable loss of the diminished value of their vehicles. Proposed class representative Bhawar Patel incurred financial damages of $7,952.09 (exclusive of vehicle towing) to replace the engine in his class vehicle when an engine chain assembly failed. The engine failure was directly and proximately caused by the defendant's violation of the NJCFA. Proposed class representative Williams chain failure resulted

in financial damages and ascertainable loss of at least $7,000.00.  Proposed class representative plaintiff Ashok Patel sustained engine chain failure repair costs of at least $1,768.00.

175. As a further result of defendant's fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial as allowed by N.J. STAT. ANN. § 56:8-19.  Plaintiff Patel and members of the New Jersey subclass also seek an order enjoining defendant's unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA. *See* N.J. STAT. ANN. § 56:8-19.

176. The defendant's deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances including proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass were caused to suffer ascertainable damages by expending sums of money in purchasing and later repairing their class vehicles. As reasonable consumers, proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass had no reasonable way to know that class vehicles contained chain assemblies, which were materially defective.  Any reasonable consumer under the circumstances would have relied on the representations of the defendant who alone possessed the knowledge as to the quality and characteristics of the class vehicles, including the durability of the class engine and chain assemblies.

177. If the defendant had not concealed class engine defects from proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

178. The defendant's fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

179. The defendant violated the NJCFA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines were defective and were accompanied by incorrect maintenance recommendations and maintenance intervals.

180. The defendant violated the NJCFA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the primary and secondary chain assemblies.

181. The defendant further violated the NJCFA by failing to inform prospective class vehicle purchasers that the defendant had not properly tested class engines including but not limited to the chain assemblies.

182. The defendant committed unfair and unconscionable commercial practices as described in this complaint. The defendant repeatedly violated the NJCFA on multiple occasions with its continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class engines owned by plaintiffs Bhawar Patel, Ashok Patel, Williams and proposed subclass members.

183. As a proximate and direct result of the defendant's unfair and deceptive business trade practices, proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass purchased class vehicles and sustained an ascertainable loss and financial harm.

184. Proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass experienced premature class engine failure,

diminution of class vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

185. The conduct of the defendant offends public policy as established by statutes and common law; is unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers and therefore constitutes an unconscionable commercial practice.

186. Wherefore, proposed class representatives Bhawar Patel, Ashok Patel, Williams and members of the proposed Nationwide Class and/or New Jersey subclass demand judgment against the defendant for restitution, disgorgement, statutory and actual monetary damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate Court order prohibiting the defendant from further deceptive acts and practices described in this complaint.

**COUNT V**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILCS 505/1 *ET SEQ.***
(On Behalf of Plaintiff Gelis and the Illinois Subclass)

187. Plaintiff Gelis incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

188. Plaintiff Gelis asserts this count on behalf of himself and members of the Illinois subclass.

189. Defendant's practices, acts, policies and course of conduct, as described above, constitute unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that consumers, including plaintiff Gelis and members of the Illinois subclass, rely upon such concealment, suppression, omission in connection with the sale or advertisement of merchandise of class vehicles in violation of the Illinois Consumer Fraud and Deceptive Business Practice Act (ICFA), 815

ILCS 505/1 *et seq.* (the "Consumer Fraud Act"), when purchasing and/or leasing their respective class vehicles with the defective primary and secondary chain assemblies.

190. Defendant intentionally concealed, suppressed and omitted to disclose to plaintiff Gelis and members of the Illinois subclass at the time of purchase or lease, that the class vehicles contained manufacturing, materials and/or workmanship defects, with the intent that plaintiff Gelis and members of the Illinois subclass rely upon such concealment, suppression, failure to disclose or omission.

191. Defendant knew and intentionally concealed, suppressed and omitted to disclose to consumers who purchased or leased the class vehicles, including plaintiff Gelis and members of the Illinois subclass, the existence of defects and problems in the primary and secondary chain assemblies, despite the fact that defendant possessed prior knowledge of the inherent defects to the class vehicles' primary and secondary chain assemblies.

192. Defendant actively concealed from plaintiff Gelis and members of the Illinois subclass the fact that the primary and secondary chain assemblies were defective, despite the fact that defendant learned of such defects in as early as 2012.

193. Defendant represented to plaintiff Gelis and members of the Illinois subclass that class vehicles were of merchantable quality, in proper working order, and fit for the ordinary purposes for which passenger vehicles are used when, in fact, defendant knew that the class vehicles were not of merchantable quality, were not in proper working order, and/or were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacture defects which cause premature primary and secondary chain assemblies failure, engine failure, and/or failed performance.

194. Defendant's acts of commission and omission were done with knowledge and intent to induce plaintiff Gelis and members of the Illinois subclass to rely upon defendant's deceptive misrepresentations and decide to purchase and/or lease a class vehicle.

195. Defendant's deceptive acts of commission and omission were material and were material to a consumer's decision to purchase and/or lease a class vehicle.

196. Defendant's conduct was in the course of conduct involving trade or commerce in the sale and/or lease of the class vehicles and/or related activities.

197. Defendant's acts of commission and omission caused plaintiff Gelis and members of the Illinois subclass to suffer ascertainable losses of money and property in that they were forced to expend sums of money at its dealerships and elsewhere to repair and/or replace the primary and secondary chain assembly assemblies components of their class vehicle engines, despite the fact that defendant had prior knowledge of the defects at the time of placing class vehicles into the stream of commerce.

198. In addition to direct monetary losses, plaintiff Gelis and members of the Illinois subclass suffered ascertainable losses paying for the repairs to their respective class engine chain assemblies or engine replacement caused by the chain defects and received less value than what was promised to them at the time of purchase and/or lease.  Specifically, plaintiff Gelis and members of the Illinois subclass paid for vehicles that are now worth significantly less because of defective primary and secondary chain assemblies and the damage caused to the class engines.  In addition, the purchase price of class vehicles supposedly included a warranty program that would provide free repairs for all defects in materials or workmanship that occurred during the warranty period but instead class vehicle owners were deprived of the value of this warranty due to defendant's known concealment.

199. A causal relationship exists between defendant's deceptive and unlawful conduct and the ascertainable losses suffered by plaintiff Gelis and members of the Illinois subclass.  Consumers including plaintiff Gelis and members of the Illinois subclass, relied upon defendant's misrepresentations, concealments, and omissions in deciding to purchase and/or lease their class vehicles.  Had the defective primary and secondary chain assemblies in the class engines been disclosed, plaintiff Gelis and the Illinois subclass would not have purchased them, would have paid less for the

class vehicles had they decided to purchase them, or taken affirmative steps to prevent the catastrophic damage to their class vehicles' primary and secondary chain assemblies and engine during the warranty period.

## COUNT VI
### VIOLATION OF MASS. GEN. L. CH. 93A: UNFAIR AND DECEPTIVE TRADE ACT PRACTICES RESULTING IN FINANCIAL HARM
(On Behalf of Plaintiffs Gorey, Gagnon and the Massachusetts Subclass)

200.    Proposed class representatives Gorey and Gagnon, on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

201. The defendant is a person within the context of Mass. Gen. L. ch. 93A, §1 and committed wrongful conduct set out in this complaint including conduct that caused ascertainable financial harm and/or economic loss to the class representatives and proposed class members.

202. The defendant committed unfair and deceptive acts in the course of trade and commerce within the context of Mass. Gen. L. ch. 93A as described in this complaint including but not limited to parallel violations of § 5 of the Federal Trade Commission Act of 1914, 38 Stat. 719, *codified at* 15 U.S.C. §§ 41-58, *as amended* and Mass. Regs. Code 940, §§ 3.05, 3.16 (1993).[16]

203. The defendant committed unconscionable commercial practices in the course of trade and commerce within the context of Mass. Gen. L. ch. 93A as described in this complaint including but not limited to parallel violations of § 5 of the Federal Trade Commission Act of 1914, 38 Stat. 719, *codified at* 15 U.S.C. §§ 41-58, *as amended* and Mass. Regs. Code 940, §§ 3.05, 3.16 (1993).

