## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ARTEM V. GELIS, BHAWAR PATEL, ROBERT MCDONALD, JAMES V. OLSON, GREGORY HEYMAN, SUSAN HEYMAN, DEBRA P. WARD, DARRIAN STOVALL, ALEX MARTINEZ, AMANDA GOREY, CHRIS WILLIAMS, ASHOK PATEL, KENNETH GAGNON, MICHAEL CERNY, MARIA MEZA, ANDRE MALSKE, NICOLE GUY, DAVID RICHARDSON, STACEY TURNER and ERIC T. ZINN, individually and on behalf of all others similarly situated, | Civil Action No. 17-cv-7386 SDW-CLW |
| Plaintiffs, | |
| v. | |
| BMW OF NORTH AMERICA, LLC, | |
| Defendant. | |

---

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

Gary S. Graifman, Esq./Jay I. Brody, Esq.
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645

Thomas P. Sobran, Esq.
**THOMAS P. SOBRAN, P.C.**
7 Evergreen Lane
Hingham, MA 02043
(admitted *pro hac vice*)

Bruce H. Nagel, Esq./Randee M. Matloff, Esq.
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, NJ 07068

***Class Counsel for Conditionally Certified Class***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. iii

I.   INTRODUCTION.................................................................... 1

II.  FACTUAL BACKGROUND........................................................ 6
     A. The Timing Chain Defect in Settlement Class Vehicles.................. 6
     B.  The Action................................................................... 7
     C.  Settlement Discussions..................................................... 8

III. SUMMARY OF THE SETTLEMENT.............................................10
     A.  The Proposed Settlement Class...........................................10
     B.  Reimbursement For Past Repairs as a Benefit of
         Settlement................................................................. 13
     C.  Prospective Extended Warranty Benefits of
         Settlement................................................................. 14
     D.  Extended Warranty Benefit of One Year With No Years- In-
         Service Requirement After Effective Date............................... 15
     E.  Class Notice Plan......................................................... 16
     F.  Claims Process............................................................. 17
     G.  Release of Claims Against BMW NA and Associated Parties............. 18
     H.  Opt-Out Rights............................................................ 18
     I.  Objections and Settlement Approval...................................... 19
     J.  Claims Filed to Date Demonstrate Substantial Support for the
         Settlement................................................................. 21

IV.  LEGAL ARGUMENT.............................................................. 22
     A.  The Settlement is Fair, Reasonable, and Adequate, and Should be
         Approved................................................................... 22
     B.  The Girsh Factors Weigh in Favor of Approval.......................... 25
         1.  Continued Litigation Would be Long, Complex and Expensive...... 25
         2.  The Reaction of the Class to the Settlement....................... 28
         3.  The Stage of the Proceedings...................................... 30
         4.  The Risks of Establishing Liability................................ 32
         5.  The Risks of Establishing Damages................................. 33
         6.  The Risks of Maintaining the Class Action Through Trial.......... 34
         7.  Defendant's Ability to Withstand Greater Judgment................. 35
         8.  Reasonableness of the Settlement in Light of the Best Possible
             Recovery and All Attendant Risks of Litigation.................... 35
     C.  The Notice Program is Constitutionally Sound and Fully
         Implemented............................................................... 37
     D.  The Settlement Class Should be Certified............................... 39
         1.  The Rule 23(a) Factors Are Met................................... 40

        a.    Numerosity...................................................................... 41

        b.    Commonality................................................................... 42

        c.    Typicality....................................................................... 42

        d.    Adequacy........................................................................ 43

    2.    The Rule 23(b)(3) Factors Are Met.................................. 44

        a.    Predominance.................................................................. 44

        b.    Superiority...................................................................... 45

V.   CONCLUSION........................................................................... 47

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................  passim

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013)................................................................  45

*Bell Atlantic Corp. v. BoSPrinter*,
    2 F.3d 1304 (3d Cir. 1993).......................................................  23, 29

*Bredbenner v. Liberty Travel, Inc.*,
    2011 WL 1344745 (D.N.J. Apr. 8, 2011)...........................  23, 25, 30

*Danvers Motor Co, Inc. v. Ford Motor Co.*,
    543 F.3d 141 (3d Cir. 2008)....................................................  46

*Dewey v. Volkswagen of Am.*,
    728 F. Supp. 2d 546 (D.N.J. 2010)..........................................  34, 35

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010).....................................................  22, 23

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)................................................................  39

*Falco v. Nissan North America, Inc.*, .
    Civ. Action No. 13-cv-00686 (DDP), U.S. District Court for Central
    District California...................................................................  36, 37

*Gates v. Rohm & Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2008)................................................  23

*Gelis, et al. v. BMW of N. Am., LLC*,
    2018 WL 6804506 (D.N.J. Oct. 30, 2018)..............................  8

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)..................................................  passim

*Handschu v. Special Servs. Div.*,
    605 F. Supp. 1384 (S.D.N.Y. 1985) ................................................................. 31

*In re Am. Family Enters.*,
    256 B.R. 377 (D.N.J. 2000) ................................................................. 24, 25

*In re Cendant Corp. Sec. Litig.*,
    109 F. Supp. 2d 235 (D.N.J. 2000) ................................................................. 24, 38

*In re Cendant Corp. Sec. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ................................................................. passim

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
    269 F.R.D. 468 (E.D. Pa. 2010) ................................................................. 22, 29, 35

*In re Chambers Dev. Sec. Litig.*,
    912 F. Supp. 822 (W.D. Pa. 1995) ................................................................. 39

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir. 1982) ................................................................. 31

*In re Community Bank of Northern Virginia*,
    418 F.3d 277 (3d Cir. 2005) ................................................................. 40, 45

*In re Corrugated Container Antitrust Litigation*,
    643 F.2d 195 (5th Cir. 1981) ................................................................. 31

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability
    Litigation,* 55 F.3d 768 (3d Cir. 1995) ................................................................. passim

*In re Mercedes-Benz Antitrust Litig.*,
    213 F.R.D. 180 (D.N.J. 2003) ................................................................. 45

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
    Civ. No. 08-CV-285 (DMC), 2010 WL (D.N.J. Feb. 9, 2010) ................................................................. 28

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
    962 F. Supp. 450 (D.N.J. 1997) ................................................................. passim

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
    148 F.3d 283 (3d Cir. 1998) ................................................................. passim

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001)........................................................... 32

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002)............................................................ 33

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)........................................................ passim

*Johnston v. HBO Film Mgmt., Inc.*,
   265 F.3d 178 (3d Cir. 2001)........................................................ 42, 43

*Lake v. First Nationwide Bank*,
   900 F. Supp. 726 (E.D. Pa. 1995)........................................................ 25

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*,
   149 F.R.D. 65 (D.N.J. 1993).............................................................. 41

*McGee v. Cont'l Tire N. Am., Inc.*,
   Civ. No. 06-6234 (GEB), 2009 WL 539893 (D.N.J. Mar. 4, 2009).......................30

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)................................................................. 37, 38

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001)............................................................. 42

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)............................................................ 24

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)............................................................... 37, 47

*Reyes v. Netdeposit, LLC*,
   802 F.3d 469 (3d Cir. 2015)............................................................. 42

*Slade v. Shearson, Hammill & Co.*,
   79 F.R.D. 309 (S.D.N.Y. 1978)........................................................... 25
.
*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001)............................................................. 41

*Stoetzner v. U. S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990)....................................................................... 29

*Sullivan v. DB Invs.*,
   667 F.3d 273 (3d Cir. 2011)....................................................................... 23

*Varacallo v. Mass. Mutual Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005)................................................................ 46, 47

*Weiss v. Mercedes- Benz of North America,*
   899 F. Supp. 1297 (D.N.J. 1995)............................................................ passim

## Rules

FED. R. CIV. P. 12(b)(6)................................................................................. 8

Fed. R. Civ. P. 23(e)..................................................................................... 22

Fed. Rule Civ. P. 23(e)(1)(B)....................................................................... 37

