**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ARTEM V. GELIS, BHAWAR PATEL, ROBERT MCDONALD, JAMES V. OLSON, GREGORY HEYMAN, SUSAN HEYMAN, DEBRA P. WARD, DARRIAN STOVALL, ALEX MARTINEZ, AMANDA GOREY, CHRIS WILLIAMS, ASHOK PATEL, KENNETH GAGNON, MICHAEL CERNY, MARIA MEZA, ANDRE MALSKE, NICOLE GUY, DAVID RICHARDSON, STACEY TURNER and ERIC T. ZINN, individually and on behalf of all others similarly situated,** | <u>Civil Action No. 2:17-cv-07386-CLW</u> |
| | |
| *Plaintiffs,* | <u>OPINION</u> |
| **v.** | |
| **BMW OF NORTH AMERICA, LLC,** | <u>FILED UNDER SEAL</u>[1] |
| *Defendant.* | |

<u>**CATHY L. WALDOR, U.S.M.J.**</u>

I.    <u>**Introduction**</u>

This matter is before the Court on Class Counsel's post-remand application for an award of attorney's fees and costs (ECF No. 206). The application is fully briefed, and the Court held oral argument on September 26, 2023. For the reasons stated below, and upon careful consideration of the parties' arguments and Class Counsel's billing records, the Court will award Class Counsel its requested $3.7 million fee award.

---

[1] This opinion has been filed under seal because portions of the underlying briefing were filed under seal. By August 23, 2024, the parties shall inform the Court in writing as to which portions, if any, of the opinion should remain under seal and the legal basis for doing so. If the Court does not receive any such submission, then the opinion will be unsealed.

## II.    **Background**

This is a consumer class action relating to alleged timing chain failures in vehicles sold and/or manufactured by defendant BMW of North America, LLC ("BMW"). The underlying litigation settled in 2020 and the Court granted final settlement approval in 2021. ECF No. 159.[2] The parties' settlement agreement provides for Class Counsel to apply to the Court for an award of fees and costs. The agreement includes a "high-low" provision whereby BMW agreed not to oppose a fee award up to $1.5 million and Class Counsel agreed not to seek an award of more than $3.7 million. *See* ECF No. 147-3 at ¶ VIII.B.

Shortly before final settlement approval, Class Counsel applied for a fee award of $3.7 million. ECF No. 89. They submitted they had expended 2,182.2 hours litigating this matter and claimed a lodestar[3] of $1,690,492.00, of which they sought a 2.17 multiplier, along with a claim to $25,470.32 in costs. *See generally id.* After performing more work geared toward finalizing and obtaining the benefits of the settlement, in April 2021 Class Counsel represented they had worked 2,713.4 hours and claimed a lodestar of $1,943,729.36, of which they sought a 1.94 multiplier, which, along with claimed costs amounting to $39,901.41, yielded their $3.7 million fee request. *See generally* ECF No. 167. The Court conducted a fairness hearing in April 2021, *see* ECF No. 176, and granted Class Counsel $3.7 million in fees and costs. ECF No. 173 (the "Order"). Class Counsel represents that following the April 2021 hearing, they have continued to

---

[2] The parties have consented to the undersigned's jurisdiction to enter a final judgment. ECF No. 65.

[3] As discussed in more detail below, a "lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).

perform work in connection with this matter, resulting in a total of 4,333.35 hours worked for a total lodestar of $2,663,536.25. *See* ECF No. 215 (the "Reply") at ¶ 83.[4] [5]

BMW appealed the Order, ECF No. 177, and the Third Circuit vacated. ECF No. 192 (the "Opinion"). It held that the Court granted Class Counsel's fee request on an insufficient record; namely, that the summary billing charts previously submitted by Class Counsel were not adequately detailed to provide a "[ ]sufficient basis for an attorneys' fee award." Opinion at 13-14 (citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 473 (1992)); *cf. id.* at 12-13 ("[T]he fee application must 'be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed.'") (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990)). Finding an insufficient record to assess the Court's base lodestar calculation and 1.94 multiplier thereof, the Third Circuit remanded for further proceedings. *See generally* Opinion. Class Counsel has since submitted voluminous billing records (and the parties have briefed the matter) in accordance with the Third Circuit's directive, making the application ripe for resolution.

## III.    Analysis

### a.  Preliminary Matters

Before getting to the heart of this dispute, the Court must clear away some brush as to three preliminary issues. First is Class Counsel's claimed hourly rates. Second is whether to include Class Counsel's post-April 2021 fee application efforts in the present determination. Third is the adequacy of Class Counsel's billing records.

---

[4] Because ECF No. 215 contains the most comprehensive version of the parties' arguments, the Court will cite to it throughout this opinion.

[5] As discussed below, these post-hearing efforts are excluded from the present award.

By way of introduction to the first topic, BMW has objected to Class Counsel's submission on reply of certain evidence supporting Class Counsel's hourly rates, noting that this evidence was not submitted in Class Counsel's moving papers. While BMW is correct that evidence submitted on reply typically may not be considered by a reviewing court, it is incorrect that this principle applies here. This is because BMW did not challenge Class Counsel's rates in the initial fee application that was the subject of BMW's appeal and presently on remand. *See generally* ECF No. 96. To this end, the Third Circuit likewise did not discuss Class Counsel's rates. *See generally* Opinion.