204. The defendant committed oppressive commercial practices in the course of trade and commerce within the context of Mass. Gen. L. ch. 93A as described in this complaint including but not

---

[16] The defendant also concurrently breached warranties of merchantability and fitness for a particular purpose that are violations of Mass. Gen. L. ch. 93A.

limited to parallel violations of § 5 of the Federal Trade Commission Act of 1914, 38 Stat. 719, *codified at* 15 U.S.C. §§ 41-58, *as amended* and Mass. Regs. Code 940, §§ 3.05, 3.16 (1993).

205. The defendant violated Mass. Regs. Code 940, § 3.05 (1993) and ch. 93A by its material misrepresentations, misleading statements and failure to fully disclose material information concerning class engines as described in this complaint that had the capacity, tendency and/or effect of deceiving buyers of class vehicles.

206. The defendant violated Mass. Regs. Code 940, § 3.16(1) (1993) and ch. 93A with its oppressive and unconscionable conduct described in this complaint that caused ascertainable financial harm to the proposed class representatives and proposed class members.

207. The defendant violated Mass. Regs. Code 940, § 3.16(2) (1993) and ch. 93A by its conduct described in this complaint including but not limited to its failure to disclose material information concerning class engines that caused ascertainable financial harm to the proposed class representatives and proposed class members.

208. The defendant violated Mass. Regs. Code 940, § 3.16(4) (1993) and ch. 93A with its violation of the Federal Trade Commission Act that caused ascertainable financial harm to the proposed class representatives and proposed class members as described in this complaint.

209. The defendant was under a duty to disclose material information concerning class engines incorporated in class vehicles as described in this complaint but failed to disclose to the proposed class representatives and proposed class members the characteristics of class vehicles with respect to those defects in violation of both ch. 93A and Mass. Regs. Code 940, §§ 3.05, 3.16 (1993).

210. The defendant's representations and/or omissions concerning class engine defects deceived purchasers (including but not limited to the proposed class representatives and proposed class members) because it was not disclosed that class engine chain assemblies were defective and should be replaced every four years or 50,000 miles, whichever occurred first. This failure to disclose additional

66

information concerning class engines had the capacity to, and in fact deceived purchasers (including but not limited to the proposed class representatives and proposed class members) in a material respect.

211. If the proposed class representatives and proposed class members had been made aware of material information concerning class engines and the attendant ramifications of vehicle operating costs and durability, they would not have purchased the class vehicles or would have paid less. The proposed class representatives and proposed class members were not fully informed of true characteristics, attributes and nature of class vehicles at the time of purchase and thereafter until their respective class engine prematurely failed.

212. The defendant fraudulently, intentionally, negligently and/or recklessly concealed from the proposed class representatives and proposed class members defects in class vehicles even though the defendant knew or should have known information concerning these defects was material and central to the marketing and sale of class vehicles to prospective purchasers including the proposed class representatives and proposed class members.

213. The defendant intended or should have known that the proposed class representatives and proposed class members would rely upon misrepresented characteristics of class vehicles and/or misleading descriptions and statements concerning class vehicles as described in this complaint.

214. The defendant violated § 5 of the Federal Trade Commission Act of 1914, 38 Stat. 719, *codified at* 15 U.S.C. §§ 41-58 *as amended,* and ch. 93A by failing to inform class vehicles owners at the time of purchase that the vehicles would require additional scheduled maintenance and replacement of the engine's chain assemblies and that this added significant additional cost to ownership.

215. As a direct result of these omissions and misrepresentations, the proposed Massachusetts class representatives and proposed class members purchased class vehicles and sustained economic harm since they purchased vehicles requiring significantly more repairs and/or preventative maintenance than represented or contemplated. Defendant's omissions and misrepresentations also diminished the value

and durability of class vehicles while also increasing the cost of ownership that was not disclosed to or anticipated by consumers at the time of purchase.

216. The defendant repeatedly violated ch. 93A on multiple occasions with its continuous course of conduct as described in this complaint and violated § 5 of the Federal Trade Commission Act of 1914, 38 Stat. 719, *codified at* 15 U.S.C. §§ 41-58 *as amended* together with violations of other statutes and regulations set out in this complaint. The wrongful conduct of the defendant violating ch. 93A occurred within the limitations period set out in the respective statutes and/or the limitations period is tolled by the defendant's conduct.

217. As a proximate and direct result of the defendant's unfair and deceptive business trade practices, the proposed class representatives and proposed class members purchased class vehicles and sustained an ascertainable loss including but not limited to financial harm as described in this complaint.

218. The proposed Massachusetts class representatives and proposed class members sustained a foreseeable economic loss directly caused the conduct of the defendant as described in this complaint. The conduct of the defendant offends public policy as established by statutes and common law and is unfair, deceptive, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class vehicles owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

219. On October 5, 2017, a demand letter was sent on behalf of plaintiff Gorey and the proposed Massachusetts subclass pursuant to Mass. Gen. L. ch. 93A, § 9, to defendant BMW LLC via certified mail, return receipt requested. BMW LLC received the ch. 93A, § 9 demand letter on October 9, 2017. Defendant BMW LLC failed to issue a reasonable settlement of the claims set out in the ch. 93A demand letters within the applicable time period or thereafter.

220. Wherefore, the proposed class representatives and proposed class members demand judgment against the defendant including multiple monetary damages, interest, costs and attorney's fees.

## COUNT VII
## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
### TEX. BUS. & COMM. CODE §§ 17.41 *ET SEQ.*
(On Behalf of Plaintiffs Ward, Cerny and the Texas Subclass)

221.    Plaintiffs Ward and Cerny on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs.

222.    Plaintiffs Ward and Cerny assert this claim individually and on behalf of the Texas subclass.

223.    Plaintiffs Ward and Cerny are consumers as defined in the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Comm. Code §§ 17.41 *et seq.*

224.    The defendant can be sued under the DTPA, because the DTPA allows a plaintiff to bring a cause of action against any person who uses or employs false, misleading, or deceptive acts or practices. *See* Tex. Bus. & Com. Code § 17.50(a)(1). Corporations are defined to be included as persons. *See* Tex. Bus. & Com. Code § 17.45(3). The defendant's conduct trade and commerce in Texas.

225.    The wrongful conduct of the defendant, as described in this complaint, constitutes one or more violations of the Texas DTPA, including but not limited to the following:

(a) False, misleading, unfair and/or deceptive acts or practices including, but not limited to, representing that class vehicles equipped with class engines are superior quality and had characteristics and/or benefits that it did not have; representing that the class vehicles were of a particular standard or quality that it was not; and/or failing to disclose known information about the class vehicles, including manufacturing and design defects regarding the primary and secondary chain assemblies, in order to induce consumers, such as Ward and Cerny into a transaction that they would not have entered into had the information been disclosed;

(b) Breach of an express and/or implied warranty; and

(c) Unconscionable acts or practices involving the design, manufacture, testing, marketing, promotion, distribution, and sale of the class vehicles.

226.    Plaintiffs Ward and Cerny and other members of the Texas subclass relied on the defendant's false, misleading and/or deceptive acts and practices to their detriment.

227.    The defendant acted unconscionably in failing to provide the proper course of action to remedy the defective class vehicles. *See* Tex. Bus. & Com. Code §17.50(a)(3).

228. Plaintiffs Ward and Cerny notified BMW giving defendant a reasonable opportunity to correct the defect. Although BMW ultimately replaced the defective parts Cerny was charged several thousand dollars to correct the defect.

229.    The defendant's acts and/or omissions in violation of the Texas DTPA were a producing cause of plaintiffs Ward and Cerny's injuries, including economic damages.

230.    The defendant's wrongful conduct was committed knowingly and/or intentionally making the defendant liable for treble damages under the Texas DTPA.  Plaintiffs Ward and Cerny, therefore, are entitled to and will seek threefold the economic damages sustained, plus reasonable and necessary attorneys' fees, and costs of court, in accordance with Tex. Bus. & Com. Code §17.50.

## COUNT VIII
### VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*
(On Behalf of Plaintiff Meza and the California Subclass)

231. Plaintiff Meza on behalf of herself and the California subclass incorporate by reference the allegations contained in the preceding paragraphs.