## Treatises

MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.641
   (2004).......................................................................................................... 23

Class Action Fairness Act, 28 U.S.C. § 1715............................................... 38

# I.  INTRODUCTION

On September 9, 2020[1], this Court (i) entered an Order preliminarily approving the within Class Action Settlement[2] between Plaintiffs Artem V. Gelis, Bhawar Patel, Robert McDonald, James V. Olson, Gregory Heyman, Susan Heyman, Debra P. Ward, Darrian Stovall, Alex Martinez, Amanda Gorey, Chris Williams, Ashok Patel, Kenneth Gagnon, Michael Cerny, Maria Meza, Andre Malske, Nicole Guy, David Richardson, Stacey Turner, and Eric T. Zinn (hereinafter "Plaintiffs" or "Class Representatives"), on behalf of themselves and all others similarly situated, and BMW of North America, LLC (hereinafter "Defendant" or "BMW NA"), by and through their counsel, and (ii) preliminarily certified the following class for purposes of effectuating the Settlement:

All current (as of the Effective Date) and former owners and lessees in the United States of certain of the following U.S.-specification 2012-2015 model year BMW vehicles purchased or leased, registered and operated in the United States, the District of Columbia, and Puerto Rico[3]:

---

[1] ECF Doc. No. 75.

[2] Settlement Agreement at ECF Doc. No. 72-3 and as Exhibit 1 to the Joint Declaration of Gary S. Graifman, Thomas P. Sobran and Bruce H. Nagel In Support of Final Approval of Class Action Settlement (hereinafter "Jt. Decl." ) filed contemporaneously with this brief.

[3] Excluded from the Class are: Defendant, as well as Defendant's affiliates, employees, officers, and directors, attorneys, agents, insurers, third-party providers of extended warranty/service contracts, franchised dealers and their owners and immediate family members, independent repair/service facilities and their owners and immediate family members, fleet owners and operators, rental companies and vehicles, the attorneys representing Defendant in this case, the Judges and Mediator to whom this case is assigned and their immediate family members, all persons who request exclusion from (opt-out of) the Settlement, vehicles with a salvage title or deemed a total loss, vehicles purchased from salvage yards/junkyards/recyclers, anyone claiming personal injury or property damage other than to a Class Vehicle or through subrogation,

| Model Description | Model Years |
|---|---|
| X1 SAV | 2012 - 2015 |
| X3 SAV | 2013-2015 |
| X4 SAV | 2015 |
| Z4 | 2012 - 2015 |
| 228i Coupe, Convertible | 2014-2015 |
| 320i Sedan | 2012-2015 |
| 328i Sedan, Sports Wagon, Gran Turismo | 2012-2015 |
| 428i Coupe, Convertible, Gran Coupe | 2014-2015 |
| 528i Sedan | 2012 - 2015 |

*Model Years are not fully indicative of actual Class Vehicles, which will depend on production ranges.*

(the "Settlement Class").[4]

Plaintiffs submit this memorandum in support of the motion for final approval of the Class Action Settlement and certification of the Settlement Class in accordance with the Settlement terms.  As the Court is aware, Plaintiffs have alleged that series N20/N26 engines installed in Settlement Class Vehicles incorporated defective timing and oil pump drive chain assemblies (hereinafter "chain assemblies" or "chain modules")[5] that prematurely fail.  Manifestation of either chain failure can result in an unanticipated loss of power and/or engine failure,

---

all persons who previously released any claims encompassed in this Settlement, and vehicles transported outside the United States.

[4] See Settlement Agreement attached as Exhibit 1 to Jt. Decl., defining Settlement Class as "All persons and entities who purchased or leased a Settlement Class Vehicle, as defined in Section I(G) of this Agreement, in the United States of America and Puerto Rico." The production range of Class Vehicles is ultimately defined by VIN numbers.  All Class Members who received a Class Settlement Notice, which contained a Claimant Numbers, have a Class Vehicle by virtue of having received such notice.

[5] The chain assemblies include the primary timing chain, tensioner and rails/guides together with the oil pump chain, tensioner and sprockets.

stalling and a limited ability to accelerate or maintain vehicle speed and in some instances sudden engine destruction. The chain assemblies in Class Vehicles allegedly incorporated defects which caused them to fail shortly after expiration of the original 4 year/50,000-mile limited powertrain warranty.

Plaintiffs further alleged that the premature failure of the chain assemblies required expensive repairs and replacements born by the consumers, and, at times, even more expensive engine replacement where chain assembly failure destroyed the vehicle's engine and that BMW NA failed to disclose the existence of the defective chain assemblies and represented that the Settlement Class Vehicles were safe, reliable, and fully protected by an extensive warranty should there be any defects in materials or workmanship.

The Settlement is an outstanding result from every perspective. First, the relief available to the class is generous, immediate and real. BMW NA agreed to prospectively extend the warranty (hereinafter "Extended Warranty") for Class Members who experience an engine chain failure prospectively, entitling them to receive a repair or replacement of affected parts (timing chain module, oil pump drive chain module, engine) in Class Vehicles, up to 8 years in-service[6] or 100,000 miles (whichever comes first) at an authorized BMW Center subject to a provided

---

[6] All reference to years refers to when the respective vehicle was sold as a new vehicle, used as a dealer demonstrator/loaner or leased.

contribution schedule after 7 years or 70,000 miles (whichever occurs first). *See* discussion, *infra*, at Point III.B. under "Summary of Settlement" for contribution schedule. Any Class Vehicle that experiences timing chain module failure, oil pump drive chain module failure, or engine damage/failure due to timing chain module or oil pump drive chain module failure, within one (1) year from the Effective Date of the Settlement and with less than 100,000 miles (regardless of age), may be brought to an authorized BMW Center for a covered repair, subject to a provided contribution schedule. The Component Warranty Extension is a substantial extension as measured from the original limited warranty of 4-year/50,000-miles for Class Vehicles, increasing the warranty duration and the mileage limitation in the Component Warranty Extension by double (4 years x 200% = 8 years and 50,000 miles x 200% = 100,000 miles).

Second, the Settlement includes a reimbursement program under which BMW NA will also reimburse Settlement Class Members who previously incurred eligible out-of-pocket expense(s) for costs (parts and labor) not previously reimbursed to repair or replace one failed timing chain module and/or one failed oil pump drive chain module. If either chain assembly failed within 7 years or 70,000 miles (whichever occurs first) of the Class Vehicle's in-service date, the reimbursement rate is 100% for repairs including any associated engine damage. Chain module failures occurring subsequent to 7 years and up to and including 8

years or 100,000 miles (whichever occurs first) are also subject to reimbursement in accordance with a provided contribution schedule. *See* Agreement, Section III.A and Exhibit B.  Claims may be filed via U.S. mail or through a portal available on the Settlement Website (https://www.TimingChainModuleSettlement.com).

Third, BMW NA will also pay the cost of notice to the class and for claims administration. *See* Agreement, Section VIII(A).  Although the parties have not agreed on attorneys' fees and expenses, they have established a high/low formula under which Class Counsel will not apply for a fee and expense award greater than $3.7 million and defense counsel have agreed not to contest any fee and expense award at or below $1.5 million. In addition, the parties have agreed that the Settlement Class Representatives may receive Service Payments in the amount of $1,000 each for each Settlement Class Representative ($20,000 in the aggregate) which will come out of the amount awarded as Attorneys' Fees and Costs under Section VIII (C) of the Agreement. The proposed Settlement provides valuable relief to the Class and should be approved. These Settlement benefits serve as consideration for the dismissal with prejudice of this class action against BMW NA, and the release of all claims by Plaintiffs and Settlement Class Members which takes effect on the Effective Date as set forth in Section VII of the Agreement. Finally, the fact that this matter was resolved early in the litigation, relatively speaking, after approximately three years of litigation and discovery and before the pretrial motion

stage, substantially benefits Class Members. Automobile defect class cases like the present are unique in that as time passes without compensation, mileage accumulates, vehicles become older, the components may be degraded or damaged by other issues (i.e., accidents, corrosion and other environmental affects). Other vehicles may be junked or taken out of service. Consequently, defendants usually raise defenses related to these factors. Since vehicle use and value is measured in miles and years, a relatively early settlement is more valuable to the Class Members as a whole and should be recognized as a benefit achieved here.