Class Counsel frames this issue in context of the mandate rule, under which "[a] district court may not consider matters that are not expressly or implicitly disposed of by the appellate court's decision." *United States v. Georgacarakos*, 2006 U.S. Dist. LEXIS 11131, at *2 (M.D. Pa. Feb, 28, 2006) (citing *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 203 n.13 (3d Cir. 2004)). As a general principle, "the mandate rule applies . . . only to those issues that were decided by the appellate court". *Charles Shaid v. George Hyman Constr. Co.*, 947 F. Supp. 844, 851 (E.D. Pa. 1996) (quoting *In re Carl M. Mazzocone*, 200 Bankr. 568, 572 (E.D. Pa. 1996)). Therefore, "the rule of mandate allows a lower court to decide anything not foreclosed by the mandate." *Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012) (citing *Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993)).

At first blush, this would appear to permit the Court to address the reasonableness of Class Counsel's billing rates, since that was not an "issue[] that w[as] decided by the appellate court". *Charles Shaid*, *supra*. But the mandate rule's restriction does not reach quite this far. In this case, the issue of Class Counsel's rates was not simply passed upon by the Third Circuit, it was not *raised* below by BMW. The issue is therefore barred from consideration at this stage. As

stated by the Fourth Circuit in *United States v. Hawkins*, 599 F. App'x 485 (4th Cir. 2015), "[t]he [mandate] rule generally bars litigation of issues that could have been, but were not, raised before remand. Stated differently, 'under the mandate rule[,] a remand proceeding is not the occasion for raising new arguments or legal theories.'" *Id.* at 488 (quoting *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007); citing *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)); *see also United States v. Butenko*, 494 F.2d 593, 615 (3d Cir. 1974) (Seitz, J., concurring and dissenting) ("The Supreme Court has stated that 'while a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues.' *Sprague v. Ticonic National Bank*, 307 U.S. 161, 168, 83 L. Ed. 1184, 59 S. Ct. 777 (1939). Such matters are open unless their 'disposition . . . . by the mandate . . . . was necessarily implied in the claim in the original suit, and [the party's failure to raise them constituted] an implied waiver.'"), *superseded on other grounds by statute as stated in ACLU Found. of S. Cal. v. Barr*, 293 U.S. App. D.C. 101, 952 F.2d 457, 460 (1991). Because BMW failed to raise this issue in the proceedings below, at the present stage of proceedings, the Court must and will adopt the billing rates claimed in Class Counsel's present application.[6]

The next question is whether to include Class Counsel's recent efforts in the current fee determination. As noted, Class Counsel have claimed entitlement to fees incurred through their post-approval hearing efforts, consisting of "advocating for Class members to receive the benefits of the settlement, answering questions, assisting Class members in filing claims and seeking prospective warranty repairs and interacting with the Claims Administrator and

---

[6] "To adjust for delay in payment of attorneys' fees, a court may 'base the fee award on the current billing rate . . . .'" *In re Safety Components Int'l Sec. Litig.*, 166 F. Supp. 2d 72, 103 n.11 (D.N.J. 2001) (quoting *Doe v. Terhune*, 121 F. Supp. 2d 773, 781 (D.N.J. 2000)) (cleaned up).

Defendant's Counsel in ensuring the settlement is properly administered". Reply at ¶ 100. The Court must determine whether to include these hours in its present calculations.[7]

For several reasons, and with the qualification stated below, the Court answers in the negative. First, the Third Circuit's mandate did not consider efforts that were to be expended after the date of the fee application on appeal. Under the mandate rule referenced above, it would be improper for the Court to consider such efforts now. As elucidated in *Georgacarakos*,

> [a] district court's power is limited by the scope of the remand directed by the higher court. Under the mandate rule, a species of the law of the case doctrine, a trial court must comply strictly with the mandate directed to it by the reviewing court. A district court may not consider matters that are not expressly or implicitly disposed of by the appellate court's decision. Following remand, a trial court must proceed in accordance with the mandate and the law of the case on appeal. Therefore, the court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.

2006 U.S. Dist. LEXIS 11131, at *2-3 (cleaned up). The Court interprets the mandate as does BMW — that the Third Circuit's language was retrospective, not prospective; directing the Court to "do it again," not "do it anew." To consider Class Counsel's recent efforts would, in the Court's view, amount to "consider[ing] matters that are not expressly or implicitly disposed of by the appellate court's decision." *See id.*

Further, to the extent this decision is discretionary, *see United States v. Basciano*, 2010 U.S. Dist. LEXIS 85502, at *20 (E.D.N.Y. Aug. 19, 2010) (district courts have "discretion under the mandate rule to reconsider, on remand, issues that were not expressly or implicitly decided,

---

[7] Class Counsel state that they "do[ ] not seek additional fees for the additional work. Class Counsel merely seek to demonstrate that the award of $3.7 million, previously made by the Court was proper, fair and reasonable. In light of the additional work performed, the lodestar multiple sought is substantially less than even initially awarded by the Court, making the $3.7 million award more than imminently reasonable and warranted here." Reply at 3. Class Counsel appear here to try to have their cake and eat it too: they don't seek fees for their additional work, but they do want to have that work taken into consideration in their fee request.

including issues arising from newly discovered evidence") (quoting *United States v. Stanley*, 54 F.3d 103, 107 (2d Cir. 1995); citing *United States v. Cirami*, 563 F.2d 26, 32-33 (2d Cir. 1977)) (cleaned up), the Court would exercise its discretion to disregard Class Counsel's post-remand efforts. Initially, while the Court appreciates that obtaining the benefits of settlement, particularly in a case such as this, is a protracted process, at some point things must come to an end. *Cf. Rode*, 892 F.2d at 1186 (court has discretion "to disallow any fees for time spent litigating the case after the last benefit is won from the defendant") (quoting *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 920 (3d Cir. 1985)). Finally, as will be discussed, the Court finds Class Counsel's prior claimed lodestar (slightly adjusted as noted immediately below) to be reasonable. As a result, consideration of Class Counsel's recent work is not necessary to justify a $3.7 million award.