232. Cal. Bus. & Prof. Code §17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

233. Defendant engaged in unfair, unlawful, and fraudulent business acts or practices as described in this complaint.

234. Meza brings this cause of action on behalf of herself and the California subclass, pursuant to Cal. Bus. & Prof. Code, §§ 17200 *et seq.*

235. Meza and California subclass members are reasonable consumers who do not expect their class vehicles to experience the defect, who do not expect their class engine primary and secondary chains to fail before the end of the expected useful life of the class vehicles and who do not expect their engines to fail prematurely.

236. These are reasonable and objective consumer expectations relating to the class vehicles.

237. Defendant knew and has known that class engines have chain assembly defects were defectively designed or manufactured, would experience premature failure and were not suitable for their intended use.

238. In failing to disclose known class engine defects, defendant knowingly and intentionally concealed material facts.

239. Defendant had a duty to Meza and California subclass members to disclose the defective nature of the class vehicles because defendant was in a superior position to know the true facts about the defects in the class vehicles. Defendant made partial disclosures about class vehicles without revealing their defective nature.

240. The facts concealed and not disclosed by defendant to Meza and California subclass members are material in that a reasonable person would have considered them to be important in deciding whether to purchase a class vehicle. Had Meza and California subclass members known that the class vehicle had substantial engine defects, Meza and California subclass members would not have purchased their respective class vehicles or would have done so for lesser amounts.

241. Defendant continued to conceal the defective nature of class vehicles even after class members reported problems. Defendant continued to cover up and conceal the true nature of the engine

defect, did not disclose to consumers that the defect exists and did not reimburse consumers for costs incurred in connection with the defect.

242. Defendant's conduct constitutes unfair business acts and/or practices because its practices have caused and are likely to cause substantial injury to Meza and California subclass members. These financial injuries were not reasonably avoidable by Meza and California subclass members in light of the defendant's exclusive knowledge of the primary and secondary chain assembly defects, and are not outweighed by the acts' and practices' benefits, if any, to Meza and California subclass members. Defendant's conduct is ongoing and continues to this date.

243. The unfair or deceptive practices occurred repeatedly in defendant's trade or business, and this conduct is capable of deceiving a substantial portion of the purchasing public.

244. The injury to consumers is substantial, particularly because the class vehicles are defective at the time of sale and continue to be defective. Meza and California subclass members paid thousands of dollars extra for class vehicles that they would not otherwise have spent for class vehicles that have the defect. The class vehicles are worth substantially less than Meza and California subclass members paid given the primary and secondary chain assembly defects.

245. The injury to consumers is not outweighed by any countervailing benefits to consumers or business competition. Any purported benefits to consumers from the design of the vehicles are negated by the defects and the subsequent catastrophic engine failure that occur.

246. The injury to consumers is not an injury that consumers themselves could reasonably have avoided because consumers did not know of primary and secondary chain assembly defects before they bought or leased their class vehicles.

247. Defendant's acts and practices of selling and leasing class vehicles with primary and secondary chain assembly defects offends an established public policy and are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

72

248. It is unethical and oppressive to charge a premium price for a product that fails of its essential purpose. Defendant's actual knowledge of the existence of primary and secondary chain assembly defects renders defendant's conduct particularly deceptive, immoral, unethical, oppressive and unscrupulous.

249. Defendant's conduct also offends established public policies concerning consumer protection and class action litigation. California also has established a public policy against allowing manufacturers to escape liability for placing defective consumer products in the stream of commerce by imposing liability on manufacturers, and subjecting manufacturers to penalties, under the implied warranty of merchantability by operation of law under the Song-Beverly Act, Cal. Civ. Code §§ 1790 *et seq.*

250. Defendant's acts, practices and/or omissions threaten an incipient violation of antitrust laws and/or consumer protection statutes, or violate the policy and spirit of one of those laws because the effect of the acts and practices are comparable to or the same as a violation of the law or otherwise significantly threaten or harm competition. Defendant's acts and practices harm competition by luring consumers to buy its class vehicles, instead of the vehicles manufactured and sold by defendant's competitors. The free market requires the free flow of information to run effectively. Defendant's failure to disclose the material fact that the primary and secondary chain assemblies are defective and cause engine failure, impedes the free market.

251. Defendant wrongfully gained money by making the sale or lease of class vehicles to Californians, such as Meza, which wrongful gain should be restored to Californians that purchased or leased class vehicles.

252. Defendant's acts and practices are unlawful because they violate the Song-Beverly Act, Civil Code §§ 1790 *et seq.*, the Consumer Legal Remedies Act, Civil Code §§ 1750 *et seq.*, Bus. & Prof. Code § 17500, the California Commercial Code and the Magnuson-Moss Warranty Act.

(a)     Defendant violated Cal. Bus. & Prof. Code §§ 17500 *et seq.* as alleged throughout this complaint and incorporated hereto by reference.

(b)     Defendant violated the CLRA, Cal. Civ. §§ 1750 *et seq.*, as alleged throughout this complaint and incorporated by reference hereto.

(c)     Defendant violated Cal. Civ. Code §§ 1790 *et seq.*, the California Commercial Code, and the Magnuson-Moss Warranty Act as alleged throughout this complaint.

253. Defendant's acts and practices are fraudulent in that they have deceived and/or are "likely to deceive" Meza and members of the California consuming public. Defendant sold or leased Meza and California subclass members class vehicles with primary and secondary chain assembly defects that rendered the vehicles unsafe and unusable for the purposes for which they were purchased or leased.

254. Meza and California subclass members relied on defendant's unfair, unlawful, and fraudulent business acts and practices to their detriment in that they would not have purchased or leased the class vehicles had defendant disclosed that the primary and secondary chain assemblies were defective and the engines would fail and for which performance defendant demanded and received a premium price. Meza relied on defendant's omissions and would not have purchased his class vehicle had defendant disclosed the chain assembly defects.

255. Defendant's unfair, unlawful, and fraudulent business acts and practices directly and proximately caused Meza's and California subclass members' injuries in that but for defendant's failure to disclose that the class vehicles had a primary and secondary chain assembly defects, Meza and California subclass members would have paid less for the class vehicles, would have bought or leased other less-expensive styles or brands of vehicle, or would not have purchased or leased the class vehicles.

256. Defendant had a duty to disclose material facts concerning class engines because: a) Defendant had exclusive superior knowledge of material facts not known to Meza and California subclass members since only defendant had access to aggregate data from its retail dealers, research and

test data, and complaints from class vehicle owners, including, but not limited to, that information obtained and/or recorded in warranty and customer service database(s); b) Defendant actively concealed and suppressed the material facts from Meza and California subclass members by not informing of the defect at the time of purchase; (c) defendant made incomplete representations about class vehicle performance while withholding material facts that these vehicles have primary and secondary chain assembly defects that cause catastrophic engine failure and prevents class vehicles from functioning properly and as represented; and, (d) The chain assembly defects pose a serious safety risk while the vehicle is being operated since there is a sudden loss of engine power and a loss of the ability to accelerate or steer which could result in loss of control or a serious accident.

257. Meza and California subclass members discovered the chain assembly defects when their respective class engines failed.

258. Meza and California subclass members suffered injury in fact and lost money as a direct and proximate result of defendant's unfair competition in that class vehicle purchasers overpaid for class vehicles and/or because class vehicles are worth less than the purchase price.

259.    Defendant was unjustly enriched and should be required to make restitution to Meza and California subclass class members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

260. Meza and California subclass members seek an order of this Court awarding restitution, injunctive relief and all other relief allowed under Cal. Bus. & Prof. Code §§ 17200 *et seq.*, plus interest, attorneys' fees, and costs.

**COUNT IX**
**VIOLATION OF CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.***
(On Behalf of Plaintiff Meza and the California Subclass)

261. Plaintiff Meza on behalf of herself and all others similarly situated repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

262. Meza brings this cause of action on behalf of herself and the California subclass pursuant to Cal. Bus. & Prof. Code, §§ 17500 *et seq.*

263. The defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17506.

264. The defendant falsely advertised the class vehicles by making partial representations about class vehicle performance, while omitting the material information about the primary and secondary chain assembly defects.