## II. FACTUAL BACKGROUND

### A. The Timing Chain Defect in Settlement Class Vehicles

Plaintiffs allege that prior to the sale of the Class Vehicles, BMW NA knew chain assemblies installed in the Settlement Class Vehicles were defective and likely to fail shortly after the expiration of the original warranty. Plaintiffs further alleged BMW NA concealed this information and misrepresented that the Settlement Class Vehicles were safe, reliable, and fully protected by an extensive warranty should there be any defects.

The allegedly defective chain assemblies create an unanticipated expense for Plaintiffs and the Class, with necessary repairs and replacement components costing thousands of dollars. BMW NA denied Settlement Class Vehicles are defective and maintained that the chain assemblies were properly designed and manufactured

without any resulting safety issues. BMW NA also denied applicable warranties were breached, or that applicable state law consumer statutes or common law duties violated. BMW NA also maintained the durational limits of the warranties were enforceable and these warranties were not unconscionable substantively or procedurally.

## B. The Action

The Settlement resolves *Gelis v. Bayerische Motoren Werke Aktiengesellschaft and BMW of North America, LLC, Civil Action No. 2:17-cv-07386* (hereinafter "Action") brought against BMW NA and its parent company in the District of New Jersey, on behalf of nationwide class and state subclasses, comprised of persons and entities that purchased or leased a Settlement Class Vehicle.

The Complaint (ECF Doc. No. 1) filed on September 22, 2017 asserted eight (8) counts - for breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, negligent misrepresentation, unjust enrichment, violations of New Jersey and Illinois state consumer protection statutes, and injunctive relief. *See* ECF Doc. No. 1. In November 2017, a second related class action was filed in New Jersey that was later consolidated with the *Gelis* action on January 24, 2018.

On March 5, 2018, Plaintiffs filed a Consolidated Amended Class Action Complaint (ECF Doc. No. 23) asserting similar claims, but adding additional

plaintiffs and counts for violations of state consumer protection statutes in Massachusetts, Texas, California, Wisconsin, Oregon, New York, Florida, Colorado, Alabama, Utah, Oklahoma and North Carolina. On April 16, 2018, BMW NA filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). ECF Doc. No. 26. Plaintiffs' opposition was filed on June 7, 2018 (ECF Doc. No. 34), and BMW NA filed a reply brief on June 22, 2018. ECF Doc. No. 36. The Court issued its Opinion and Order on Oct. 30, 2018 (ECF Doc. Nos. 42-43), declining to dismiss substantially all of Plaintiffs' claims. *See Gelis, et al. v. BMW of N. Am., LLC*, 2018 WL 6804506 (D.N.J. Oct. 30, 2018). Plaintiffs thereafter filed their Consolidated Second Amended Class Action Complaint on February 4, 2019 maintaining their previously asserted claims.[7] ECF Doc. Nos. 47. BMW NA filed an Answer to the Consolidated Second Amended Class Action Complaint on March 8. 2019. ECF Doc. No. 50.

## C.  Settlement Discussions

After the Court's ruling on Defendant's Motion to Dismiss, the parties participated in several Case Management Conferences and exchanged formal discovery in the form of interrogatories, requests for production of documents and requests for admissions. BMW NA provided a rolling production of voluminous

---

[7] The operative Complaint incorporates claims for a proposed nationwide class, and in the alternative, state classes representing New Jersey, Illinois, Florida, New York, Utah, Colorado, Texas, Alabama, Oklahoma, Massachusetts, California, Wisconsin, Oregon, and North Carolina vehicle owners/lessees.

documents and produced materials provided by BMW AG. The parties then decided to attempt an amicable resolution and exchanged additional informal discovery in furtherance of a settlement. That was followed by two full-day mediation sessions with retired U.S. District Judge Stephen Orlofsky. The first session occurred on July 31, 2019 and a term sheet setting out the substantive terms was executed on November 12, 2019. A second mediation was held with Judge Orlofsky on November 18, 2019 to address the open issue of legal fees which was not resolved. Additionally, Magistrate Judge Cathy L. Waldor conducted an in-person fee settlement conference on February 14, 2020.

After a result of arm's-length negotiations, both before, during and after the mediation, counsel for the parties reached an agreement to settle this case. Counsel for the parties did not discuss the appropriateness or amount of any application by Plaintiff's Counsel for an award of attorneys' fees and expenses until the substantive terms of the Settlement had been negotiated and agreed upon. Indeed, the legal fee has still not been fully agreed upon.

After execution of the Settlement Agreement, the motion for Preliminary Approval (ECF Doc. No. 73) was filed with Court (ECF Doc. 72-1). On September 9, 2020, the Court entered the Order Granting Preliminary Approval of Class Action (ECF Doc. No. 75). Thereafter, Plaintiffs moved for an award of attorneys' fees, reimbursement of expenses and service awards to Class Representatives (hereinafter

"Attorneys' Fee Motion"). The issue of attorneys' fees and expenses was briefed by the parties in December 2020 and January 2021. *See* ECF Doc. Nos. 85, 85-1 (hereinafter "Attorneys' Fee Brief") 86, 87, 89, 96, 113.

Class Counsel[8] have significant experience litigating numerous consumer class actions. After the above-described extensive investigation, exchange of discovery, in-depth analysis of the factual and legal issues presented, consultations with experts, and arm's-length negotiations with BMW NA and representatives of its German parent, Bayerische Motoren Werke Aktiengesellschaft (hereinafter "BMW AG"), this settlement was consummated.  Plaintiffs submit the Settlement is eminently fair, reasonable and adequate.  This is particularly evident when compared to similar settlements and in light of the risks of continued litigation.  The Settlement provides substantial monetary relief to the Settlement Class together with relief in the form of a prospective Extended Warranty program.

### III.   SUMMARY OF THE SETTLEMENT

### A.   The Proposed Settlement Class

The Settlement provides relief to a Settlement Class which includes the following:

---

[8] "Class Counsel" refers to Kantrowitz Goldhamer & Graifman, P.C., Thomas P. Sobran, P.C. and Nagel Rice, LLP.

All current (as of the Effective Date) and former owners and lessees in the United States, including the District of Columbia and Puerto Rico, of certain of the following U.S.-specification BMW vehicles distributed for sale, registered, and operated in the United States, including the District of Columbia and Puerto Rico:

| Model Description | Model Years |
|---|---|
| X1 SAV | 2012 - 2015 |
| X3 SAV | 2013 - 2015 |
| X4 SAV | 2015 |
| Z4 | 2012 - 2015 |
| 228i Coupe, Convertible | 2014 - 2015 |
| 320i Sedan | 2012 - 2015 |
| 328i Sedan, Sports Wagon, Gran Turismo | 2012 - 2015 |
| 428i Coupe, Convertible, Gran Coupe | 2014 - 2015 |
| 428i xDrive | 2014 - 2015 |
| 528i Sedan | 2012 - 2015 |

*Model Years are not fully indicative of actual Class Vehicles, which will depend on production ranges.*

Excluded from the Class are: Defendant, as well as Defendant's affiliates, employees, officers, and directors, attorneys, agents, insurers, third-party providers of extended warranty/service contracts, franchised dealers and their owners and immediate family members, independent repair/service facilities and their owners and immediate family members, fleet owners and operators, rental companies and vehicles, the attorneys representing Defendant in this case, the Judges and Mediator to whom this case is assigned and their immediate family members, all persons who request exclusion from (opt-out of) the Settlement, vehicles with a salvage title or deemed a total loss, vehicles purchased from salvage yards/junkyards/recyclers, anyone claiming personal injury or property damage other than to a Class Vehicle or through subrogation, all persons who previously released any claims encompassed in this Settlement, and vehicles transported outside the United States.