The qualification is that Class Counsel has submitted updated billing charts reflecting hours expended up to and including the date of the fairness hearing (April 28, 2021). These amount to 2,876.55 hours for a total lodestar of $2,087,283.25, *see* ECF No. 228-2, figures slightly above those submitted in Class Counsel's final pre-hearing submission. The Court finds these additional hours — expended before the fairness hearing — "implicitly [subsumed] by the appellate court's decision", *see Georgacarakos*, *supra*, and therefore exercises its discretion to include them in its calculations.[8]

As to the final introductory issue, Class Counsel has now submitted contemporaneous billing records which describe the date, personnel, time spent, and reasonably detailed descriptions of each task performed by Class Counsel. As a general matter, such "contemporaneously recorded

---

[8] For this reason, the Court will refer to the updated hour figures contained in Class Counsel's updated lodestar chart, which in certain instances are slightly higher than those in counsel's previous post-remand submission.

time sheets are the preferred practice." *Webb v. County Board of Education*, 471 U.S. 234, 238 n.6, 105 S.Ct. 1923, 1926, 85 L. Ed. 2d 233 (1985) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 441 (1983) (Burger, C. J., concurring)). The records are also substantively proper. As stated by the Third Circuit in *Rode*, "a fee petition should include 'some fairly definite information as to the hours devoted to various general activities,' . . . [h]owever, 'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" 892 F.2d at 1190 (quoting *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanatory Corp.*, 487 F.2d 161, 167 (3d Cir. 1973); citing *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983), *cert. denied* 464 U.S. 1042, 79 L. Ed. 2d 172, 104 S. Ct. 707 (1984)). Instead, "[a] fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Id.* (quoting *Pawlak*, 713 F.2d at 978). Class Counsel's records exceed these standards and accordingly are sufficient for purposes of this application. *Cf. Keenan*, 983 F.2d at 473 (finding sufficient records consisting of summaries that "gave in chronological order the date, the time consumed, and a general description of the activities provided by each lawyer").

BMW complains that portions of Class Counsel's records are vague and contain block billing. These arguments are without merit. As to the first, BMW points to certain entries in attorney Sobran's records that refer to "misc[ellaneous]" acts, and so, according to BMW, "do not provide sufficient detail to discern exactly what work was performed." *See* Reply at ¶ 74. The Court disagrees. The entries in Mr. Sobran's time sheets that refer to miscellaneous acts do indeed specify what work was performed; for example, "Misc. multiple emails re: logistics for final approval hearing and fees; emails to members who wanted to speak at hearing, etc." or "misc. emails to/from Graifman/Matloff re: appeal procedure." *See generally* Ex. 1 to Declaration of

Thomas P. Sobran; *e.g.*, *Rode*, 892 F.2d 1177 at 1191-92 and n.13 (approving of, *e.g.*, records stating "miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses: 1.3 hours."). BMW's vagueness challenge to Class Counsel's time records fails.

While BMW also takes issue with certain instances of block billing, it does not state which entries contain block billing, thus putting the onus on the Court to try to divine which entries BMW deems objectionable. Moreover, "[t]here is no authority in this circuit categorically prohibiting block billing when submitting invoices for an attorneys' fees motion." *MCO & EA LLC v. Silver Globe Inc.*, 2023 U.S. Dist. LEXIS 85268, at *9 (D.N.J. May 15, 2023). "[T]he only requirement is that a 'fee application must be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed,' but '[i]t is not necessary . . . to know the exact number of minutes spent nor the precise activity to which each hour was devoted.'" *Id.* (quoting *United Rentals N. Am. Inc. v. Liberty Mut. Fire Ins. Co.*, 2022 U.S. Dist. LEXIS 188054, at *20 (D.N.J. Oct. 14, 2022)). The Court finds that even those portions of Class Counsel's records that could be categorized as block billing meet these standards, and in any event, "almost any allocation of time between various listed activities would still be reasonable." *United Rentals*, 2022 U.S. Dist. LEXIS 188054, at *21 (rejecting block billing argument). As above, this challenge to Class Counsel's time records fails.

Having disposed of these preliminary matters, the Court now proceeds to address the items at the core of the Third Circuit's opinion: the reasonableness of Class Counsel's hours expended litigating this matter, and the propriety of a lodestar multiplier.

### b.  Reasonableness of Class Counsel's Hours

#### i.  Introduction

As noted, the Court has used a lodestar approach to determine Class Counsel's fee award. "The lodestar approach may . . . be used in cases, such as here, 'where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method.'" Opinion at 12 (quoting *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 333 (3d Cir. 1998))). As the Third Circuit observed, BMW has not challenged the Court's use of the lodestar method, and so the Opinion did not address that aspect of the Order. *See id.* at n.4.

In determining a fee award, fairness and reasonableness are paramount. *See McLennan v. LG Elecs. USA, Inc.*, 2012 U.S. Dist. LEXIS 27366, at *25 (D.N.J. Feb. 29, 2012) ("Regardless of the method a court applies or the specific factors considered, the fundamental requirement is that any fee be fair and reasonable.") (citing *In re AT&T Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 46144, at *29 (D.N.J. Apr. 22, 2005), *aff'd*, 455 F.3d 160 (3d Cir. 2006)). To this end, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox. v. Vice*, 563 U.S. 826, 838, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011); *see also Prudential*, 148 F.3d at 342 ("What is important [in awarding attorney's fees] is that the district court evaluate what Class Counsel actually did and how it benefitted the class.").