265. The defendant's false advertising through omission of material fact deceived and is "likely to deceive" Meza and California subclass members.

266. Meza and California subclass members relied upon defendant's false advertising to their detriment in that they would not have purchased class vehicles had the defendant disclosed that the primary and secondary chain assemblies were defective and would prematurely fail leading to catastrophic engine destruction.

267. Defendant's false advertising directly and proximately caused injuries to Meza and the California subclass members in that but for defendant's failure to disclose that class vehicles had primary and secondary chain assembly defects Meza and California subclass members would not have overpaid for the class vehicles, would have bought other less-expensive styles or brands of vehicles, or would not have bought the class vehicles at all.

268. Meza and California subclass members have suffered injury in fact and have lost money as a result of defendant's false advertising in that they have overpaid for the class vehicles, have experienced engine failure or loss of steering and other hazards while driving, and/or by that fact that their class vehicles are worth less than they paid for them because of the primary and secondary chain assembly defects.

269. Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, plaintiff seeks an order: 1) requiring defendant to immediately cease the unlawful, unfair, and or fraudulent business acts and/or

practices and false and misleading advertising described in this complaint; 2) Enjoining defendant from continuing to falsely advertise class vehicles; and, 3) Requiring defendant to repair or replace defective class engines or provide full restitution to Meza and California subclass members of their full retail purchase price, plus interest and attorneys' fees.

**COUNT X**
**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**CAL. CIV. CODE §§ 1750 *ET SEQ.***
(On Behalf of Plaintiff Meza and the California Subclass)

270. Plaintiff Meza on behalf of herself and the California subclass incorporate by reference the allegations contained in the preceding paragraphs.

271. Meza seeks to enjoin defendant's violation of the California Consumers Legal Remedies Act ("CLRA") and Cal. Civ. Code §§ 1750 *et seq.*, as well as damages resulting from defendant's violations of the CLRA.

272. At all times relevant hereto, the class vehicles constituted "goods" as that term is defined in Cal. Civ. Code §1761(a).

273. At all times relevant hereto, defendant constituted a "person" or "persons" as that term is defined in Cal. Civ. Code §1761(c).

274. At all times relevant hereto Meza and members of the California subclass are "consumers" or "persons" as defined by Cal. Civ. Code § 1761(d).

275. At all times relevant hereto, Meza's and California subclass members' purchases of class vehicles and replacement parts constituted "transactions" as that term is defined in Cal. Civ. Code §1761(e).

276. At all times relevant hereto, defendant provided "services" to Meza and members of the California subclass within the meaning of Cal. Civ. Code §1761(b).

77

277. The CLRA provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:(4) Using deceptive representations . . . in connection with good or services (5) Representing that goods . . . have . . . characteristics, uses, benefits . . . which they do not have; ... (7) Representing that goods ... are of a particular standard, quality or grade . . . if they are of another; ... and (9) Advertising goods ... with intent not to sell them as advertised." Cal. Civ. Code § 1770(a).

278. Defendant violated Cal. Civ. Code § 1770(a)(4), (5), (7), and (9) by representing that class vehicles were not defective when, in fact, class vehicles have primary and secondary chain assembly defects that cause engine failure. The information defendant concealed and/or did not disclose to Meza and members of the California subclass is material in that reasonable consumers expect vehicles, for which they paid a premium price, to function properly, and thus would have considered the omitted facts important in deciding whether to purchase or lease, or whether to pay the stated price for the class vehicles.

279. Defendant's unfair and deceptive acts or practices occurred repeatedly in defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

280. Defendant knew that the class vehicles suffered from an inherent engine defect, were defectively designed and/or manufactured, would fail prematurely and were not suitable for their intended use.

281. Defendant owed a duty to Meza and members of the California subclass to disclose the defective nature of class vehicles, as well as the associated costs that would have to frequently be expected in order to repair the class vehicles or replace class engines due to the chain defects because, defendant had exclusive knowledge of material facts not known to Meza and members of the California

subclass, since only defendant had access to aggregate data from its retail dealers, research and test data, and complaints from class vehicle owners, including, but not limited to, that information obtained and/or recorded in warranty and customer service database(s).

282. Defendant was in a superior position to know the true facts about class engine defects including associated safety ramifications related to the defects. Meza and members of the California subclass could not reasonably have been expected to learn or discover that the class vehicles had a dangerous safety defect until their chain assemblies failed. The defendant knew that Meza and members of the California subclass could not reasonably have been expected to learn or discover class vehicle safety defects.

283. In failing to disclose the defective nature of the class vehicles, defendant knowingly and intentionally concealed material facts and breached its duty owed to prospective class vehicle purchasers. Defendant actively concealed and suppressed the material facts from Meza and members of the California subclass by not warning of the primary and secondary chain assembly defects at the time of purchases and/or by failing to advise Meza and members of the California subclass to have their respective vehicles serviced to avoid catastrophic engine failure.

284. Class engine chain assembly defects are a serious safety risk while the vehicle is being operated since there is a sudden loss of engine power and a loss of the ability to accelerate or steer, which could result in loss of control or an accident.

285. Meza and members of the California subclass would have behaved differently by not buying the class vehicles, not paying for repairs, and/or paying less for the vehicles, had they been aware of the primary and secondary chain assembly defects.

286. The omissions of material facts are contrary to representations actually made by defendant, including but not limited to, the claim that BMW vehicles are "the ultimate driving machine."

287. Meza and members of the California subclass justifiably acted or relied to their detriment upon the concealment and/or non-disclosure of material facts as evidenced by their purchases of defective class vehicles. Had defendant disclosed the material fact that the class vehicles had primary and secondary chain assembly defects, Meza and members of the California subclass would have behaved differently by not buying the class vehicles or paying substantially less for them.

288. Defendant's omissions of material facts directly and proximately caused Meza's and members of the California subclass's injuries in that Meza and members of the California subclass would not have paid the extra premium for class vehicles or would not have bought the class vehicles had defendant disclosed that primary and secondary chain assemblies in class engines were defective. As such, Meza and members of the California subclass did not receive the benefit of the bargain.

289. Plaintiff Meza and the California subclass members did not know of the class engine defect and defendant's refusal to cover the cost of repair until the chain assemblies required repair. In the case of plaintiff Meza that occurred in December 2018.

290. As a direct and proximate result of defendant's unfair and deceptive acts or practices, plaintiff Meza and members of the California subclass have been harmed and have suffered actual damages in that class vehicles are experiencing premature failure of engine chain assemblies causing inconvenience, creating a serious safety hazard, and causing Meza and members of the California subclass to spend money.

291. As a direct and proximate result of defendant's unfair or deceptive acts or practices, Meza and members of the California subclass have suffered and will continue to suffer actual damages.

292. Cal. Civ. Code § 1780 (a)(1) and (2) permits any court of competent jurisdiction to enjoin practices that violate Cal. Civ. Code § 1770 and award damages and restitution.

293. Plaintiff Meza seeks equitable relief and monetary damages pursuant to the CLRA.

294. The prior California named plaintiff has complied with Cal. Civil Code § 1782(a) by sending a CLRA letter to BMW LLC on February 26, 2018 *via* certified mail, return receipt requested, that enumerated the violations of Cal. Civil Code § 1770.  Defendant refused to provide the remedies sought in that plaintiff's pre-suit letter within thirty (30) days of receipt. Any further request for a remedy by the substitute California plaintiff would be futile.

295. Plaintiff Meza and the members of the California subclass are entitled to attorneys' fees pursuant to Cal. Civil Code § 1870(e) and to the other relief provided for by Cal. Civil Code § 1780(a).

**COUNT XI**
**BREACH OF WARRANTY OF MERCHANTABILITY UNDER THE SONG-BEVERLY ACT**
**CAL. CIV. CODE §§ 1790 *ET SEQ***
(On Behalf of Plaintiff Meza and the California Subclass)

296. Plaintiff Meza on behalf of herself and all others similarly situated alleges and incorporates the above allegations by reference as if fully set forth herein.