To qualify for a benefit under this Settlement, Settlement Class Members must timely submit a completed Claim Form by the Claim Deadline. *See* Settlement Agreement, Section IV (5) and Exhibit B. This can be done through a portal on the Settlement Website or by mail.

**B.    Reimbursement for Past Repairs as a Benefit of Settlement**

Under the Settlement, there is no aggregate upper limit to the amount that will be available to pay Settlement Class Members' valid claims. Settlement Class Members will be entitled to compensation for previous unreimbursed out-of-pocket expenses for past chain assemblies repairs which were incurred prior to the earlier of 8 years or 100,000 miles (whichever occurs first) before the Effective Date as follows:

a)    For vehicles with less than 7 years or 70,000 miles (whichever occurs first) whose owners paid to have the chain assembly and related engine repairs performed prior to the extension of the warranty, BMW will reimburse 100% of invoice for work performed at an authorized BMW Center, and for work performed at an independent service center up to $3,000 for the timing chain module/oil pump drive chain module and up to $7,500 for engine failure.

b)    For vehicles over the 7 years/70,000-mile period but with less than 8 years or 100,000 miles (whichever occurs first), for work which was performed at an authorized BMW Center or an Independent Service Center (hereinafter "ISC"), the work will be reimbursed according to the following reimbursement schedule, subject to a cap for timing chain repairs done at an ISC of $3,000 for the timing chain module and/or oil pump drive train repairs (hereinafter "Timing Chain Cap") and a cap of $7,500 for engine failure repairs done at an ISC (hereinafter "Engine Repair Cap"):

- 70,001 to 80,000 miles and
within 7 to 8 years-in-service:       75% BMW/25% customer contribution;
- 80,001 to 90,000 miles and
less than 8 years-in-service:       55 % BMW/45% customer contribution;
- 90,001 to 100,000 miles and
less than 8 years-in-service:       40% BMW/60% customer contribution;
- 100,001 miles and above or
or more than 8 years-in-service:   0% BMW/100% customer contribution.

## C.  Prospective Extended Warranty Benefits of Settlement

Commencing as of the Effective Date of the Settlement, Settlement Class Members will be entitled to monetary relief in the form of a prospective repair program which requires the work be performed by an authorized BMW Center. Repair or replacement of affected parts (timing chain module, oil pump drive chain module, engine) in Class Vehicles up to 8 years or100,000 miles (whichever occurs first) can be repaired at the BMW Center and is subject to the following contribution schedule:

For Class Vehicles with:

- less than 7 years
or 70,000 miles:                100% BMW/0% Customer Contribution;[9]
- 70,001 to 80,000 miles
and within 7 to 8
years-in-service:            75% BMW/25% Customer Contribution;
- 80,001 to 90,000 miles

---

[9] As part of the Settlement Agreement, BMW NA will also continue to honor the 7 year/70,000 mile engine chain assemblies extended warranty. This warranty extension was implemented in late 2017, ***shortly after*** this class action was initially filed. It extended the warranty for the class engine timing chain assembly and oil pump drive chain assembly from the original 4 year/50,000 miles.

| | | |
|---|---|---|
| | and less than 8 years-in-service: | 55 % BMW/45% Customer Contribution; |
| • | 90,001 to 100,000 miles and less than 8 years-in-service: | 40% BMW/60% Customer Contribution; |
| • | 100,001 miles and above or more than 8 years-in-service: | 0% BMW/100% Customer Contribution. |

### D.   Extended Warranty Benefit of One Year With No Years-In-Service Requirement After Effective Date

The prospective Extended Warranty comes into effect upon the "Effective Date" of the Settlement.  Because that date may move (*e.g.,* become delayed), the Plaintiffs negotiated and obtained from BMW the agreement that, for one year from the Effective Date of the Settlement, ANY Class Vehicle with less than 100,000 miles, regardless of Class Vehicle age (*e.g.,* years-in-service), that experiences timing chain module failure, oil pump drive chain module failure, or engine damage/failure due to timing chain module or oil pump drive chain module failure may receive repairs at an authorized BMW Center, subject to the above-referenced contribution schedule:

This relief is limited to one repair per Owner of a Class Vehicle and the relief is subject to evidence of adherence to regular scheduled oil changes.  The parties have also agreed to an appeal process to resolve disputes over claims denials. *See* Agreement sections III.A., III.B., III.C. and III.D.

### E.   Class Notice Plan

The Settlement Agreement and the Preliminary Approval Order provided for the Settlement Administrator (Rust Consulting) to mail individual Class Notice to Settlement Class Members by first-class mail to the current or last known address of all reasonably identifiable Settlement Class Members. The Notice was sent in the form set forth in Exhibit A to the Settlement Agreement. ECF Doc. No. 72-3. Class Notice was timely sent to Settlement Class Members (pursuant to the Order Granting Preliminary Approval of Class Action (ECF Doc. No. 75)), the Declaration of the Project Manager for the Claims Administrator Rust Consulting is to be filed on February 5th — *i.e.,* approximately 10 days prior to the Final Approval hearing). The addresses for the Notices were compiled from records in the same manner as recall information is obtained, from the same vendor automobile manufacturers use for recall notices. The total number of Settlement Class Vehicles is approximately 575,303. There were 1,305,981 Notices sent to Settlement Class Members with BMW Class Vehicles. With respect to any returned Notices, efforts were made to locate updated address information and remail such Notices.

In addition, the Settlement Administrator established a Settlement website (https://www.TimingChainModuleSettlement.com/) with: (1) detailed instructions on how to submit a claim for reimbursement either by mail or online submission; (2) a portal through which a Settlement Class Member enters the VIN of their respective

vehicle to confirm it is a Settlement Class Vehicle; (3) instructions on how to contact the Settlement Administrator, and counsel for the Parties for further assistance; (4) a copy of the Claim Form, Class Notice, and the Settlement Agreement; (5) important dates pertaining to the Settlement; and, (6) other relevant information agreed upon by counsel for the Parties.

Additionally, BMW NA has advised each of its BMW Centers of the material terms of the Settlement relating to the Component Warranty Extension, so that the centers may effectively communicate with Settlement Class Members and repair Settlement Class Vehicles pursuant to the terms of the Extended Warranty.

### F.   Claims Process

To receive reimbursement for previous repairs, Settlement Class Members merely submit a Claim Form, along with Proof of Adherence to the Vehicle's Maintenance Schedule during their ownership[10] and Proof of Payment of the Repair Expense, and the vehicle's age and mileage at the time of repair. The Settlement Agreement also sets forth a detailed disputed claim procedure where Settlement Class Members may cure any defects in their submission and also contest a denial of their claim. Settlement Agreement, at § III., D, 4 (ECF Doc. No. 72-3.).

---

[10] In the event maintenance records cannot be obtained despite a good faith effort, the Settlement Class Member may submit a sworn declaration which is a document form accessible on the website, detailing what efforts were made to obtain the records, including why the records are not available, and attesting to adherence to the relevant aspects of the Settlement Class Vehicle's maintenance schedule as set forth in the Settlement Agreement.

Beginning thirty (30) days after the Effective Date and on a rolling basis thereafter, the Settlement Administrator shall mail to the Settlement Class Member a reimbursement check to the address on the Claim Form.  All costs of the Notice and claims process are borne by BMW NA.

### G.   Release of Claims Against BMW NA and Associated Parties

As set forth in full in the Settlement Agreement (*see* § VII), Settlement Class Members will release all Released Claims against the Released Parties, including claims and counterclaims arising out of the Litigation and the facts or circumstances that were or could have been alleged in the Litigation relating to the chain assemblies.

### H.   Opt-Out Rights

The opt-out deadline was January 19, 2021.  Of 1,305,981 potential Class Members, only 141 Class Members elected to opt-out of the Settlement.   Any Settlement Class Member who did opt-out of the Settlement is deemed to be part of the Settlement Class and is bound by all subsequent proceedings, orders and judgments.