Because, as noted above, the question of Class Counsel's billing rate is not presently before the Court, the primary (albeit significant) question for the Court to consider is whether

Class Counsel expended a reasonable number of hours in litigating this case.[9] It is settled that counsel "are not entitled to compensation for hours unreasonably expended on the litigation." *Maldonado v. Houstoun*, 256 F.3d 181, 185 (3d Cir. 2001). "[H]ours are excessive if they represent more time than is reasonably necessary to complete the task." *Rode*, 892 F.2d at 1192 (citing *Hall v. Roselle*, 747 F.2d 838, 842 (3d Cir. 1984)). District courts have considerable discretion in fixing the amount of a fee award; to this end, "[i]n determining whether the fee request is excessive in light of particular categorical contentions raised by the adverse party, and in setting the amount of any reduction, the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires." *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir. 1989).

Class Counsel have submitted charts breaking down their billed hours by category. The Court will address these categories *seriatim*.

### ii. Class Counsel's Hours

#### 1. Pre-Litigation Investigation

Class Counsel billed ninety-two hours for pre-litigation investigation. BMW asks that this figure be reduced to sixty hours. BMW does not set forth a targeted argument here, stating only that "[r]outine activities of a law firm should not be billed to a client." *See* Reply at ¶ 56.

BMW cites *Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939 (3d Cir. 1995), where the Third Circuit denied a request to recover fees for non-legal activities such as

---

[9] Class Counsel argues that the Third Circuit "did not indicate that it deemed the hours submitted to be excessive", Reply at ¶ 22, suggesting that the Court should not assess whether Class Counsel's hours were reasonable. This misconstrues the Opinion. *Cf.* Opinion at 16-17 ("Because we cannot tell whether the hours Class Counsel billed were reasonable for the work performed, we vacate the Court's order and remand for further proceedings.").

media appearances. *See id.* at 942. BMW's argument fails. The activities in *Halderman* are a far cry from Class Counsel's pre-suit investigation into, among other things, the technical issues underlying the component defect at issue in this case. The bulk of these hours were conducted by Mr. Sobran, who is trained as a mechanic and therefore was uniquely positioned to have undertaken this investigation in an efficient manner. The Court also concurs with Class Counsel that conducting such investigation at the outset helped guide the case toward swift resolution rather than having it languish for years on the Court's docket. The Court therefore upholds Class Counsel's requested number of hours for pre-litigation investigation.

### 2. Drafting Complaints

Class Counsel billed 262 hours drafting an original, first amended and second amended complaint. BMW challenges this time as excessive, which, at first blush, it appears to be. But the work required here is deceptively substantial. The relevant chronology is as follows. This action was filed in September 2017 by two Class Counsel firms by way of a sixty-one-page, 225-paragraph complaint. *See* ECF No. 1. Shortly thereafter, the third Class Counsel firm filed a ninety-four-page, 336-paragraph complaint asserting similar claims. *See* Civil Action No. 2:17-cv-11567-WHW-CLW, ECF No. 1. The parties then agreed to consolidate the action. *See* ECF No. 10, 12. Plaintiffs then filed a consolidated complaint, largely but not entirely identical to the original pleading, running 108 pages and 440 paragraphs. *See* ECF No. 23. After BMW's motion to dismiss was granted in part and denied in part, Plaintiffs were granted leave to, and did, file a second amended complaint, similar in length to the consolidated complaint. *See* ECF No. 42, 43, 46, 47. Aside from their length, the complaints are detailed and often highly technical in nature, asserting well over a dozen claims on behalf of various combinations of individual and subclass plaintiffs. The second amended complaint proceeds on behalf of nineteen individual plaintiffs from thirteen

states and thirteen plaintiff subclasses and brings twenty counts on behalf of various combinations thereof. *See generally* ECF No. 47.

Given this, the Court finds the 262-hour figure, while high, to be reasonable. Class Counsel have represented, and the Court can appreciate, that preparing the complaints required vast expenditures of time to vet possible class representatives, researching thirteen states' consumer protection laws, distilling highly technical information into pleading format, and of course, drafting the complains themselves; not to mention, coordinating the consolidation and amendments as discussed above. BMW's cited case, *Rougvie v. Ascena Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 122910 (E.D. Pa. Sept. 12, 2016), is instructive by way of contrast. There, the court approved recovery of fees for seventy-three hours spent drafting two largely identical class action complaints. *See id.* at *15. The complaints at issue were approximately twenty pages long and brought five causes of action. *See* Civil Action No. 2:15-cv-00724-MAK (E.D. Pa.), ECF No. 34, 70. Moreover, the claims there were based upon relatively straightforward consumer protection violations and related common law theories of liability; nothing of the sort at issue here. *See generally id.* Even setting aside the technical nature of the claims here and the multiple iterations of complaints, Class Counsel have billed approximately .71 hours per total pleading page, and 2.51 hours for each page of the operational pleading. In *Rougvie*, these figures were 1.74 and 3.48, respectively. For these reasons, the Court will not reduce Class Counsel's hours billed for preparing complaints.

### 3. Case Development/Administration

Class Counsel submits that it spent 279.4 hours on case development and administration. BMW argues this entire category should be struck because it consists of "routine" and "administrative" tasks that should not have been billed at partner rates. Class Counsel explain that

this category includes reviewing documents to determine and develop litigation strategy and communicating with prospective and actual class representatives. *See* Reply at ¶ 35. Of note, BMW does not take specific issue with the number of hours billed here; only that they were billed at partner rates.