297. Under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 *et seq.*, every sale of consumer goods is accompanied by both a "manufacturer's and retailer's" implied warranty that the goods are merchantable within the meaning of Cal. Civ. Code § 1791.1(a).  Therefore, consumers need not be in privity with the manufacturer to bring an implied warranty claim.

298. Pursuant to Cal. Civ. Code § 1793, the defendant's attempt to modify the length of the implied warranty of merchantability is void.

299. The class vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

300. The defendant is a "manufacturer" within the meaning of Cal. Civ. Code §§ 1791(j).

301. Meza and members of the California subclass bought the class vehicles at retail in the State of California.

302. At the time of sale, and currently, defendant is in the business of manufacturing, marketing, and selling passenger motor vehicles.

303. By operation of law, defendant impliedly warranted to Meza and members of the California subclass that class vehicles, for which Meza and California subclass members paid a premium price, were of merchantable quality and fit for the ordinary purposes for which they are used.

304. Defendant knowingly and/or recklessly sold a defective product without conspicuously informing consumers about the defective primary and secondary chain assemblies in class engines.

305. Class vehicles have an expected useful life of at least 150,000 miles. The primary and secondary chain assembly defects cause class engines to prematurely malfunction and result in many instances in catastrophic engine failure. As a result, the engines in class vehicles are substantially certain to fail within their useful life.

306. Defendant breached the implied warranty at the time of sale by selling class vehicles with engines having primary and secondary chain assembly defects.

307. Meza's and members of the California subclass' vehicles do not pass without objection in the trade as they are sold as a premium product, but fail to drive for their expected useful life without major engine malfunctions.

308. Meza's and members of the California subclass' class vehicles are unfit for their ordinary purpose.

309. Meza complied with his obligations under the class vehicle's written warranty. Defendant had a reasonable opportunity to cure the breaches of its warranties but failed to do so.

310. Pursuant to Cal. Civ. Code § 1793.2, BMW LLC had 30 days within which to conform Meza's and members of the California subclass's vehicles to the express warranties. However, BMW LLC failed to do so and no conditions beyond its control prevented its compliance.

311. Defendant knew of its warranty obligations to repair or replace class vehicle engine components with respect to the defective primary and secondary chain assemblies because these components do not conform to class vehicle express or implied warranties. However, the defendant

willfully refused to repair defective class engines or replace class vehicles. Therefore, the defendant is liable for damages, as well as civil penalties pursuant to Cal. Civ. Code § 1794.

312. Plaintiff Meza and the California subclass members did not know of the defect and defendant's refusal to cover the cost of repair until the chain assemblies required repair and the defendant refused coverage of the repair. In the case of plaintiff Meza, that occurred in December 2018.

313. Meza's and members of the California subclass' class vehicles were not adequately labeled because the primary and secondary chain assemblies were defective and the class vehicles could not perform properly.

314. Meza's and members of the California subclass' class vehicles do not conform to the promises or affirmations of fact made.

315. Meza and members of the California subclass were the intended third-party beneficiaries of contracts for sale of the class vehicles from BMW LLC to the dealers or third-party retail car dealers who ultimately sold the class vehicles to Meza and members of the California subclass across California.

316. Defendant knew and intended that Meza and members of the California subclass were the ultimate beneficiaries of defendant's implied warranties.

317. Meza and members of the California subclass purchased the class vehicles from independent retail car dealers or authorized BMW dealers who are agents of BMW LLC.

318. BMW LLC knew and intended that its authorized dealers or independent retail car dealers were not the ultimate consumers of the defective class vehicles because the warranty agreements were designed for and were intended to benefit the end use consumers.

319. As a direct and proximate result of the defendant's breaches of the implied and express warranties, Meza and members of the California subclass have sustained damages and other losses in an amount to be determined at trial. Plaintiff Meza and California subclass members are entitled to recover

damages and attorneys' fees as provided by statute, as well as costs, and other relief the Court deems appropriate.

**COUNT XII**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
(On Behalf of Plaintiffs Guy, the Heymans, Zinn and the New York Subclass)

320. Plaintiffs Guy, the Heymans, and Zinn on behalf of themselves and all others similarly situated, allege and incorporate the above allegations by reference as if fully set forth herein.

321. With respect to Guy, the Heymans, Zinn and members of the New York subclass, defendant's conduct as alleged herein constitutes deceptive acts and practices in the conduct of a business, trade, or commerce or in the furnishing of a service in the State of New York in violation of N.Y. Gen. Bus. Law §§ 349 *et seq*.

322. Defendant's conduct as described in this complaint was directed at consumers such as Guy, the Heymans Zinn and members of the New York subclass, was consumer-oriented misconduct that was misleading in material respects to a reasonable consumer acting reasonably under the circumstances and had a broad impact on consumers at large.

323. As a direct and proximate result of defendant's conduct, consumers such as Guy, the Heymans Zinn and members of the New York subclass suffered an injury and actual damages, including economic and financial losses. In particular, as a result of defendant's deceptive acts, Guy, the Heymans Zinn and members of the New York subclass purchased class vehicles which have an undisclosed defective primary and secondary chain assembly that causes premature performance degradation and, in many instances, catastrophic engine failure. Had defendant disclosed known defects in class vehicles, Guy, the Heymans Zinn and members of the New York subclass would have behaved differently, by either paying less for the class vehicles or by not purchasing or leasing a class vehicle from the defendant. Defendant's deceptive acts and practices as described in this complaint were willful and knowing.

324. Guy, the Heymans and members of the New York subclass suffered damages in the form of class engine repair and replacement costs.  Guy, the Heymans and Zinn and the New York subclass also suffered damages because they paid a price premium for class vehicles that were sold without the defendant disclosing there were major internal engine defects that would cause premature engine failure. As such, Guy, the Heymans, Zinn and members of the New York subclass would not have purchased their respective class vehicles or would have done so at a lesser price.  Guy, the Heymans, Zinn and members of the New York subclass are entitled to their actual damages and/or statutory damages and/or injunctive relief.  Guy, the Heymans and members of the New York subclass are also entitled to an award of actual damages that may be trebled within at court discretion.

325. Pursuant to N.Y. Gen. Bus. Law § 349(h), Guy, the Heymans, Zinn and members of the New York subclass will request reasonable attorneys' fees from the court.

**COUNT XIII**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA") FLA. STAT. §§ 501.201 *ET SEQ.***
(On Behalf of Plaintiff McDonald and the Florida Subclass)

326. Plaintiff McDonald incorporates and realleges each preceding paragraph as though fully set forth herein.

327. Plaintiff McDonald brings this claim on behalf of himself and members of the Florida subclass.

328. The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices" and "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

329. McDonald and members of the Florida subclass are "consumers" and "interested parties or persons" under the FDUTPA.  Fla. Stat. § 501.203(6) and (7).

330. Defendant is engaged in the conduct of "trade or commerce" as defined by the FDUTPA. Fla. Stat. § 501.203(8).

331. One of the primary purposes of the FDUTPA is to "protect the consuming public" from "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

332. Defendant committed unfair or deceptive acts or practices, affirmative misrepresentations, material omissions and/or otherwise violated the FDUTPA. Defendant intentionally and knowingly misrepresented the standard, quality or grade of the class vehicles and intentionally and knowingly failed to disclose and concealed class engine primary and secondary chain assembly defects. Defendant's misrepresentations of the standard, quality or grade of class vehicles and failure to disclose the chain assembly defects constitute unfair acts or practices in violation of the FDUTPA because these acts offend public policy, are immoral, unethical, oppressive, or unscrupulous and/or cause substantial injury to consumers.

333. Defendant knew or should have known that the class vehicles were defective at the time of sale or lease and that the class engine chain assemblies would fail before the useful life of the engine. Given the latent nature of the defect, defendant knew, or should have known, that the majority of chain assembly failures would occur outside of the coverage periods of the manufacturer's warranties.