A list of opt-outs will be annexed to the Declaration of the Rust Consulting Project Manager, to be submitted to February 5th  Declaration (hereinafter "Exclusions List").  The [Proposed] Final Order and Judgment Certifying Settlement Class, and Granting Final Approval of Settlement sets forth those Settlement Class

Members on the Exclusions List not bound by the Settlement or entitled to any benefits of the Settlement.

## I.   Objections and Settlement Approval

Pursuant to the Settlement Agreement, any potential Settlement Class Member who did not opt-out of the Settlement could have objected to the Settlement provided such objection was post-marked no later than January 19th, 2021.

Of the 1,305,981 potential Class Members, only forty-four (44) filed objections. As the objection deadline expired, there are no further timely objections. The objections can be generally characterized as falling into the following groups: (1) Objection to the limitations of reimbursement percentages; (2) Objection to the Extended Warranty and Reimbursement Warranty time-in-service requirement limit of eight (8) years; (3) Objection to the Extended Warranty and Reimbursement Warranty mileage limitation of 100,000 miles; (4) Objection to the requirement demonstrating proof of repair and/or proof of payment requirement; and, (5) One objector challenges the request for an award of legal fees, reimbursement of expenses, and the service award to the three class representatives. A separate memorandum responding to these objections accompanies this memorandum.

While Plaintiffs and Class Counsel fought hard to obtain the maximum amount of mileage and longest number of years, and are extremely sympathetic to the arguments of those objectors, BMW NA was adamant and absolutely refused to

go beyond 100,000 miles or 8 years in-service.  The Settlement benefits the majority of the owners of the 575,303 Class Vehicles. If Plaintiffs rejected the Settlement and continued to litigate the case for the next five years or so, even if successful, those Class Members who are now below 100,000 miles or 8 years would then be at, or above, 1000,000 miles and 8 years. Class Members who are currently just under 100,000 miles and 8 years, would not be able to take immediate advantage of the Settlement. Thus, the current Settlement benefits the vast majority of the Class Members now and provides them with benefits in the form of either reimbursement or a Component Warranty Extension.

Class Members currently over 100,000 miles or 8 years who have not experienced the timing chain or oil pump drive chain failure received the same benefits as those Class Members with less mileage and in-service time- i.e., they received a Class Vehicle with chain assemblies that were trouble free for 100,000 miles or 8 years, exactly what Class Vehicles under the 100,000 miles/8 year limitations receive under the Settlement (e.g., a guarantee that the chain assemblies will last 8 years or 100,000 miles).

### J.  Claims Filed To Date Demonstrate Substantial Support for the Settlement

There have been approximately 6,315 claims filed to date.  The claims rate currently is running an average of approximately 1,000 new claims per week.  As

there are approximately 8 weeks left for the filing of claims, it is projected there will be approximately 8,000 additional claims.   The total number of filed claims is projected to be approximately 13,315.   Even if one-half of these claims (*e.g.*, 6,658) are approved by the Claims Administrator as qualified claims (a substantially conservative rate), the value of the reimbursement portion of the Settlement (using the conservative figure of $3,000 per claim) is $19.974 million.   It is estimated the prospective Extended Warranty component would add roughly another $42.3 million to $64 million in the value of the prospective Extended Warranty for Class Members. *See*, Declaration of Kirk D. Kleckner submitted with the Plaintiffs' Reply Brief In Support of an Award of Attorneys' Fees, Reimbursement of Expenses and Award of Class Representative Service Payments (ECF Doc. No. 113-4) ("Kleckner Decl."); *See also*, Joint Decl. of Gary S. Graifman, Thomas P. Sobran and Bruce H. Nagel in Support of Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Service fee Award (ECF Doc. 89-1), ¶ 11.   Even using the lower valuation of the Kleckner Decl. for the prospective Extended Warranty, the total Settlement value (Reimbursement component and Extended Warranty component) is approximately $62.2 million.

### IV.  LEGAL ARGUMENT

### A.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE APPROVED

Rule 23(e) requires a determination by the district court that the proposed settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). There is a strong judicial policy in favor of resolution of litigation before trial particularly in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 484 (E.D. Pa. 2010) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 784 (3d Cir. 1995) ("*GMC Truck*") ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). The *Ehrheart* court held:

> This presumption is especially strong in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *GMC Truck,* 55 F.3d at 784. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings . . . Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts [and] the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

*Ehrheart*, 609 F.3d at 594-95; *see also Bell Atlantic Corp. v. BoSPrinter*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993).

Settlements enjoy a presumption that they are fair and reasonable when they are the product of arms'-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *See, e.g.*, *GMC Truck*, 55 F.3d at 785; *Sullivan v. DB Invs.*, 667 F.3d 273, 320 (3d Cir. 2011) (*en banc*); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's length negotiations and highlighting the fact that the negotiations included "two full days of mediation"); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("A class settlement is entitled to an 'initial presumption of fairness' when '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'") (quoting *GMC Truck*, 55 F.3d at 785); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.641 (2004).

A fair, reasonable and adequate settlement is not necessarily an "ideal settlement." A settlement is, after all, "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) (citations omitted). As one court has noted:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned . . . The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

* * *

Neither the district court nor this court is empowered to rewrite the settlement agreed upon by the parties.  We may not delete, modify, or substitute certain provisions of the consent decree.  Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted.  Approval must then be given or withheld. . . . In short, the settlement must stand or fall as a whole.

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625, 630 (9th Cir. 1982); *see also In re Am. Family Enters.*, 256 B.R. 377, 421 (D.N.J. 2000) ("Significant weight should be attributed 'to the belief of experienced counsel that the settlement is in the best interest of the class.'"); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd* 264 F.3d 201 (3d Cir. 2001).

The Third Circuit adopted a nine-factor test to determine whether a settlement is "fair, reasonable, and adequate."  The elements of this test – known as the "*Girsh* factors" – are:

(1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of

the best recovery; and (9) the range of reasonableness of the settlement in light

of all the attendant risks of litigation.

*GMC Truck*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d

Cir. 1975)). "These factors are a guide and the absence of one or more does not

automatically render the settlement unfair." *Am. Family*, 256 B.R. at 418.  This

Settlement easily meets each of these factors, and thus, should be approved.

### B.   The *Girsh* Factors Weigh in Favor of Approval

### 1.   Continued Litigation Would Be Long, Complex and Expensive

The first *Girsh* factor is whether the Settlement avoids a lengthy, complex

and expensive continuation of litigation.  This factor "captures the probable costs, in

both time and money, of continued litigation." *Cendant II*, 264 F.3d at 233-34

(internal quotation marks omitted). "Where the complexity, expense, and duration

of litigation are significant, the Court will view this factor as favoring settlement."

*Bredbenner*, 2011 WL 1344745, at *11.  Courts consistently have held that the

expense and possible duration of litigation are factors to be considered in evaluating

the reasonableness of a settlement. *Lake v. First Nationwide Bank*, 900 F. Supp. 726,

732 (E.D. Pa. 1995); *Slade v. Shearson, Hammill & Co.*, 79 F.R.D. 309, 313

(S.D.N.Y. 1978). *See also GMC Truck*, 55 F.3d at 812 (concluding that lengthy

discovery and ardent opposition from the defendant with "a plethora of pretrial

motions" were facts favoring settlements, which offer immediate benefits and avoid delay and expense).  This factor undoubtedly weighs in favor of Settlement.

The factual and legal complexities involved in this case together with continued litigation into the later stages would necessarily be extremely expensive and time-consuming.  At the time the Parties began settlement discussions, the Class-related discovery phase was well under way, but depositions had not commenced. The motion to dismiss was decide, but no further pre-trial motions had been made by either party.