The Court agrees with Class Counsel that this objection is unfounded. Litigation strategy is often the lifeblood of a case; as such, it makes sense for high-level partners to be performing these tasks. The same is true of communications with class representatives. Again, one of BMW's cited cases supports this conclusion. In *In re Vogue*, 92 B.R. 717 (Bankr. E.D. Mich. 1988), the court considered (but ultimately rejected) a challenge to "simple, unimportant, ministerial or routine tasks." *See id.* at 719. The court called these objections "unfair and unrealistic" since they "ignore[] what goes on in 'the real world'"; namely, that an "attorney assumes that he or she may be required to perform some simple tasks, while other tasks might require intense concentration; some communication might be casual, while other discussions might involve crucial negotiations. These are all balanced when an hourly fee is fixed." *Id.* Consistent with Class Counsel's representations as to the nature of this work, a review of Class Counsel's billing records does not indicate high-level personnel performed a significant amount of "simple, unimportant, ministerial or routine" work, nor does BMW point to any time entries to the contrary. BMW's objection to this category is therefore overruled.

## 4.  Motion Practice/Memoranda Drafting/Legal Research

Class Counsel billed 246.1 hours for motion practice, memoranda drafting, and legal research. BMW argues for a 65% reduction of this figure and states that this entire category consists of Class Counsel's opposition to BMW's motion to dismiss. *See* Reply at ¶ 35. The Court rejects this argument. First, it appears that Class Counsel spent approximately 115 hours

on the opposition. As above, this number falls on the high end but is not unreasonable considering the varied and complex issues raised in the dismissal motion. Indeed, Judge Walls' twenty-eight-page opinion begins by noting that "[t]wenty-one plaintiffs hailing from fourteen states bring twenty-one causes of action in this putative class action", ECF No. 42 at 1, and contains five choice of law analyses before proceeding to its primary discussion, itself consisting of approximately a dozen parts and subparts. *See generally* ECF No. 42. Considering the complexity and breadth of issues raised in the motion, the Court finds the amount of time billed for opposing it is not unreasonable. *Cf. St. Joseph Abbey v. Castille*, 2014 U.S. Dist. LEXIS 183990, at \*36-37 (E.D. La. Nov. 21, 2014) (fifty-four hours spent on thirteen-page opposition to twelve-page motion to dismiss yielding fifteen-page opinion, not unreasonable); Civil Action No. 10-2717 (E.D. La.), Dkt. No. 38, 42, 59.

Further, BMW overlooks other motion practice such as Class Counsel's lead plaintiff motion and the instant fee application. *Cf. Planned Parenthood v. AG*, 297 F.3d 253, 268 (3d Cir. 2002) ("A party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application.") (citing *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978)). BMW also fails to account for the other items listed here; namely, legal research and drafting memoranda. While these concededly are catchall categories, they do capture tasks that are necessarily a large part of litigating a complex class action like this one. In sum, the Court finds the hours expended on this category of work to have been reasonably spent and therefore will not reduce them.

### 5.  Negotiation/Settlement Process

Class Counsel billed 172 hours for negotiation and settlement. BMW again attacks this figure by reducing this time to a single event — the parties' three-day mediation — and takes

issue with the fact that three attorneys attended the mediation. As observed by the Eleventh

Circuit in *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292 (11th Cir. 1988), however,

"[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they

may all be compensated if they are not unreasonably doing the same work and are being

compensated for the distinct contribution of each lawyer." *Id.* at 1302 (citing *Johnson v.*

*University College of University of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th

Cir.1983), *cert. denied*, 464 U.S. 994, 104 S. Ct. 489, 78 L. Ed. 2d 684 (1983)). Moreover, Class

Counsel billed approximately ninety-seven hours traveling to and attending the mediation; the

balance of the hours listed above are for preparing for the conference — tasks such as reviewing

documents provided by BMW "to understand the scope of warranty payments made, how many

vehicles would be included in the class, [and] the nature and extent of documentation required to

be submitted by class members", Reply at ¶ 35 — and post-mediation tasks that are part and

parcel of any such activity. BMW does not meaningfully attack these figures. Particularly

considering that the mediation resulted in this case being resolved short of what otherwise could

have been years of litigation, coupled with the breadth and complexity of the issues requiring

resolution to bring the case to completion, the Court does not find the hours billed for negotiation

and settlement to be unreasonable.

### 6.  Discovery

Class Counsel billed 379.2 hours for discovery. BMW takes issue with this figure, noting

that the case entailed only paper discovery and did not require depositions or expert discovery.

Class Counsel counters that much of this time was dedicated to sifting through over 12,000 pages

of largely technical materials produced by BMW over the course of five document productions

without the benefit of an index or other organization. Courts have found approximately thirty

seconds per page to be an "objectively reasonable pace", *see Scott Hutchison Enters. v. Cranberry Pipeline Corp.*, 318 F.R.D. 44, 57 (S.D. W. Va. 2016), and such a rate tracks Class Counsel's approximate 100 hours spent reviewing BMW's documents. As in any large-scale litigation, discovery in this matter also entailed production by Plaintiffs, meet and confers, communication between Class Counsel and their clients, and correspondence and conferences with the Court. Having reviewed the time spent by Class Counsel on such matters, the Court finds the amount of time billed by Class Counsel on discovery, while significant, is reasonable given the circumstances of the case. It therefore rejects BMW's arguments to the contrary.

### 7.  Court Hearings/Appearances

Without explanation, BMW seeks to reduce by half Class Counsel's 76.6 hours for court hearings and appearances. *See* Reply at ¶ 56. BMW cites *Planned Parenthood*, which discussed "time spent rehearsing oral advocacy, i.e., 'moot court'", 297 F.3d at 269 (discussing *Maldonado v. Houstoun*, 256 F.3d 181 (3d Cir. 2001)), an activity not at issue here. BMW does not take issue with the time spent by Class Counsel traveling to and from and attending court conferences, and the Court does not find the time billed for preparing for such appearances disproportionate to the time spent attending them. To the extent BMW has stated a challenge to this category, it is denied.