334. Defendant knew, or should have known, that the chain assembly defects in the class vehicles could cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating. Further, defendant knew, or should have known, that such loss of power could cause the class vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

335. Defendant owed a duty to disclose chain assembly defects and its corresponding safety risk to McDonald and members of the Florida subclass because the defendant possessed superior and exclusive knowledge regarding the defects and the risks associated with the chain assembly failure. Rather than disclose the defect, defendant engaged in deceptive trade practices in order to sell additional

class vehicles and wrongfully transfer the cost of repair or replacement of engine chain assemblies to McDonald and members of the Florida subclass.

336. Defendant has knowingly and willfully engaged in unfair and deceptive trade practices. Further, defendant unconscionably marketed class vehicles to uninformed consumers in order to maximize profits by selling additional class vehicles containing the undisclosed latent defect and corresponding safety risk.

337. Defendant's unfair or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the chain assembly defects were likely to mislead a reasonable consumer and misled McDonald and members of the Florida subclass. When McDonald and members of the Florida subclass purchased or leased their class vehicles, they reasonably relied on the reasonable expectation that the class vehicles' engine chain assemblies would last beyond the warranty periods without need for repair or replacement and would not pose an unavoidable safety risk.

338. Had defendant disclosed that class engine chain assemblies were prone to premature failure and/or an unavoidable safety risk, McDonald and members of the Florida subclass would not have purchased or leased the class vehicles, or would have paid less for their respective vehicles. Further, had defendant disclosed that the chain assemblies in class engines would not last beyond the warranty periods without need for repair or replacement, McDonald and members of the Florida subclass would have demanded repair or replacement during the warranty periods at no cost—as provided for in defendant's warranties.

339. Defendant's unfair and/or deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the chain assembly defects and corresponding safety risk are substantially injurious to consumers. As a direct and proximate result of defendant's knowing, intentional concealment of the chain assembly defects in violation of the FDUTPA, McDonald and members of the Florida subclass have suffered harm and/or continue to suffer harm by the threat of sudden and

unexpected failure of class engine chain assemblies and/or actual damages in the amount of the cost to replace the chain assemblies, essential engine parts or the entire engine, and damages to be determined at trial. McDonald and members of the Florida subclass have also suffered the ascertainable loss of the diminished value of their vehicles.

340. As a result of defendant's FDUTPA violation, McDonald and members of the Florida subclass are entitled to, inter alia, injunctive and declaratory relief, actual damages, costs and attorneys' fees. *See* Fla. Stat. § 501.211.

**COUNT XIV**
**VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**ALA. CODE §§ 8-19-1 *ET SEQ.***
(On Behalf of Plaintiff Stovall and the Alabama Subclass)

341. Plaintiff Stovall incorporates and realleges each preceding paragraph as though fully set forth herein.

342. Stovall brings this claim on behalf of himself and the members of the Alabama subclass.

343. Stovall sent a pre-suit notice pursuant to Ala. Code § 8-19-10(e) on February 26, 2018.

344. Defendant operating in Alabama engaged in deceptive acts and practices in the conduct of trade or commerce in violation of the Alabama Deceptive Trade Practices Act, which prohibits "(5) [r]epresenting that goods . . . have . . . characteristics . . . or qualities that they do not have," "(7) [r]epresenting that goods . . . are of a particular standard, quality, or grade . . . " and "(27) [e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce," Ala. Code § 8-19-5, including but not limited to the following:

(a) Defendant actively and knowingly misrepresented to Stovall and members of the Alabama subclass at the time of purchase or lease that their class vehicles' class engine primary and secondary chain assemblies did not contain a material defect, were of good quality, in good working order, not defective and otherwise merchantable;

88

(b) Defendant concealed, suppressed, omitted and failed to disclose or give consumers who purchased or leased class vehicles adequate warnings and notices regarding the material defects and problems with the engine chain assemblies despite possessing prior knowledge of the inherent defects to with those components;

(c) Defendant concealed, suppressed, omitted and failed to disclose to Stovall and members of the Alabama subclass, either through warnings or recall notices, and/or actively concealed the fact from them the true quality and value of class vehicles, and that the engine chain assemblies contained in class engine were materially defective and prone to premature failure despite having learned of the defects as early as 2008.

345. Defendant's unfair, unconscionable, and deceptive practices, misrepresentations, suppressions, and material omissions were immoral, unethical, oppressive, unscrupulous, intentional and knowing, and were intended to, and in fact did, deceive and induce reasonable consumers into the purchase or lease of class vehicles in reliance upon defendant's material omissions and/or misrepresentations. These acts caused substantial injury to Stovall and members of the Alabama subclass that they could not reasonably avoid. These substantial injuries outweigh any benefits to consumers or to competition.

346. Stovall and members of the Alabama subclass suffered ascertainable loss caused by defendant's misrepresentations and its concealment of and failure to disclose material facts regarding the defective chain assemblies contained in class vehicles.  As a direct and proximate result of defendant's unlawful practices, Stovall and members of the Alabama subclass suffered injury and/or damages, including the expenditure of monies on their class vehicle purchase or lease, which they would not have otherwise made, and expenditure of monies on the repair and/or replacement of the engine or chain assemblies.

347. In addition to direct monetary losses, Stovall and members of the Alabama subclass suffered an ascertainable loss of money and/or property by receiving less than what was promised for their purchase and/or sale price expenditures.  Specifically, Stovall and members of the Alabama subclass paid for a vehicle that is now worth significantly less because of the existence of the defective engine chain assemblies and the damage it causes to class engines.

348. Defendant caused Stovall and members of the Alabama subclass to expend sums of money at its dealerships and elsewhere to purchase defective class vehicles, and to repair and/or replace engines and chain assembly components despite the fact that defendant had prior knowledge of the defects at the time when class vehicles were initially placed into the stream of commerce.

349. Pursuant to Ala. Code § 8-19-10, Stovall and members of the Alabama subclass seek monetary relief against defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100.00 for each member of the Alabama subclass.

350. Stovall and members of the Alabama subclass also seek an order enjoining defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 *et seq.*

**COUNT XV**
**VIOLATION OF THE UTAH CONSUMER SALES PRACTICES ACT**
**UTAH CODE §§ 13-11-1 *ET SEQ.***
(On Behalf of Plaintiff Olson and the Utah Subclass)

351. Plaintiff Olson incorporates and realleges each preceding paragraph as though fully set forth herein.

352. Olson brings this claim on behalf of himself and the members of the Utah subclass.

353. The actions described in this complaint are "consumer transactions" within the meaning of Utah Code § 13-11-1(2).

354. Defendant is a "supplier" within the meaning of Utah Code § 13-11-1(6).

355. Defendant operating in Utah engaged in deceptive trade practices in connection with consumer transactions, including by employing unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing class vehicles that contain class engine defects described in this complaint and present an undisclosed safety risk to drivers and occupants of the class vehicles. Further, defendant misrepresented the standard, quality or grade of the class vehicles that were sold or leased with the latent known defects and/or failed to disclose class engine defects described in this complaint and corresponding safety risk in violation of Utah Code § 13-11-4. Defendant fraudulently, intentionally, negligently, and/or recklessly misrepresented to Olson and members of the Utah subclass the required maintenance and/or maintenance intervals of class vehicle engines, including but not limited to the primary and secondary chain assemblies.

356. As a direct and proximate result of defendant's practices, Olson and members of the Utah subclass suffered injury and/or damages.

357. The defendant's conduct was deceptive, immoral, unethical, oppressive and unscrupulous. These acts caused substantial injury to Olson and members of the Utah subclass that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

358. The above acts were also unconscionable acts or practices by a supplier in violation of Utah Code § 13-11-5.

359. Defendant knew, or should have known, that the primary and secondary chain assembly defects in class vehicles would cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating on public roads.  Further, defendant knew, or should have known, that such loss of power would cause class vehicles to become involved in rear-end collisions or other accidents,

putting vehicle operators, passengers, and other motorists at risk for injury. The defendant actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals. Although the defendant knew defects in class engines and misinformation in the owner's manual and Service and Warranty Information pamphlet were causing premature class engine failures, the defendant denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners. In certain instances, the defendant secretly repaired some class engine to prevent dissemination of knowledge concerning class engine defects. Accordingly, defendant's actions in engaging in the above-described unfair practices and deceptive acts were negligent, knowing, willful and/or wanton and reckless.