Examination of Class Vehicle chain assemblies, consultation with experts and discovery received from BMW NA allowed a thorough understanding of the potential damages along with myriad other issues that would need to be overcome to certify a Class and to ultimately prevail at trial. This information and analysis helped inform the Parties' negotiations and shape the Settlement.  For example, to understand the full extent of the potential liability and damages, Class Counsel obtained failure rate data for Class Vehicles, information on the number of Class Vehicle sales nationwide and analysis of the chain assemblies.  Class Counsel have as much or more experience in automotive product liability and automobile class action cases than any other group of attorneys in the New York/New Jersey metropolitan area and, possibly, in the country. With their considerable experience, they were able to understand the strengths and weaknesses of the current litigation

and gauge the required resources, time and expenses required to litigate this action through to trial. Class Counsel recognized the advantages of an early settlement that would immediately benefit hundreds of thousands of vehicle owners while they still have the vehicles and are within the sphere of the proposed Component Warranty Extension.

This Settlement involved extensive communications and multiple meetings between Class Counsel and defense counsel to review the discovery produced and review the data to determine the value of the proposed Settlement. With this comprehensive informed understanding, Class Counsel assessed both the prospects of continued litigation and the value of the Settlement.

If this case were to move forward, additional expert work would need to be conducted in order to properly frame the wrongdoing on a class-wide basis, which would be demanding, costly, and necessary. In addition, the risks of substantial delay are considerable. Local practices in this district show that this case would take a significant amount of time to bring to trial particularly given the current pandemic conditions. Trial would involve extensive pretrial motion practice involving complex questions of law and fact, and the trial itself would be lengthy and complicated. *See Warfarin Sodium II*, 391 F.3d at 536 (finding the first *Girsh* factor to weigh in favor of settlement after three years of litigation); *Weiss v. Mercedes-Benz of North America,* 899 F. Supp. 1297, 1301 (D.N.J. 1995) ("*Weiss*") (approving

settlement that was the "result of an arm's length negotiation between two very capable parties" and where "Mercedes was prepared to contest this class action vigorously"). Post-trial motions and appeal would further delay resolution and increase costs. *Id*. at 536 ("it was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class"); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, Civ. No. 08-CV-285 (DMC), 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010) (noting that additional costs associated with trial of multi-district class action and the delayed recovery for the class weighs in favor of settlement). Even if Plaintiffs were successful, BMW NA would undoubtedly appeal an adverse judgment, adding further time to a final resolution of this matter if it proceeded to trial.

Under all of the circumstances, a certain result now, as the mileage and years in-service continue to accumulate, or vehicles go out of service as a matter of course, rather than an uncertain result occurring years in the future, weighs in favor of approval of the Settlement.  For these reasons, the first *Girsh* factor weighs in favor of Settlement final approval.

### 2.    The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the Settlement." *Prudential II*, 148 F.3d at 318.  In order to properly evaluate a settlement, "the number and vociferousness of the objectors" must be examined.

*GMC Truck*, 55 F.3d at 812.   Generally, "silence constitutes tacit consent to the agreement." *Id.* (quotation omitted).   There are approximately 575,303 Class Vehicles.   Because vehicles may go through second and third owners, the actual number of noticed Settlement Class Members here is approximately 1,305,981.   Although there are many hundreds of thousands of members of the Settlement Class, to date there have been ***only 141 requests for exclusion*** and ***only 44 objections*** lodged.   This represents an extremely tiny fraction of Settlement Class Members, approximately 0.0034% for objections (Jt. Decl., ¶ 19) and 0.0108% for opt-outs. *Id.* Under *Girsh*, such a small number of exclusions and objections favor approval of a class action settlement agreement.   *See Bell Atlantic Corp.*, 2 F.3d at 1314 n.15 (silence is "tacit consent" to settlement).   "The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class." *CertainTeed*, 269 F.R.D. at 485 (*citing Cendant II*, 264 F.3d at 234-35).   A "paucity of protestors . . . militates in favor of the settlement," *See Bell Atlantic Corp.*, 2 F.3d at 1314; *see also Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); *Prudential I*, 962 F. Supp. at 537 (small number of negative responses to settlement favors approval); *Weiss,* 899 F. Supp. at 1301 (100 objections out of 30,000 class members weighs in favor of settlement).   The percentage of Class Members that object to the settlement is an appropriate gauge of the reaction of the

class as a whole.  *Id*. at 1313-14 (factor favors settlement where less than 30 of approximately 1.1 million shareholders objected); *McGee v. Cont'l Tire N. Am., Inc*., Civ. No. 06-6234 (GEB), 2009 WL 539893, at *4 (D.N.J. Mar. 4, 2009); *Weiss*, 899 F. Supp. at 1301.  Here, the lack of any meaningful negative response to the Settlement reflects overwhelming support from the Class and evinces the quality and value of the Settlement.  This is further supported by the claims made by class members which is further evidence of the reasonableness of the Settlement.

### 3.    The Stage of the Proceedings

The stage of the proceedings and the amount of discovery completed is another factor courts consider in determining the fairness, reasonableness and adequacy of a settlement.  *GMC Truck,* 55 F.3d at 785; *Girsh*, 521 F.2d at 157.  "This factor considers the degree of case development accomplished by counsel prior to settlement."  *Bredbenner*, 2011 WL 1344745 at *12.  "Through this lens . . . courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *GMC Truck*, 55 F.3d at 813.

Settlements reached at a very early stage of the proceeding and prior to formal discovery may be appropriate if there is no evidence of collusion and the settlement represents substantial concessions by both sides. *See, e.g.*, *Weiss*, 899 F. Supp. at 1301 ("Admittedly, the case is still in the early stages of discovery . . . [But]

[a]bsent proof of collusion, this will not prevent the certification of a settlement class.").

Here, Class Counsel secured extensive discovery, far more than in *Weiss*, and certainly enough to properly assess the fairness, reasonableness and adequacy of the settlement subsequently negotiated on the class's behalf.  Discovery here included an exchange of formal discovery in the form of interrogatories, requests for production of documents and requests for admissions.  Prior to even the start of negotiations, Class counsel received and reviewed relevant documents and materials produced by BMW NA and technical drawings and materials provided by BMW AG.

The appropriateness of a class settlement is not measured by the thickness of the file or an assessment of the amount of formal discovery taken.  *See In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 211 (5th Cir. 1981); *Handschu v. Special Servs. Div.*, 605 F. Supp. 1384, 1394 (S.D.N.Y. 1985); *Cendant II*, 264 F.3d at 235-36; *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 241 (5th Cir. 1982).  A rule requiring a certain amount of discovery prior to case settlement would offend public policy – which encourages the early and effective resolution of complicated cases.  Class Counsel here clearly possessed sufficient information to assess the relative strengths and weaknesses of the case to reach a fair bargain.  Significant monetary and equitable benefits in the form of a prospective

Extended Warranty for members of the Class were obtained without any evidence of collusion.

As discussed, *supra*, auto defect class cases present unique issues, as the cars continue to operate, the odometers continue to register miles, and Settlement Class Vehicles owners who qualify today, may in the event this action is extended for five years or so, be well beyond any reasonable bar, based on miles or years in-service. Early settlement before the delays of protracted litigation and trial practice is in the best interests of the class, as the maximum number of Settlement Class Members can obtain real and tangible benefits from the Settlement now.

### 4.   The Risks of Establishing Liability

This factor should be considered to "examine what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *Cendant*, 264 F.3d at 237 (quoting *GMC Truck*, 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if the case were taken to trial against the benefits of immediate settlement." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 89 (D.N.J. 2001).

Although Class Counsel believe the claims presented in this litigation are meritorious, they are experienced counsel who understand "the risks surrounding a trial on the merits are always considerable." *Weiss,* 899 F. Supp. at 1301. BMW NA has zealously defended against Plaintiffs' claims and would surely continue to do so

if the case proceeds through to trial. The Settlement here presents the Class substantial real relief now. Although Plaintiffs are confident that their claims are legally sound, there is always the possibility that the Court may disagree. These risks include the potential denial of class certification, particularly with respect to a nationwide class, the granting of summary judgment, and loss at trial.  These inherently unpredictable risks in establishing liability weigh in favor of settlement, particularly here, where the Settlement provides the Class with a substantial benefit that is fair, reasonable, and adequate.