### 8.  Non-Challenged Categories

BMW does not challenge the number of hours billed for Post Filing Investigation / Communications with Class Members; Communications with Consultants / Experts;[10] Settlement

---

[10] Class Counsel billed 36.6 hours for Communications with Consultants and Experts. This figure appears to relate primarily to Class Counsel's work with Mr. Kleckner, addressed separately below.

Documentation, Motions / Briefing (preliminary / final approval);[11] Class Claims Administration Issues /Communications with Class Members; and Final Approval Process, Final Approval Motion and Objection Replies, Communications with Class Members through Conclusion. However, "[t]he court has an obligation to review the reasonableness of attorney fees in class action settlements even in the absence of any objection and whether they come from a common fund or otherwise be paid". *Harshbarger v. Penn Mut. Life Ins. Co.*, 2017 U.S. Dist. LEXIS 209642, at *6 (E.D. Pa. Dec. 19, 2017) (quoting *Smith v. First Union Mortg. Corp.*, 1999 U.S. Dist. LEXIS 18299, 1999 WL 1081362, at *2 (E.D. Pa. Dec. 1, 1999)). Accordingly, the Court briefly addresses these categories.

Class Counsel billed 250 hours for Post Filing Investigation / Communications with Class Members and 316.95 hours for Class Claims Administration Issues / Communications with Class Members. These figures seem reasonable considering the size of the class (over 575,000 potential members) and the complex nature of the claims and remedies at issue in this case. Additionally, Class Counsel's lowest billing timekeeper (Ms. Moccia) handled most of such tasks.

Class Counsel billed 247.4 hours for Settlement Documentation, Motions / Briefing (preliminary / final approval). As above, this number appears fairly high at first glance but seems justified upon a review of Class Counsel's records and given the labor-intensive nature of the settlement process (*i.e.* negotiating a multi-tiered engine repair program for tens of thousands of cars manufactured by a foreign company), and Class Counsel's time entries relating to such matters do not strike the Court as unreasonable.

---

[11] BMW passingly requests to remove .9 of the hours billed for this category, without any substantive argument as to why.

Finally, Class Counsel billed 517.6 hours for the Final Approval Process, Final Approval Motion and Objection Replies, Communications with Class Members through Conclusion. This figure is roughly double that provided in Class Counsel's prior application, which is consistent with the notion that Class Counsel has encountered significant post-approval challenges in ensuring the class members obtain the benefits of the settlement. To this end, many of the time entries for this period involve tasks such as communications with individual class members regarding repairs and reimbursements. While, as detailed above, the Court excludes such efforts occurring after the final approval hearing, it accepts as fair reasonable this number of hours expended by Class Counsel up to that date.

For the reasons stated, the Court finds Class Counsel's hours billed to be reasonable. It next proceeds to address several discrete arguments raised in BMW's opposition.

### iii.  __Other Arguments__

BMW complains that Class Counsel "contend that they had in place a 'process to promote efficiency and eliminate duplicative efforts' including that 'Class Counsel communicated regularly to assign tasks and monitor the case closely," but that "only two entries, totaling less than an hour, detail coordination amongst Class Counsel." Reply at ¶ 72. As a result, BMW says, billing entries referencing "communications" among Class Counsel (which encompass over seventy-five hours of work) suggest "communications between Class Counsel that add no value to the Class" as well as duplication of efforts among the three firms representing Plaintiffs. *Id.*

This objection is without merit. First and as noted by Class Counsel, the fact that a billing entry does not use the word "coordinate" does not mean the task did not entail coordination between attorneys and streamline efforts in a manner that benefitted the class. Because it would

be impossible for multiple attorneys to work seamlessly without intensive communications with one another, the prevalence of such communications throughout the billing records, without more, is insufficient to render the bills excessive. Instead, "[a] reduction for duplication is warranted only if the attorneys are *unreasonably* doing the same work." *Rode*, 892 F.2d at 1183 (quoting *Jean v. Nelson*, 863 F.2d 759, 773 (11th Cir. 1988)) (emphasis added in *Jean*). BMW does not forward such an argument, nor do Class Counsel's records indicate this to be the case.

Next, as noted, BMW takes issue with Class Counsel's use of partners to perform "routine" tasks that, according to BMW, could have been handled by staff members billing at lower rates. BMW's argument falters on both the law and the facts. First, the fact that high level personnel performed certain tasks is not necessarily improper. *See In re Vogue*, *supra*. Instead, where, as here, "the suit presents 'multiple, complex legal questions,' . . . the use of multiple attorneys, including partner-level attorneys may be appropriate." *Jefferson v. City of Camden*, 2006 U.S. Dist. LEXIS 46654, at *30-31 (D.N.J. June 30, 2006) (quoting *Planned Parenthood*, 297 F.3d at 272). And "where lead partners review discovery or spend time on other menial tasks because the partner's special knowledge of the case is required to adequately perform such tasks, they may be billed at the partner's hourly rate." *Id.* at *37 (citing *Envirosource, Inc. v. Horsehead Ress Dev. Co., Inc.*, 981 F. Supp. 876, 882 (S.D.N.Y. 1998)). As indicated, the Court is of the view that the uniquely complex nature of this case affords Class Counsel some leeway in this respect.