360. Olson and members of the Utah subclass seek all available relief under Utah Code §§ 13-11-1 *et seq.*, including, but not limited to, actual damages, civil penalties, injunctive relief, and attorneys' fees and costs.

**COUNT XVI**
**VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT AND THE**
**OKLAHOMA DECEPTIVE TRADE PRACTICES ACT**
**OKLA. STAT. TIT. 15, §§ 751 *ET SEQ.* and OKLA. STAT TIT, 78 §§ 51, *ET SEQ.***
(On Behalf of Plaintiff Martinez and the Oklahoma Subclass)

361. Plaintiff Martinez incorporates and realleges each preceding paragraph as though fully set forth herein.

362. Martinez asserts this count on behalf of himself and members of the Oklahoma subclass.

363. Martinez and members of the Oklahoma subclass are persons within the context of the Oklahoma Consumer Protection Act (hereinafter "OCPA"), Okla. Stat. tit. 15, § 752 and the Oklahoma Deceptive Trade Practices Act (hereinafter "ODTPA"), Okla. Stat. tit. 78 § 52.

364. Defendant is a person within the context of the OCPA, Okla. Stat. tit. 15, § 752 and ODTPA, Okla. Stat. tit. 78 § 52.

365. Defendant engaged in deceptive and unfair trade practices within the context of the OCPA, Okla. Stat. tit. 15, §§ 751-763 and ODTPA, Okla. Stat. tit. 78, §53.

366. Martinez and members of the Oklahoma subclass purchased and/or leased class vehicles for personal, household or business use.

367. Defendant committed unconscionable, deceptive and unfair trade practices in the course of trade and commerce within the context of the OCPA as described in this complaint.

368. Defendant committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning class engine chain assemblies to the detriment of consumers and with intent that Martinez and members of the Oklahoma subclass would rely upon its misrepresentations in connection with the sale and/or advertisement of class vehicles.

369. Defendant fraudulently, intentionally, negligently, and/or recklessly misrepresented to Martinez and members of the Oklahoma subclass the required maintenance and/or maintenance intervals of class vehicle engines, including but not limited to the primary and secondary chain assemblies.

370. Defendant fraudulently, intentionally, negligently and/or recklessly misrepresented to Martinez and members of the Oklahoma subclass the characteristics of class vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs. Defendant extensively advertised that class vehicles were superior in construction and extolled the quality, standard, and virtues of class vehicles, including superior materials, workmanship, manufacture, safety, durability, reliability and performance, and also advertised the class engine as having an engine life up to at least

93

150,000 miles.  In fact, engines in class vehicles contained a known defect as described in this complaint that caused class engine primary and secondary chain assemblies to prematurely fail.

371. Defendant actively suppressed the fact that class engine chain assemblies and engines in class vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

372. Although defendant knew defects in chain assemblies and misinformation in the owner's manual and Service and Warranty Information pamphlet were causing premature class engine failures, defendant denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

373. Defendant's deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances.  Martinez and members of the Oklahoma subclass were caused to expend sums of money in purchasing and later repairing their defective class vehicles.  As reasonable consumers, Martinez and members of the Oklahoma subclass had no reasonable way to know that class vehicles contained chain assemblies that were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have and could be expected to rely on the representations of defendant who alone possessed the knowledge as to the quality, standard, and characteristics of the class vehicles, including the class engine and primary and secondary chain assembly durability.

374. If defendant had not concealed class engine defects from Martinez and members of the Oklahoma subclass within the express warranty period, class engine chain assemblies would have been repaired without cost to purchasers as promised under the original warranty.

375. Defendant fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components including primary and secondary chain assemblies.

376. Defendant violated the OCPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

377. Defendant violated the OCPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class vehicles contained defects and would require regular replacement of expensive internal engine components such as the chain assemblies.

378. Defendant further violated the OCPA by failing to inform prospective class vehicle purchasers that defendant had not properly tested the engines including but not limited to the chain assemblies.

379. Defendant committed unfair and deceptive trade practices as described in this complaint. Defendant repeatedly violated the OCPA on multiple occasions with its continuous course of conduct including omissions of material fact and misrepresentations concerning inter alia, the causes of the failures of class vehicles owned by Henderson and members of the Colorado subclass.

380. As a proximate and direct result of defendant's unfair and deceptive trade practices, Martinez and members of the Oklahoma subclass purchased and/or leased class vehicles and sustained an ascertainable loss and financial harm.

381. Martinez and members of the Oklahoma subclass experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

382. The conduct of defendant offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

383. Martinez and members of the Oklahoma subclass demand judgment against defendant for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting defendant from further deceptive acts and practices described in this complaint.

**COUNT XVII**
**THE GEORGIA FAIR BUSINESS PRACTICES ACT ("GFBPA")**
**GA. CODE ANN. § 10–1–390 *et seq.***
(On Behalf of Plaintiff Turner the Georgia Subclass)

384. Plaintiff Turner, individually and on behalf of the other Georgia subclass members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

385. Plaintiff Turner brings this claim individually and on behalf of the Georgia subclass members.

386. GFBPA prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce," including, inter alia, "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another." GA. CODE ANN. § 10–1–393(a) and (b)(7).

387.    By the acts and conduct alleged herein, defendant committed unfair and deceptive acts and practices in the State of Georgia in violation of the GFBPA by making the misrepresentations and material omissions described above.

388.    Plaintiff Turner purchased his class vehicle in Georgia and had it serviced in Georgia. BMW failed to disclose a known material defect and/or material non-conformities upon delivery of the plaintiff's class vehicle and the class vehicles of Georgia subclass members and otherwise engaged in unfair or deceptive conduct in trade and commerce, including but not limited to, the following:

(a)    At the time of sale and during the warranty period in question, BMW omitted material information regarding the defective timing chain assemblies and failed to disclose to plaintiff and the Georgia subclass members, the known material information regarding the defective timing chain assemblies and/or affected class vehicles as described in detail hereinabove.

(b)    Thereafter, defendant failed to disclose the defects to plaintiff and the Georgia subclass members, either through warnings or recall notices, and/or actively concealed from them the fact that the class vehicles were defective, even though BMW knew of such defects in the timing chain assemblies in class vehicles.

(c)    Defendant forced plaintiff and the Georgia subclass members, to expend sums of money to repair and/or replace the defective timing chain assemblies, despite Defendant's prior knowledge of the defects at the time of purchase; and,

(d)    Defendant knowingly omitted, suppressed, and concealed the information concerning the defective timing chain assemblies during the sale and during the period of the warranty in question.

389.    The foregoing acts, practices, and representations described in this section and throughout the Complaint amounted to a breach of a duty owed to the consuming public in general, as they were directed at consumers who did purchase or might purchase class vehicles with the defective timing chain assemblies.

390.   Defendant's unfair and deceptive acts and practices occurred in the conduct of trade and commerce, and has, and continues to pose a risk to consumers and the consuming public generally. If not enjoined and addressed by the court, defendant's unfair and deceptive practices are likely to be a recurring consumer threat to consumers purchasing the defective class vehicles.

391.   The foregoing deceptive acts and practices described in this section and throughout this complaint were unfair and deceptive in a material way because they fundamentally misrepresented defendant's goods and services, and caused plaintiff and members of the Georgia subclass to reasonably believe that defendant's goods and services had characteristics that they did not have, and that its products, including the class vehicles which contained defective class engines and timing chain assemblies,  were of a particular standard or quality which they were not.

392.   Plaintiff Turner and members of the proposed Georgia subclass and Nationwide Class were injured as a direct and proximate result of defendant's violation of the GFBPA as they expended monies for purchase of the class vehicles which they would not have purchased had they known of their true quality and/or not been misled, and did not receive products of the represented standard and quality.

393.   Plaintiff Turner and members of the proposed Georgia subclass were injured as a direct and proximate result of defendant's violation of the GFBPA which caused class members the injury and/or damages described herein, including but not limited to time and expenses related to the repair and replacement of the defective timing chains which have failed and repair and replacement of damaged engine components in the class engines caused by the failure of the defective timing chain assemblies or parts thereof.   Plaintiff Turner and the Georgia subclass have also been injured as a result of the diminished value of the class vehicles containing the defective class engines.