### 5.    The Risks of Establishing Damages

"Like the fourth factor, 'this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time.'"  *Cendant*, 264 F.3d at 238 (quoting *GMC Truck*, 55 F.3d at 816).  The court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential*, 148 F.3d at 319.  In *Warfarin Sodium*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through 'a "battle of experts," with each side presenting its figures to the jury and with no guarantee whom the jury would believe.'" *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd.* 391 F.3d 516, 537 (3d Cir. 2004). Similarly, in *Cendant*, the Third Circuit reasoned that there was no compelling reason to think that "a jury confronted

with competing expert opinions" would accept the plaintiff's damages theory rather than that of the defendant, and thus the risk in establishing damages weighed in favor of approval of the settlement. 264 F.3d at 239. The same is true here and this factor weighs in favor of final approval. The benefit of the reimbursement schedule provided in the Class Settlement (regardless of whether repaired at an authorized BMW Center or outside repair shop) is substantial. The prospective repair program offers similar replacement of the defective chain assemblies for Class Members going forward (from the Effective Date of the Settlement) at the BMW Center under a similar class benefit/customer contribution schedule.

### 6.  The Risks of Maintaining the Class Action through Trial

Because the prospects for obtaining class certification have a great impact on the range of recovery one can expect to reap from the class action, *GMC Truck*, 55 F.3d at 817, the Court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *Girsh*, 521 F.2d at 157. Class Counsel believe that this case is wholly appropriate for class certification in the litigation context. However, there is always risk that a Court would find this action not suitable for class certification, or otherwise find it not suitable for litigation on a multi-state basis. Even if class certification were granted in the litigation context, class certification can always be reviewed or modified before trial, so "the specter of decertification makes settlement an appealing alternative." *Dewey v. Volkswagen*

*of Am.*, 728 F. Supp. 2d 546, 585 (D.N.J. 2010). Finally, even if a class is certified, there is no guarantee Plaintiffs would prevail at trial. Class litigation is inherently uncertain and subject to many twists and turns. Experienced counsel know this and, consequently, this factor weighs in favor of final approval.

### 7. Defendant's Ability to Withstand Greater Judgment

Although there is no dispute that BMW NA has ample resources, countless settlements have been approved where a settling defendant has had the ability to pay greater amounts. The Third Circuit noted this fact alone does not weigh against settlement approval. *See, e.g., Warfarin Sodium*, 391 F.3d at 538. This factor is generally neutral when the defendant's ability to pay greatly exceeds the potential liability, and was not a factor in settlement negotiations here. *CertainTeed*, 269 F.R.D. at 489 ("because ability to pay was not an issue in the settlement negotiations, this factor is neutral"); *Warfarin Sodium II*, 391 F.3d at 538 ("fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached").

### 8. Reasonableness of the Settlement in Light of the Best Possible Recovery and all Attendant Risks of Litigation

The final two *Girsh* factors are the reasonableness of the Settlement in light of the best possible recovery and all attendant risks of the litigation. These factors support approval of the Settlement and its benefits. This Settlement offers real and

robust economic benefits to Class Members.  Indeed, for the defective components at issue, the Settlement offers a reimbursement for qualifying Settlement Class Members whose vehicles were repaired before the warranty extension of 7 years/70,000 miles, subject to certain limitations, discussed, *supra*. Other Class Members will receive substantial reimbursement amounts, subject to the contribution schedule, for related repairs up to 8 years or 100,000 miles (whichever occurs first). Class Members are owners or lessees of the Class Vehicles nationwide, thus the benefits are not limited to some smaller group of Class Vehicle owners, such as those defined by a state of purchase or residence only.

As a point of comparison, in *Falco v. Nissan North America, Inc*.,[11]  a recent timing chain settlement in California for certain Nissan model vehicles, the matter was settled and finally approved after approximately five years from filing of the complaint and after extremely active and hard fought litigation.  The Court approved a settlement for California and Washington State owners only, which offered class members who had failures between the powertrain warranty and 80,000 miles, an 80% reimbursement for the first $900 of a timing chain repair or a voucher of $1500. For class members whose failure was between 80,000 and 100,000 miles, a 50% reimbursement of the first $900 of a timing chain repair or a voucher for $1,000; and

---

[11] Civ. Action No. 13-cv-00686 (DDP), U.S. District Court for Central District California.

for class members who had the failure between 100,000 and 120,000 miles, a reimbursement of 20% of the first $900 or a $500 voucher. No reimbursement for related engine damage was included.[12]

As explained *supra*, the benefit here for Class Members is for significantly greater amounts and higher maximums than in *Falco*. Plaintiffs' damages expert here conducted an economic analysis and calculated the benefits of the Class Settlement's prospective Extended Warranty in the range of approximately $42.3 to $64 million. *See* Kleckner Decl. (ECF Doc. No. 113-4) at p. 2. These two *Girsh* factors clearly weigh in favor of approval of the Settlement.

### C.   THE NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND FULLY IMPLEMENTED

To protect the rights of absent members of the Class, the Court must ensure that all Class Members who would be bound by class settlement are provided the best practicable notice. *See* FED. R. CIV. P. 23(e)(1)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The best practicable notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*

---

[12] To be clear, Plaintiffs do not intend to suggest in any way that the settlement consideration in *Falco* was not fair, reasonable and adequate—each case must be judged on its own merits. However, the point is the settlement consideration here is more than fair, reasonable and adequate by any measure.

*v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).  Both notice content and means of dissemination must satisfy the "best practicable notice" standard. *Id*.[13]

As discussed *supra*, the direct Notice program here involved sending 1,305,981 Notices directly to Settlement Class Members or potential Class Members.  Notice of the proposed Settlement was also served on the Attorney General of the United States and to the Attorneys General of the states where Class Members reside pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.  The Settlement Administrator also established a national toll-free number, to issue instructions, or to request a written notice. The Settlement Administrator also established dedicated physical and email addresses. The Settlement Website features downloadable Class Notices, Claim Forms, the Settlement Agreement together with other information relating to the terms and benefits of the Settlement.  The Notice program the Court preliminarily approved was fully implemented and performed its

---

[13] The notice of class settlement should: define the class; describe clearly the options open to Class Members and the deadlines for taking action; describe essential terms of the proposed settlement; disclose any special benefits provided to the class representatives; provide attorneys' fees information; indicate the time and place of the hearing considering approval of the settlement; the method for objecting to or opting out of the settlement; explain procedures for entitlement to payment of claims; provide information that will enable Class Members to calculate or at least estimate their individual recoveries; and, display the contact information for inquiries. MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.312 (2004); *see also Cendant*, 109 F. Supp. at 254.  The form and manner of Notice was negotiated and agreed upon by the Parties, approved by this Court, and meets all of these requirements.

function of informing the Class fully of their rights and benefits under the Settlement and obtaining those benefits.

The direct mail notice sent to all reasonably identifiable Class Members, supplemented by the other forms of notice, provided the best notice practical under the circumstances. This allowed Class Members a full and fair opportunity to consider the terms of the Settlement and make a fully informed decision as to whether to participate, object, or opt-out of the Settlement and provided the dates by which to do so. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (noting that individual notice is preferred method where addresses of class members can be ascertained through reasonable effort); *Prudential*, 962 F. Supp. at 527 (actual notice by mail and published notice was "ideal"); *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 836 (W.D. Pa. 1995) (actual notice by mail and published notice was "best possible notice.").

The Notice here fulfilled all requirements of due process and those of Rule 23(c)(2).

## D.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Class certification under Rule 23 has two primary components.  First, the party seeking class certification must establish the four requirements of Rule 23(a): "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality

(named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Warfarin Sodium*, 391 F.3d at 527.  Second, the Court must find that the class fits within one of the three categories of class actions set forth in Rule 23(b). *In re Community Bank of Northern Virginia*, 418 F.3d 277, 302 (3d Cir. 2005).  In the present case, Plaintiffs seek certification under Rule 23(b)(3), "the customary vehicle for damage actions." *Id.*  Rule 23(b)(3) requires that common questions "predominate over any questions affecting only individual members" and that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 592-93 (1997).  As discussed in detail below, all Rule 23 requirements are satisfied here.  The Court was correct in preliminarily certifying the Class for settlement purposes pursuant to Rules 23(a) and (b)(3), and nothing has changed to alter the propriety of the Court's certification.  Therefore, the Class should be finally certified.