Moreover, BMW fails to consider the totality of Class Counsel's approach to this litigation. First, while BMW takes issue with the hours spent by Class Counsel coordinating its efforts, it fails to appreciate the other side of this coin: that Class Counsel sought to have one attorney from each firm handle much of the substantive work to avoid having to expend too

much time on horizontal coordination of efforts. In the case of Nagel Rice, for example, Ms. Matloff performed approximately 75% of the work. *See* ECF No. 228-2. While this yields a lodestar reflecting Ms. Matloff's relatively high billing rate compared with other attorneys at her firm, it cannot be overlooked that Ms. Matloff's spearheading the firms' efforts surely resulted in a measure of efficiency that benefitted the class (as well as, ostensibly, the Court and even BMW, since the case did not languish while multiple lower-level attorneys shuffled the file around). In the case of Kantrowitz, Goldhamer, & Graifman, Mr. Graifman likewise billed roughly 75% of all attorney hours, and the individual who billed the highest number of hours, Ms. Moccia, is a paralegal billing at a much lower rate than the senior partners about whom BMW complains. Mr. Sobran, meanwhile, is a solo practitioner who could not have delegated tasks to lower-level employees. Finally, while BMW complains of certain entries by senior partners indicating "calendar" or similar administrative tasks, the billing records show that such items are one of several tasks included in a given entry, not a standalone entry for simply calendaring a date.

Next, BMW disagrees with Class Counsel seeking to recover fees for time spent enforcing the parties' settlement. Initially and as noted above, any such time post-dating the April 2021 hearing is not compensable. However, some of Class Counsel's efforts at enforcing settlement pre-date this time. *See* ECF No. 228-1 (listing 316.95 hours for "Class Claims Administration Issues and Communications with Class Members/Witnesses re Settlement" and 517.6 hours for "Final Approval Process, Final Approval Motion and Objection Replies, Communications with Class Members Through Conclusion"). Such sums are therefore within the temporal scope of the present award.

The case law supports rewarding Class Counsel for these efforts, a finding largely owing to the unique nature of automobile defect class action settlements like this one. *See, e.g.*, *Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 U.S. Dist. LEXIS 188824, at *148 (C.D. Cal. May 29, 2015) (in automotive defect class action, time spent "following the fairness hearing to monitor and enforce the settlement, respond to class members inquiries, and communicate with Audi dealerships regarding defendants' obligations under the settlement . . . are properly awarded") (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (affirming fee award that "include[d] all future services that Class Counsel must provide through the life of the latch replacement program" because Class Counsel "must remain available to enforce the contractual elements of the settlement agreement and represent any class members who encounter difficulties"). The record supports awarding Class Counsel fees for time spent in connection with such matters, particularly because Class Counsel has represented, and BMW has not substantively disputed, that Class Counsel encountered significant hurdles in providing the class with the benefits of the settlement due to issues coordinating repairs with BMW dealerships.

Finally, BMW quarrels with the fees incurred by Class Counsel in connection with the expert report provided by Kirk Kleckner, who opined on the valuation of the extended warranty obtained by Class Counsel. According to Class Counsel, this provided a benefit to the class because it helped class members to understand the benefits they were receiving under the settlement and therefore informed their decision whether to object or opt out. BMW responds that such information was unnecessary here because this is a claims-made settlement. While true that this fact means any expert report will be somewhat less precise as to the amount that can be recovered, this does not render Mr. Kleckner's report entirely unhelpful, and courts have relied upon similar information in evaluating similarly structured settlements. *See, e.g.*, *Vargas v. Ford*

*Motor Co.*, 2017 U.S. Dist. LEXIS 177149, at *8 (C.D. Cal. Oct. 18, 2017) ("Plaintiffs' expert did estimate the value of the [claims-made] settlement as $35 million, and the Court finds that opinion well-reasoned. The Court finds that the settlement provides valuable remedies.") (emphasis removed); *cf. Prudential*, 148 F.3d at 344 (stating "fee examiner's report reflected this uncertainty" but considering it to "offer a range of possible values").

For the reasons stated, the Court overrules BMW's arguments as to the reasonableness of the hours spent by Class Counsel pursuing, obtaining and enforcing the instant settlement. It proceeds to address Class Counsel's requested lodestar multiplier.

**c.  Lodestar Multiplier**

A lodestar multiplier "is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *Rite Aid*, 396 F.3d 305-06 (citing *Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 243 (1985)). As noted, in the Order the Court awarded a lodestar multiplier of 1.94. In the Opinion, the Third Circuit wrote as follows:

> we decline to decide whether the District Court was bound by the strictures of *Perdue* [*v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)] in considering a fee enhancement. We do, however, note two things for the parties and the Court to consider on remand. First, we think the parties' focus on the statutes under which named plaintiffs sued is misplaced, as the "Court awarded the attorney's fees pursuant to a contract—the settlement agreement—not pursuant to a statute." *In re Home Depot Inc.*, 931 F.3d 1065, 1082 (11th Cir. 2019); *see also Brytus v. Spang & Co.*, 203 F.3d 238, 246 (3d Cir. 2000) ("When there has been a settlement, the basis for the statutory fee has been discharged, and it is only the fund that remains."). Second, we urge the District Court on remand to provide additional reasoning for its decision whether to add a lodestar multiplier.

Opinion at 16.

Taking these matters in turn, the first relates to the parties' dispute over the applicability of *Perdue*. The Supreme Court there held that "there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." 559 U.S. at 554. It is BMW's position that this case invokes *Perdue*'s "strong presumption," which Class Counsel can overcome only upon a showing of "rare circumstances."

The Court disagrees. As stated by the Ninth Circuit in *Ne. Eng'rs Fed. Credit Union v. Home Depot, Inc. (In re Home Depot, Inc., Customer Data Sec. Breach Litig.)*, 931 F.3d 1065 (11th Cir. 2019), "[t]here is no question that the Supreme Court precedents [such as] *Perdue* are specific to fee-shifting statutes. Thus, these precedents are not binding outside of the statutory context." *Id.* at 1084-85 (citations omitted). As noted, the Third Circuit likewise suggested that application of fee award analysis deriving from the statutory context would be inappropriate. Accordingly, the Court declines to apply *Perdue* here.