394.   Defendant knew or should have known that the class vehicles contained defective chain assemblies that when failing could cause significant damage to the class engine.

395.   Furthermore, pursuant to GA. CODE ANN. § 10-1-399(b), in a letter dated February 26, 2018, more than 30 days prior to the filing of this complaint, a written demand for relief from plaintiff's counsel, on behalf of himself and other similarly situated owners and lessees of class vehicles in Georgia, was delivered to defendant.  The letter identified the claimant and reasonably described the unfair or deceptive acts and practices relied upon and the injuries suffered.

396.   By virtue of defendant's misrepresentations and willful omissions, as well as its intentional violations of the GFBPA, plaintiff and members of the proposed Georgia subclass and Nationwide Class have suffered damages.  Accordingly, plaintiff and the proposed Georgia subclass seek to enjoin the unlawful acts and practices described herein; to recover actual damages; an award of treble damages; an award of punitive damages; and reasonable attorneys' fees and costs.

## COUNT XVIII
## VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (GA. CODE ANN § 10-1-370 *et seq..*)
(On Behalf of Plaintiff Turner and the Georgia Subclass)

397. Plaintiff Turner, individually and on behalf of the other Georgia subclass members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

398. Plaintiff Turner brings this claim individually and on behalf of the Georgia subclass members.

399. Georgia's Uniform Deceptive Trade Practices Act (Georgia UDTPA) prohibits "deceptive trade practices," which include "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised." GA. CODE ANN. § 10-1-373(a).

400. Defendant BMW LLC, plaintiff Turner, and Georgia subclass members are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

401. At the time of sale and during the warranty period in question, defendant represented that the class vehicles were of high quality and were sold with timing chain assemblies that would not need repair or replacement during the useful life of the vehicles.

402. Defendant BMW failed to disclose to plaintiff and the Georgia subclass members the known material information regarding the defective timing chain assemblies and/or affected class vehicles as described in detail in this complaint.

403. As a direct and proximate result of defendant's violation of the UDTPA plaintiff Turner and the Georgia subclass have been injured including incurring time and expenses related to repair and replacement of defective timing chains and repair and replacement of damaged engine components, as well as diminished value of the class vehicles containing the defective class engines.

404. Plaintiff Tuner and members of the proposed Georgia subclass seek an order enjoining defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under GA. CODE ANN. § 10-1-373.

## COUNT XIX
## UNJUST ENRICHMENT
(On Behalf of the Nationwide Class or, Alternatively, the New Jersey and State Subclasses)

405. The proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

406.    The warranty had value which plaintiffs paid, and for which defendant agreed to render services of repair and replace.

407. The defendant breached its implied and express warranties in that class vehicles were defective with respect to engine materials, workmanship, and manufacture.  The defendant further breached its express and implied warranties in that class vehicles were accompanied by an owner's manual and Service and Warranty Information pamphlet that incorporated incorrect inspection and service intervals.  The class vehicles were not of merchantable quality and were unfit for the ordinary

purposes for which passenger vehicles are used because of engine materials, workmanship, and manufacture defects and an owner's manual and Service and Warranty Information pamphlet that incorrectly set forth service intervals.

408. The defendant intentionally, negligently and recklessly and/or fraudulently misrepresented to proposed class representative and proposed class members the characteristics of class vehicles with respect to engine design materials and/or manufacture together with information in the class vehicles' owner's manual and Service and Warranty Information pamphlet that incorporated incorrect engine inspection and service intervals.

409. The defendant benefited financially from its breaches of warranty, misrepresentations and fraud as described in this complaint. The defendant denied legitimate class vehicle engine warranty claims and obtained further unwarranted financial gain.

410. The proposed class representatives and proposed class members sustained monetary damages as described in this complaint.

411. Allowing the defendant to retain its monetary enrichment from its wrongful and unlawful acts would be unjust and inequitable.

412. The proposed class representatives and proposed class members request that the defendant disgorge its profits from its wrongful and unlawful conduct and that the Court establish a constructive trust funded by the benefits conferred upon the defendant as a result of its wrongful conduct. The proposed class representatives and proposed class members should be designated beneficiaries of the trust and obtain restitution for out of pocket expenses caused by the defendant's conduct.

413. Wherefore, proposed class representatives and proposed class members demand judgment against defendant for multiple damages, interest, costs and attorneys' fees.

**COUNT XX**
**INJUNCTIVE AND DECLARATORY RELIEF**
(Declaratory Judgment for Declaratory Relief on Behalf of Plaintiffs

Richardson, Zinn and Declaratory Relief Subclass)

414. Plaintiffs Richardson, Zinn, and the declaratory relief subclass hereby incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

415. There is a justiciable dispute as to whether the primary and secondary chain assemblies incorporated in class engines should be covered under the Limited Powertrain Warranty and/or New Vehicle Limited Warranty accompanying class vehicles.

416. By virtue thereof, Richardson, Zinn, and the declaratory relief subclass seek certification pursuant to Fed. R. Civ. Proc., Rule 23(b)(2) and request a declaratory judgment declaring that, going forward, the remedial and/or replacement work necessary to correct the defective chain assemblies incorporated in class engines together with all resulting damages are covered warranty claims.

417. This remedy of final injunctive relief or corresponding declaratory relief is appropriate for and thereby requested for all members of the declaratory relief subclass who still possess their vehicles.

418. This remedy is also authorized under the consumer fraud statutes of New Jersey together with all other states that grant each respective proposed class representative and proposed class member the right to seek injunctive or declaratory relief for violations of such consumer fraud statutes. Proposed class representatives thereby incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count and bring this claim on behalf of themselves and the members of their respective subclasses.

**RELIEF DEMANDED**

Wherefore, proposed class representatives request:

(a) A proposed Order pursuant to Fed. R. Civ. P. 23(c) certifying the class and/or subclass as defined in ¶ 19 with such modifications, if any, to the proposed certification as required by the Court for the efficient and equitable administration of justice in this proceeding;

(b) An Order appointing proposed class representatives as representatives of the proposed class and designating the law firms of Kantrowitz, Goldhamer & Graifman, P.C., and Thomas P. Sobran P.C., and Nagel Rice LLP as counsel for the proposed class pursuant to Fed. R. Civ. P. 23(g);

(c) Judgment for proposed class representatives and proposed class members against the defendant on all issues and counts;

(d) Actual, compensatory and statutory damages for proposed class representatives and proposed class members, including but not limited to multiple damages, together with interest, prejudgment interest, costs and attorneys' fees;

(e) Restitution for all engine repairs incurred by proposed class representatives and proposed class members resulting from the defectively designed and manufactured class engine primary and secondary chain assemblies and incorrect maintenance and service intervals as set forth in the class vehicles' owner's manual and Service and Warranty Information pamphlet;

(f) Restitution of incidental expenses incurred by proposed class representatives and proposed class members, including but not limited to rental vehicles and other substitute transportation;

(g) A court issued declaratory judgment declaring that all class vehicle class engine claims caused by defective chain assemblies are within the scope of the class vehicles' warranty coverage; and,

(h) Any other relief deemed necessary by this Court.

## REQUEST FOR JURY TRIAL

The proposed class representatives and proposed class members request trial by jury on all issues and counts.

*/s/ Gary S. Graifman*
Gary S. Graifman, Esq.
Jay I. Brody, Esq.
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
210 Summit Avenue

Montvale, NJ 07645
Tel: (201) 391-7000
ggraifman@kgglaw.com
jbrody@kgglaw.com

*/s/ Thomas P. Sobran*
Thomas P. Sobran, Esq.
**THOMAS P. SOBRAN, P.C.**
7 Evergreen Lane
Hingham, MA 02043
(781) 741-6075
(admitted *pro hoc vice*)

*/s/ Bruce Nagel*
Bruce H. Nagel, Esq.
Randee M. Matloff, Esq.
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
bnagel@nagelrice.com

**Attorneys for Plaintiffs**

Dated: February 4, 2019