### 1.    The Rule 23(a) Factors Are Met

As discussed below, in light of the proposed Settlement, Plaintiffs and the Class meet the requirements of Rule 23(a), which are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See Warfarin Sodium,* 391 F.3d at 527.

### a.   Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 73 (D.N.J. 1993).  For purposes of Rule 23(a)(1), "impracticable" does not mean impossible, "only that common sense suggests that it would be difficult or inconvenient to join all class members." *See Prudential*, 962 F. Supp. at 510; *see also Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (numerosity requirement satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40").

Here, the Settlement Class includes approximately 575,303 Settlement Class Vehicles identified precisely by VIN numbers pursuant to the Settlement Agreement. The potential number of nationwide Class Members is approximately 1,305,981. Given the number and geographic distribution of the Settlement Class Members, joinder of all Class Members would be impracticable. The proposed Settlement Class easily satisfies Rule 23's numerosity requirement. *Liberty*, 149 F.R.D. at 73.

### b.   Commonality

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." *Warfarin Sodium II*, 391 F.3d at 527-28.  "Commonality does not require perfect

identity of questions of law or fact among all class members.  Rather, even a single common issue will do." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (internal quotation marks omitted). Here, the Settlement Class Members share overlapping common issues of both law and fact.

### c.    Typicality

In considering typicality under Rule 23(a)(3), the court must determine whether "the named plaintiffs['] individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  Typicality does not require that all class members share identical claims. *Id.*  So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001).

The typicality requirement is satisfied since the proposed Class Representatives each possessed a Class Vehicle with the same warranty and experienced the same injury (chain assemblies failure) as a result of alleged the defect.

### d.    Adequacy

There are two components to the adequacy requirement to ensure that absent class members interests are protected: (a) the named plaintiffs' interests must be sufficiently aligned with the interests of the class, and (b) the plaintiffs' counsel must be qualified to represent the class.    *GMC Truck*, 55 F.3d at 800.    Here, the requirements for adequacy are satisfied.

As for the first component, the court must determine whether "the representatives' interests conflict with those of the class." *Johnston*, 265 F.3d at 185.  There is no conflict between the proposed Class Representatives and the Class, because, as with all members of the Class, Plaintiffs seek compensation for the same defective Class Vehicles. The proposed Class Representatives have no interests that are antagonistic to or in conflict with the Class they seek to represent and their alleged injuries are identical to those suffered by Settlement Class members. *See Amchem*, 521 U.S. at 625-27 (courts look at whether the representatives' interest are in any way antagonistic to or in conflict with those of the class members).

As far as the adequacy of counsel is concerned, the Class is represented Kantrowitz, Goldhamer & Graifman, P.C. Thomas P. Sobran, P.C., and Nagel Rice, LLP as co-lead Class Counsel.

These law firms possess national reputations in the class action field, and many more so within automobile defect class litigation, as demonstrated by the firm

resumes submitted in connection with the Motion for Approval of An Award of Attorney's Fees and Reimbursement of Expenses. *See* Declarations of the Firms annexed to the Graifman, Sobran and Nagel Decl.'s in Attorneys' Fee Motion, as Exhibits 3 and 4, entered as ECF Doc. Nos. 85-4, 85-5 and 85-6 respectively. Accordingly, both prongs of the adequacy inquiry are satisfied.

### 2.     The Rule 23(b)(3) Factors Are Met

In addition to meeting the requirements of Rule 23(a), the Class also must satisfy Rule 23(b)(3). The rule is satisfied here because questions of law or fact common to the Class Members predominate over any questions affecting only individual Class Members, especially in light of the proposed Settlement, which eliminates any individual issues or management issues that would be exist in the context of a litigation class.  In addition, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### a.     Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  As the Supreme Court explained in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer fraud … "   521 U.S. at 625.  "Common issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members."  *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D.

180, 187 (D.N.J. 2003); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) ("Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof.") (internal quotation marks and alterations omitted); *Community Bank,* 418 F.3d at 309 (predominance requirement satisfied where "[a]ll plaintiffs' claims arise from the same alleged fraudulent scheme"; "[t]he presence of potential state or federal claims that were not asserted by the named plaintiffs does not defeat a finding of predominance").

Here, all Class Members allege they have been injured by the same wrongful course of conduct. The common legal and factual questions, such as the existence of a design defect and/or materials defect in connection with the Settlement Class Vehicles' chain assemblies and BMW NA's knowledge of it, are at the core of the litigation and are focused on the actions of Defendant, not Plaintiffs. Accordingly, the predominance requirement is satisfied.

**b.    Superiority**

Rule 23(b)(3) also requires that class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy." The following factors are relevant to the superiority inquiry:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of

any litigation concerning the controversy already begun by or against

class members; (C) the desirability or undesirability of concentrating

the litigation of the claims in the particular forum; (D) the likely

difficulties in managing a class action.

*Id.*; *Danvers Motor Co, Inc. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008).

The superiority inquiry is simplified in the settlement context because when certifying a settlement only class, the Court need not inquire whether the case, if tried, would pose intractable management problems, for the purpose of the settlement is to not have a trial. *Amchem*, 521 U.S. at 620. Moreover, "[f]or the purposes of settlement, concentrating litigation in one forum is desirable." *Varacallo v. Mass. Mutual Life Ins. Co.*, 226 F.R.D. 207, 234 (D.N.J. 2005). In conducting this analysis, the district court may take the proposed settlement into consideration. *Prudential*, 148 F.3d at 308; *Warfarin Sodium*, 391 F.3d at 529 ("When dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class.").

Here, a class action is the superior method of resolving the Class Members' claims. All of the Class Members' claims are based upon the same basic operative facts and legal standards. It would be a far better use of judicial resources to

adjudicate these identical issues once, on a common basis, than repeatedly, literally thousands of times. The Settlement provides Class Members the ability to obtain predictable, certain, and definite compensatory relief promptly and contains well-defined claim and administrative procedures to assure due process for each Class Member.  In contrast, individualized litigation carries with it great uncertainty, risk, and costs, and provides no guaranty that injured Class Members will obtain necessary and timely compensatory relief at the conclusion of the litigation.  Indeed, because of the expense of maintaining individual actions, denial of class certification here would effectively prevent certain individuals from asserting their claims against BMW NA.  *See, e.g.*, *Phillips*, 472 U.S. at 809 (class action plaintiffs' claims are uneconomical to litigate individually); *Varacallo*, 226 F.R.D. at 234 ("Without question, class adjudication of this matter will achieve an appreciable savings of effort, time and expense, and will promote uniformity of decision on the issues resolved and to which the parties will be bound.").

## V.   CONCLUSION

Since the Settlement is fair, reasonable, and adequate, and because the Settlement Class meets all requirements of Rule 23(a) and 23(b)(3), Plaintiffs respectfully submit that certification of the class and final approval of the Settlement is warranted.  A proposed Final Order and Judgment is submitted herewith.

Respectfully submitted,

**KANTROWITZ GOLDHAMER &
GRAIFMAN, P.C.**
Gary S. Graifman, Esq.
Jay I. Brody, Esq.
Suite 200
135 Chestnut Ridge Road
Montvale, New Jersey 07645
Telephone: (201) 391-7000

**THOMAS P. SOBRAN, P.C.**
Thomas P. Sobran (*Pro Hac Vice*)
7 Evergreen Lane
Hingham, MA 02043
Telephone: (781) 741-6075

**NAGEL RICE, LLP**
Bruce H. Nagel, Esq.
Randee M. Matloff, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 618-0400

***Class Counsel for the Conditionally
Certified Class***

Dated:  February 1, 2021