This leads to the Third Circuit's second directive, which is that the Court "provide additional reasoning for its decision whether to add a lodestar multiplier." *See* Opinion, *supra*. Class Counsel here cite the factors listed in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000); namely, "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases." *Id.* at 195 n.1 (citing authorities). Class Counsel also reference the factors derived from *Prudential*: "(1) the

value of benefits accruing to class members attributable to the efforts of Class Counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any 'innovative' terms of settlement". *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 165 (3d Cir. 2006) (discussing *Prudential*) (citations omitted).

It must be noted that *Gunter* expressly wrote its listed factors were to be applied "[i]n common fund cases". *See* 223 F.3d 195 n.1. The terms of the settlement in *Prudential* were more similar to those here — *i.e.*, one "whose ultimate value is dependent on the final number of claims remediated under the settlement". 148 F.3d at 334. The parties have not provided (and the Court is not aware of) case law setting forth factors to be applied specifically in fee applications arising from claims-made settlements such as this one. For this reason, the Court will invoke certain of the above-stated factors as a guide, while also "tak[ing] a global, holistic approach to determining whether [a multiplier is] appropriate and reasonable." *See Sullivan v. Cnty. of Riverside*, 2019 U.S. Dist. LEXIS 18583, at *6 (C.D. Cal. Feb. 4, 2019).

As applied, the referenced factors weigh in favor of approving Class Counsel's requested multiplier.[12] As to the size of the fund, more than 575,000 vehicle owners are eligible for the warranty extension obtained by Class Counsel. Mr. Kleckner estimated the value of the settlement to be $27 million. While BMW has objected to Mr. Kleckner's findings as "wholly unnecessary" given the nature of the settlement, it has not substantively refuted these findings by way of a competing expert report. Accepting this figure to be accurate, an award of $3.7 million

---

[12] With the updated lodestar figure, a slightly lower multiplier than previously requested — 1.75 — is required to yield an award of $3.7 million.

represents 13.7% of the amount recovered — far less than Class Counsel's standard one-third contingency fee.

The settlement includes "innovative" terms consisting of contributions by BMW for timing chain repairs depending on vehicle age and mileage, providing for both reimbursement for past repairs and provision of prospective ones. And while BMW states that it voluntarily provided certain timing chain warranty extensions, these were, at least in large part, offered after this lawsuit was filed; and in any event, as a result of the settlement class members have obtained a 42% increase in the mileage limitation of this warranty extension. *See* Reply at ¶ 53. Reflecting the value of the settlement obtained by Class Counsel is that of the hundreds of thousands of potential class members, only forty-five submitted objections to the settlement, none of which was sustained by the Court.

Class Counsel consists of three highly regarded plaintiffs'-side law firms who managed to negotiate a settlement involving hundreds of thousands of potential class members from dozens of states in a relatively short period of time and without the need for, and attendant risks of, class certification briefing. The settlement required Class Counsel from the outset of the case to navigate technical issues relating to numerous models of BMW vehicles, and Class Counsel has expended (and represents continues to expend) considerable efforts to ensure the class members obtain the benefits of the settlement.

Naturally, Class Counsel faced a risk of nonpayment when it opted to take the case on a contingency basis. This has required them to incur case-related expenses and, more significantly, devote valuable attorney time to this matter — and as a result, away from other matters — notwithstanding the risk that no recovery would be obtained. This weighs strongly in favor of a multiplier. *See, e.g.*, *Brown v. 22nd Dist. Agric. Ass'n*, 2017 U.S. Dist. LEXIS 115321, at *22

26

(S.D. Cal. July 21, 2017) (where "significant financial risk of nonpayment was evident from the outset of the case as Class Counsel took this matter on contingent basis", court found "the risk of nonpayment weighs in favor of an upward adjustment to the fee award").

A review of similar cases supports Class Counsel's requested multiplier. Starting first with the overall fee award, Class Counsel cites *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2018 U.S. Dist. LEXIS 247091 (D.N.J. Dec. 14, 2018), a case involving similar timing chain failures and a similar class size, where Judge Linares awarded plaintiffs' counsel (including one firm representing Plaintiffs here) $8.5 million. *See id.* at *14. Class Counsel in that action expended 7,377 hours litigating the matter, *see* Civil Action No. 16-2765 (JLL)(JAD), Dkt. No. 106-2 at ¶ 39, and thus was awarded $1,152 per hour. This figure is comparable to the $1,286 per hour that will be awarded to Class Counsel here. If one corrects for the number of potential class members (477,000 in *VW* and 575,000 here), the proportions are close to identical. And as to the multiplier, "[f]ederal courts in this circuit have frequently approved fee award multipliers in the range of 1 to 4"; and even "[m]ultipliers in excess of this range, while warranting enhanced scrutiny, are not completely unusual." *Frederick v. Range Res.-Appalachia, LLC*, 2011 U.S. Dist. LEXIS 27350, at *36 (W.D. Pa. Mar. 17, 2011) (collecting cases; awarding 5.95 multiplier). Class Counsel's requested multiplier is on the low end of this range, and therefore is reasonable.

In sum, the referenced factors strongly support approving Class Counsel's requested lodestar multiplier. They reflect the fact that highly skilled Class Counsel litigated this complex and technical case swiftly and efficiently, obtaining a settlement that conferred concrete benefits upon more than a half million potential class members. Considering the considerable efforts that

went into (and continue to go into) this result, the Court finds it fair and reasonable to apply a 1.75 multiplier, one well within the range of acceptable multipliers in this circuit.

**IV.    <u>Conclusion</u>**

For the reasons stated, the Court grants Class Counsel's request for an award of $3.7 million in attorney's fees and costs. An appropriate order follows.

Dated: August 16, 2024

<u>*s/ Cathy L. Waldor*</u>
Cathy L. Waldor, U.S.M.J.
